# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:25-cv-20899-JEM

| | |
|---|---|
| ALICE ROSENBLUM, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual ALEC CELESTIN, an individual, and LANI GINOZA, an individual, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS PASSES, INC. AND LUCY GUO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE <u>THE COMPLAINT'S CLASS ACTION ALLEGATIONS</u>**

CLARK SMITH VILLAZOR LLP
Christopher J. Clark
Rodney Villazor
Michelle E. Lee (*pro hac vice forthcoming*)
Natalia Lima
666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850 (Telephone)
(212) 377-0868 (Facsimile)

SCHWARTZ BRESLIN PLLC
169 E. Flagler Street, Ste 700
Miami, Florida 33131
(305) 577-4626 (Telephone)

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................. 1

**FACTUAL ALLEGATIONS** .................................................................................. 1

    **I.** The Parties ................................................................................................ 1

    **II.** Passes Defendants Direct Agents to Solicit Then-Minor Plaintiff to Join Passes .............................................................................................. 2

    **III.** The Passes Defendants' Agents Market and Distribute Plaintiff's CSAM ....................................................................................................... 3

**ARGUMENT** .......................................................................................................... 4

    **I.** The Complaint Properly Pleads Counts I-II Against the Passes Defendants ................................................................................................ 4

        **A.** The Passes Defendants Ignore the Many Particularized Allegations in the Complaint ......................................................... 5

        **B.** The Complaint Sufficiently Alleges Scienter ..................................... 9

    **II.** Section 230 Does Not Shield the Passes Defendants from Liability ........ 10

    **III.** Venue Is Proper in the Southern District of Florida ................................. 13

        **A.** Legal Standard ................................................................................. 13

        **B.** The Passes Defendants Improperly Dispute the Complaint's Allegations ......................................................................................... 14

    **IV.** The Passes Defendants Are Liable for the Conduct of Their Agents, Defendants Celestin and Ginoza ............................................................. 16

        **A.** Defendants Celestin and Ginoza Were Agents of the Passes Defendants ......................................................................................... 16

        **B.** Counts I and II Should Not Be Dismissed on "Shotgun Pleading" Grounds ............................................................................ 17

    **V.** The Complaint's Class Action Allegations Should Not Be Stricken Nor Dismissed at the Pleadings Stage ..................................................... 18

**CONCLUSION** ....................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996) ................................................................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ............................................................................ 20

*Bryant v. Rich*,
  530 F.3d 1368 (11th Cir. 2008) ............................................................................ 13

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ............................................................................... 11

*Cap. Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*,
  No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014 (M.D. Fla. Aug. 27, 2008) ...... 16

*Doe #1 v. MG Freesites, LTD*,
  676 F. Supp. 3d 1136 (N.D. Ala. 2022) ........................................................... 10, 12

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................................................. 12

*Doe v. MG Freesites*, LTD,
  707 F. Supp. 3d 1157 (N.D. Ala. 2023) .................................................................. 4

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) .................................................................. 12

*Eaton v. Dorchester Dev., Inc.*,
  692 F.2d 727 (11th Cir. 1982) .............................................................................. 14

*e-ventures Worldwide, LLC v. Google, Inc.*,
  188 F. Supp. 3d 1265 (M.D. Fla. 2016) ................................................................ 11

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) .............................................................................. 12

ii

*Fla. Abolitionist v. Backpage.com LLC*,
   Case No. 6:17-cv-218-ORL-28TBS, 2018 WL 1587477 (M.D. Fla. Mar. 31, 2018) .............. 11

*Foster v. Green Tree Servicing, LLC*,
   Case No 8:15-cv-1878-T-27MAP, 2016 WL 11493319 (M.D. Fla. Nov. 8, 2016) ................. 18

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) ...................................................................... 11, 12

*Gill-Samuel v. Nova Biomedical Corp.*,
   298 F.R.D. 693 (S.D. Fla. 2014).................................................................. 19, 20

*Herrera v. JFK Med. Ctr. Ltd. P'ship*,
   648 F. App'x 930 (11th Cir. 2016)...................................................................... 19

*Home Ins. Co. v. Thomas Indus. Inc.*,
   896 F.2d 1352 (11th Cir. 1990) ........................................................................ 13

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*,
   955 F. Supp. 2d 1311 (S.D. Fla. 2013) ................................................................ 18

*Kearney Partners Fund, LLC v. United States*,
   814 F. Supp. 2d 1349 (M.D. Fla. 2011)............................................................ 13, 14

*L.H. v. Marriott Int'l, Inc.*,
   604 F. Supp. 3d 1346 (S.D. Fla. 2022) ............................................................ 10, 12

*Lawson v. Life of the S. Ins., Co.*,
   286 F.R.D. 689 (M.D. Ga. 2012) ...................................................................... 19

*M.H. ex rel. C.H. v. Omegle.com LLC*,
   122 F.4th 1266 (11th Cir. 2024) ........................................................................ 9

*M.H. v. Omegle.com, LLC*,
   Case No. 8:21-cv-814-VMC-TGW, 2022 WL 93575 (M.D. Fla. Jan. 10, 2022)............... 10, 12

*McGrew v. Morgan*,
   No. 3:20-cv-1371-BJD-PDB, 2021 WL 7451894 (M.D. Fla. May 3, 2021)........................... 14

*Mills v. Foremost Ins. Co.*,
   511 F.3d 1300 (11th Cir. 2008) ........................................................................ 19

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)...................................................................................... 13

iii

*Palazzo v. Gulf Oil Corp.*,
  764 F.2d 1381 (11th Cir. 1985) ................................................................ 17

*Plaintiff B v. Francis*,
  2010 WL 497375 (N.D. Fla. Feb. 5, 2010) ................................................. 4

*Prou v. Giarla*,
  62 F. Supp. 3d 1365 (S.D. Fla. 2014) ........................................... 13, 14, 15

*Quiller v. Barclays Am./Credit, Inc.*,
  727 F.2d 1067 (11th Cir. 1984) ................................................................ 11

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) .................................................................. 5

*Robinson v. Giarmarco & Bill, P.C.*,
  74 F.3d 253 (11th Cir. 1996) .................................................................... 13

*Speaker v. U.S. Dep't of Health and Hum. Servs. for Disease Control & Prevention*,
  623 F.3d 1371 (11th Cir. 2010) .................................................................. 5

*Tilton v. Playboy Ent. Grp., Inc.*,
  554 F.3d 1371 (11th Cir. 2009) .................................................................. 9

*Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,
  761 F. Supp. 2d 1322 (M.D. Fla. 2010) .................................................... 16

*United States v. Hristov*,
  466 F.3d 949 (11th Cir. 2006) .................................................................... 9

*United States v. Universal Pharmacy, Inc.*,
  2011 WL 13319470 (S.D. Fla. Mar. 2, 2011) ............................................ 18

*Vibe Micro, Inc. v. Shabanets*,
  878 F.3d 1291 (11th Cir. 2018) ................................................................ 18

*Waters Edge Living, LLC v. RSUI Indem. Co.*,
  2007 WL 1021359 (N.D. Fla. Mar. 31, 2007) ........................................... 16

*Whitwam v. JetCard Plus, Inc.*,
  34 F. Supp. 3d 1257 (S.D. Fla. 2014) ...................................................... 15

**Statutes**

18 U.S.C. § 2 ............................................................................................ 17

18 U.S.C. § 2252 ................................................................................... 4, 17

iv

18 U.S.C. § 2255 ...................................................................................................... 17

28 U.S.C. § 1391 .............................................................................................. 14, 16

28 U.S.C. § 1406(a) ............................................................................................. 13

Fla. Stat. 847.012 .................................................................................................. 8

Fla. Stat. 847.012(3)-(4) ....................................................................................... 8

47 U.S.C. § 230(c)(1) ............................................................................... 10, 11, 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 5

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 20

**PRELIMINARY STATEMENT**

Defendants Passes Inc. ("Passes"), and Lucy Guo ("Guo"), the founder and Chief Executive Officer of Passes, (together, the "Passes Defendants") seek dismissal of the detailed 30-page Complaint ("Compl.") in this matter under Fed. R. Civ. P. 12(b)(6) by refusing to accept the well-pleaded allegations and reasonable inferences against each of them as true and tendering alternative facts, mostly unsubstantiated, that are squarely at odds with the Complaint. The Passes Defendants even attempt to conjure immunity under the Communications Decency Act to excuse their demonstrated participation in the creation and distribution of child pornography. These attempts are clearly contrary to the law. The well-pleaded allegations set forth in detail the Passes Defendants' material contributions to the unlawful exploitation of Plaintiff through child pornography and how a substantial part of the events occurred in this District, establishing venue. The alternative facts the Passes Defendants set forth are just that, assertions outside of the Complaint that can only be resolved by a trier of fact after discovery. The Court should deny the motion to dismiss ("Motion to Dismiss," "Motion" or "Mot.") in its entirety.

**FACTUAL ALLEGATIONS**

**I.    The Parties**

Plaintiff Alice Rosenblum, a resident of Miami-Dade County, Florida, was previously a 17-year-old Creator[1] for Passes at all times relevant. Compl. ¶ 12. She is a victim of a scheme by the Passes Defendants to create and profit from child pornography, as explained below. *Id.*

In 2022, Guo, a Miami resident, founded Passes, Inc. with a principal place of business in Miami, offering a subscription-based platform selling exclusive content from "Creators." *Id.* ¶¶ 13, 16, 26. Passes targeted minors to join as Creators. *Id.* ¶ 28. Unlike other subscription platforms,

---

[1] Creators are individuals who make content for social media platforms and then monetize their presence through paid publicity and content. Compl. ¶¶ 13, 23.

Passes permitted Creators between the ages of 15-17 to join as Creators, provided the minor had "Verifiable Parent Consent." *Id*. ¶¶ 28, 37-39. The Complaint explains precisely how the Passes Defendants circumvented this safety measure in furtherance of their scheme to profit from the exploitation of minor Creators to produce and sell child pornography.

**II.    Passes Defendants Direct Agents to Solicit Then-Minor Plaintiff to Join Passes**

In 2022, Guo devised a plan to recruit Creators away from Fanfix, a rival platform, and to recruit underage Creators. Compl. ¶¶ 25, 47-48. As part of her strategy, in 2022, Guo hired Defendant Alec Celestin ("Celestin"), Fanfix's brand director. *Id*. ¶ 47. Celestin recently boasted in January 2025 that he "helped build a unicorn (private) @passes with @lucy_guo". *Id.* ¶ 52.

As the Complaint details, the Passes Defendants orchestrated a scheme with the other defendants to exploit minors who joined Passes in order to produce, market, and sell child sexual abuse material ("CSAM"), using its unique platform for minors, to compete with OnlyFans, the notorious platform that sells sexually explicit adult content. *Id.* ¶ 34. In furtherance of that conspiracy, Guo directed Celestin to recruit minors, including Plaintiff, to product and distribute CSAM of minor Creators engaged in sexually explicit conduct and to market that CSAM using the Passes platform. *Id.* ¶¶ 48-49, 71-82. These allegations alone are sufficient to state a claim.

On June 4, 2024, Celestin, acting at Guo's direction and with her knowledge, solicited Plaintiff to join Passes. *Id.* ¶ 54. The Passes Defendants and Celestin knew that Plaintiff was a minor at the time. *Id*. ¶¶ 54-55, 64, 66, 70. On August 10, 2024, Celestin met Plaintiff at his residence in Los Angeles to assist her in joining Passes. *Id*. ¶¶ 56-57. Both Guo and Celestin knew that Plaintiff, a minor, would be restricted by Passes' internal safety controls for minors unless those controls were circumvented. *Id.* at ¶¶ 65-67. Accordingly, Celestin called Guo to override the parental consent requirement. *Id*. ¶¶ 69-72, 81. Guo then overrode the parental verification requirement because she knew that parental consent would undermine their intention

2

to exploit Plaintiff to create CSAM. *Id.* ¶¶ 71-72. With Guo's removal of the parental consent requirement, Plaintiff joined Passes without any "Verifiable Parent Consent." *Id*. ¶ 72.

Celestin and Defendant Lani Ginoza ("Ginoza"), a former Passes director of talent who had directly reported to Guo, also knew that Passes restricted minor Creator profiles from utilizing its direct messaging system but needed it enabled to directly market and sell Plaintiff's CSAM to Passes customers. *Id.* ¶ 80. On August 13, 2024, Celestin and Ginoza reached out to Guo to ask her to override the direct messaging ban. *Id.* ¶¶ 73-79. Guo, understanding the purpose was to allow her agents to send sexually overt messages to market Plaintiff's CSAM, unilaterally removed the direct messaging ban on Plaintiff's profile. *Id*. ¶¶ 77-81. That same day, Guo also spoke directly with Plaintiff over the phone explaining to Plaintiff how and where to upload content onto the Passes Vault system (the "Vault"). *Id.* ¶¶ 75-76. Guo, knowing she had overridden the parental consent verification and direct messaging ban, assured Plaintiff: "you can upload anything." *Id*. ¶ 76.

### III. The Passes Defendants' Agents Market and Distribute Plaintiff's CSAM

Between August 13, 2024, and September 21, 2024, Plaintiff—following Celestin and Ginoza's direction and with Guo's direction and knowledge—took photos and videos of herself engaged in sexually explicit conduct and, following Guo's prior guidance to "upload anything," uploaded the CSAM to the Vault. Compl. ¶¶ 76, 84. These images and videos were marketed, sold, and distributed by Celestin, Ginoza and others, with Guo's knowledge, through the messaging platform enabled by Guo to allow her agents to advertise and sell CSAM. *Id*. ¶ 86.

Passes possessed, marketed, and sold CSAM of Plaintiff, including: pictures of "**g-string booty pics**," marketed for $100; pictures of "**Topless, g-string, +robe**," marketed for $200; a video of "**Pulling down bra tease +g-string show**," marketed for $100; a picture of "**underboob**

3

+ **thong**" marketed for $69; and a video of "**FLOOR (Rubbing lotion)**," marketed for $800. *Id*. ¶ 91. The Passes' proprietary machine learning classifiers identified Plaintiff's content and the messages as a minor engaged in sexually explicit conduct, but the Passes Defendants continued to allow the marketing and sale of the CSAM on Passes. *Id.* ¶¶ 85, 87. On August 28, 2024, Plaintiff discovered that a picture of her vagina that had been uploaded to the Vault and sold to Passes subscribers was reposted to another platform called "Thot BB" in a post titled "Snapchat – NudeLeaksTeens – Alice Rosenblum." *Id*. ¶¶ 92-96. Though Celestin assured her that the "team" would "pause selling content," none of the Defendants ever did so. *Id*. ¶¶ 95-96. Passes and Guo took no remedial action because their agents' production and marketing efforts were being done at their direction. The Passes Defendants did not deactivate Plaintiff's minor Creator profile or notify her parents, law enforcement or the National Center for Missing & Exploited Children ("NCMEC"), contrary to Passes' advertised minor safety guidelines. *Id*. ¶¶ 40, 89. Indeed, Passes did not deactivate Plaintiff's account until February 18, 2025, after being notified by Plaintiff's undersigned counsel. *Id.* ¶¶ 117-118.

## ARGUMENT

I.     **The Complaint Properly Pleads Counts I-II Against the Passes Defendants**

The Complaint sets out a detailed scheme by which Defendants Guo and Passes knowingly and intentionally recruited Plaintiff, a minor, to join their platform to produce and distribute child pornography on Passes in violation of 18 U.S.C. §§ 2252 and 2252A (Count I) and the related Florida state crime (Count II).[2] The allegations lay out how the Passes Defendants orchestrated

---

[2] 18 U.S.C. §§ 2252, 2252A(a)(2). *See Doe v. MG Freesites*, LTD, 707 F. Supp. 3d 1157, 1181 (N.D. Ala. 2023) (setting forth elements of 18 U.S.C. § 2252A as follows: (1) the defendant received or distributed child pornography; (2) in interstate or foreign commerce by any means, including by computer; and (3) the defendant did so knowingly); *Plaintiff B v. Francis*, 2010 WL 497375, at *4 (N.D. Fla. Feb. 5, 2010) (noting that the elements of § 2252 are  (1) the defendant

4

their scheme through their own acts and material contributions and by directing their agents to produce, market and sell images and videos of Plaintiff engaged in sexually explicit conduct.

The Passes Defendants argue that the Complaint must be dismissed because it does not allege scienter and because they are immune under Section 230 of the Communications Decency Act ("Section 230").  However, both arguments are premised on improper attempts to incorporate unsubstantiated facts not found on the face of the Complaint to litigate the facts of the case on a motion to dismiss.  Their Motion to Dismiss must therefore be denied.

**A.  The Passes Defendants Ignore the Many Particularized Allegations in the Complaint**

A court must take facts alleged in a complaint as true and construe them in the most favorable light to the plaintiff under Fed. R. Civ P. 12(b)(6).  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).  The complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).  The court must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor on a motion to dismiss.  *Iqbal*, 556 U.S. at 663-64; *Speaker v. U.S. Dep't of Health and Hum. Servs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

The Complaint is explicit in alleging the Passes Defendants' specific acts and practices in furtherance of the scheme to produce, market and sell child pornography on Passes, their actual knowledge of and express authorization of the other Defendants' conduct, and their material contributions to the reprehensible exploitation of Plaintiff.  The Complaint also alleges specific, detailed examples of Guo and Passes' express knowledge of Plaintiff's CSAM uploaded to the

knowingly transports in interstate or foreign commerce (2) a visual depiction of a minor (3) engaging in sexually explicit conduct)

Vault and the utilization of the Passes messaging system to market and sell Plaintiff's CSAM.

Among the detailed, particularized allegations—*taken as true under 12(b)(6)*—are:

- Celestin and Ginoza, acting as agents and at the direction of the Passes Defendants, induced Plaintiff to create CSAM and marketed and sold Plaintiff's CSAM on the Passes Platform, and Guo, knowing Plaintiff was a minor, enabled the scheme by overriding Passes' safety features for the protection of minors. Compl. ¶¶ 5, 71-72, 76.

- On August 10, 2024, Guo, knowing Plaintiff was a minor, overrode the parental consent requirement because she knew of Celestin's plans "to create, sell and distribute images and videos" of CSAM of Plaintiff. *Id.* ¶¶ 69-72.

- On August 13, 2024, Guo, knowing Plaintiff was a minor, showed Plaintiff "how and where to upload content onto the Passes Vault system" and expressly assured Plaintiff that "*you can upload anything*." *Id.* ¶¶ 73, 76 (emphasis added).

- Guo orchestrated the removal of Passes' ban against allowing minor Creators to use the direct messaging system to allow Celestin and Ginoza to advertise and sell Plaintiff's CSAM through the Passes direct messaging system. *Id.* ¶¶ 80-81.

- Passes' proprietary machine learning classifiers, touted and created by Guo, reviewed Plaintiff's CSAM uploaded to the Vault and "*identified the images and videos as child pornography*." *Id.* ¶¶ 35, 85 (emphasis added).

- Passes' proprietary machine learning classifiers, touted and created by Guo, reviewed the marketing and advertisement of Plaintiff's CSAM and "*recognized the banned words and advertisements as … child pornography*." *Id.* ¶¶ 35, 87 (emphasis added).

- Passes, and its controller and operator Guo, presently possess Plaintiff's CSAM and the advertisements thereof, including pictures and advertisements of "*arching in bed doggy*," "*undressing*," "*stripping vid*" and "*nudes*." *Id.* ¶¶ 88, 91, 116 (emphasis added).

- Passes', and its controller and operator Guo's, direct messaging system presently possesses graphic, sexual messages including from a customer who "can't stop thinking about your kitty" and from another customer who asked Plaintiff for images of "doggystyle rocking band and forth live ppv's I bought." *Id.* ¶¶ 10, 97, 106.

These particularized allegations, that include dates of phone calls, specific actions by Guo, express allegations of knowledge, and exact quotations of file names of CSAM, far exceed the facial plausibility criteria to assess a motion to dismiss. The Motion should be denied.

6

Even if the Court were to need to draw on reasonable inferences, those drawn overwhelmingly demonstrate that the Motion lacks merit.  For example, Guo's removal of the parental consent requirement and the enabling of the direct messaging system served no other purpose but to enable Guo's agents to scale the production, marketing and sale of Plaintiff's CSAM.  Despite the Passes Defendants' actual knowledge of the other Defendants' illicit conduct, their failure to suspend Plaintiff's account during the relevant time and inaction to notify Plaintiff's parents, law enforcement or NCMEC evince knowledge and assent.  Consciousness of guilt and an acknowledgment that Plaintiff's CSAM is in the Vault can also be reasonably inferred from the Passes Defendants' belated suspension of Plaintiff's account in February 2025 and their total elimination of the minor Creator option on Passes.[3]

These particularized allegations and reasonable inferences eviscerate the Passes Defendants' brazen contention that they are just content providers providing "neutral tools" to the other Defendants with no knowledge of or direct hand in the criminal exploitation of Plaintiff. Mot. at 3.  The Passes Defendants callously dismiss the gravity and impact of these well-pleaded allegations simply noting "any assertion or implication that the Passes Defendants were involved in any wrongdoing **will be shown** to be totally and utterly false."  *See id.* at 2 (emphasis added); *see also id.* at 7 ("the evidence **will show** that the Passes Defendants had no knowledge whatsoever of Celestin's alleged intent [to post Plaintiff's CSAM on Passes]") (emphasis added).  The Passes Defendants' claim about how the evidence "will show" that the allegations in the Complaint are

---

[3] The Passes Defendants twisting of this allegation into an example of corporate responsibility that it suspended Plaintiff's account "immediately" and discontinued minor Creators despite being "entirely legal" is an aggressive attempt to manipulate the facts of the case.  Mot. at 1-2. The truth is, despite all of their knowledge, the Passes Defendants took no remedial action until Plaintiff's undersigned counsel contacted their attorneys.

wrong is an outright admission that their Motion to Dismiss is based on factual disputes and the Motion therefore must be denied.

The Passes Defendants' assertion of "facts"—contrary to the well-pleaded allegations—should be given no consideration.  For example, they make self-serving claims of "rigorous" enforcement of their strict guidelines, *id.* at 4, even though the Complaint details how Guo herself unilaterally orchestrated the suspension of enforcement to allow her agents to exploit Plaintiff. Another improper proffered "fact" tailored to undermine agency is that "Celestin has never been an employee of Passes." *Id.* at 6.  The Complaint, however, is specific and detailed: (1) Guo hired Celestin from Fanfix, Compl. ¶ 47; (2) Nofhotos and Celestin partnered with Passes and Guo for "World Domination", *id.* ¶ 50; (3) Celestin played a role in the Series A $40 million fund raising, *id.* ¶¶ 31, 51; (4) Celestin "helped build a unicorn (private) @passes with @lucy_guo," *id.* ¶ 52, and (5) Celestin called his "business partner Lucy" to override the Passes safety measures for minors, *id.* ¶¶ 69-75.  The Passes Defendants also improperly proffer that the phone call on August 13, 2024 between Guo and Plaintiff ***never occurred*** despite the express allegations in the Complaint.  Mot. at 7; Compl. ¶¶ 75-76 (alleging "Celestin then added Guo to the phone call" and "Guo also told Plaintiff that 'you can upload anything'").  The Court must reject the Passes Defendants' inappropriate attempt to contest the well-pleaded allegations or to bring in slanted, unsworn factual assertions and deny the Motion.[4]

---

[4] The Passes Defendants make similarly frivolous arguments in moving to dismiss Count II, a violation of Fla. Stat. 847.012.  That statute provides that a person "may not knowingly use a minor" in the production of content that "depicts nudity or sexual conduct."  Fla. Stat. 847.012(3)-(4).  For the reasons set forth above, *see supra* Section I (Factual Allegations), their argument here falls short.

**B. The Complaint Sufficiently Alleges Scienter**

The Passes Defendants make the throwaway argument that the Complaint fails to allege scienter under *M.H. ex rel. C.H. v. Omegle.com LLC*, 122 F.4th 1266 (11th Cir. 2024). Mot. at 17-18. As detailed *supra* Section I.A (Argument), the Complaint is replete with allegations of the Passes Defendants' actual and reasonably inferred knowledge of the production and distribution of CSAM of the Plaintiff on the Passes platform. Guo knowingly and intentionally recruited Celestin as her agent to recruit and exploit minors, personally overrode safeguards for minors knowing Plaintiff was a minor, allowed her agents to exploit Plaintiff on Passes, and even expressly assured Plaintiff "you can upload anything." Compl. ¶¶ 47-48, 72, 75-76. Guo had both actual and implied knowledge of Celestin's plans to create, sell, and distribute images and videos of Plaintiff engaged in sexually explicit conduct and to market and sell them over the Passes direct messaging system. *Id*. ¶¶ 71-72, 80-81; *see also Tilton v. Playboy Ent. Grp., Inc.*, 554 F.3d 1371,1378 (11th Cir. 2009) (holding that "[k]nowledge" can be satisfied when "a party acts with an awareness of the high probability of the existence of the fact in question"). It is inconceivable that Guo eliminated Passes' requirement for parental consent and overrode the direct messaging ban for Plaintiff, knowing she was a minor, and yet somehow never considered an illicit purpose behind the circumvention of the safety features. *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006) (citation omitted) (knowledge can be established by alleging a party "has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance"). Knowledge is equally evident with Passes. In addition to Guo's knowledge (imputed to Passes), Passes machine learning classifiers identified Plaintiff's content as CSAM, but Passes chose to do nothing until the instant litigation loomed, leading Passes to suspend Plaintiff's Passes

account in late February 2025.  Compl. ¶¶ 85, 87, 117, 118.  The Complaint unmistakably pleads

that the Passes Defendants knew of the sexually explicit nature of the material.[5]

## II.    Section 230 Does Not Shield the Passes Defendants from Liability

The Passes Defendants alternatively seek dismissal based on the affirmative defense of

immunity under Section 230.  Section 230 states that "[n]o provider or user of an interactive

computer service shall be treated as the publisher or speaker of any information provided by

another information content provider."  47 U.S.C. § 230(c)(1).  Section 230 immunity is intended

to protect "websites from liability for material posted on the website by someone else."  *Doe #1 v.*

*MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1159 (N.D. Ala. 2022) (citation omitted).

To establish the affirmative defense of Section 230 immunity, a defendant must prove that

"(1) the defendant is a service provider or user of an interactive computer service; (2) the causes

of action [sic] treat defendant as a publisher or speaker of information; and (3) a different

information content provider provided the information."  *M.H. v. Omegle.com*, *LLC*, Case No.

8:21-cv-814-VMC-TGW, 2022 WL 93575, at *3 (M.D. Fla. Jan. 10, 2022); *see also L.H. v.*

---

[5] The Passes Defendants' argument that the Complaint makes "conclusory allegations" that Guo knew Plaintiff's age is laughable.  Mot. at 17.  The Complaint could not be more explicit that the Passes Defendants knew Plaintiff was a minor at the relevant time.  Celestin specifically "*told Guo that Plaintiff was a minor* and needed the parent consent requirement waived," and Guo, "knowing that Plaintiff was a minor and of Celestin's plans, directly orchestrated the removal of the Passes verification of parental consent requirement."  Compl. ¶¶ 70-72 (emphasis added); *see also id*. ¶ 81.  A copy of Plaintiff's driver's license showing her birthday was also submitted to Passes, which the Passes Defendants had access to.  *Id*. ¶ 66.

Finally—although Guo's declaration cannot be taken into consideration in assessing a 12(b)(6) motion—it corroborates the Complaint's allegations by stating that Plaintiff uploaded a photograph of her driver's license to Passes, and Passes, in fact, has a copy.  Guo Decl. ¶ 7 ("I have reviewed the Know-Your-Customer [] information that Plaintiff submitted to Passes [and Plaintiff] provided a photograph of her North Carolina driver's license.").  In light of this evidence clearly being in the possession of the Passes Defendants, Plaintiff reserves the right to seek sanctions based on the advancement of this factually false and baseless argument at an appropriate time.

*Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363-64 (S.D. Fla. 2022) (setting forth substantially similar elements). Here, taken on its face, the Complaint creates factual disputes as to every element for a Section 230 affirmative defense, and it is therefore inapplicable to the Passes Defendants.

Moreover, because it is an affirmative defense, Section 230 immunity is not subject to a Rule 12(b)(6) motion when its applicability is not "clearly [apparent] on the face of the complaint." *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1272 (M.D. Fla. 2016) (citation omitted); *Fla. Abolitionist v. Backpage.com LLC*, Case No. 6:17-cv-218-ORL-28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (finding sufficient allegations of material contributions negated Section 230 immunity in motion to dismiss). If the well-pleaded allegations contradict or negate Section 230 immunity, the motion to dismiss cannot be granted. *See e-ventures*, 188 F. Supp. 3d at 1273 (denying motion to dismiss because allegation of bad faith precluded Section 230 immunity defense); *cf. Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (reversing motion to dismiss because federal preemption not apparent on face of complaint).

Consistent with Eleventh Circuit precedent, other Circuits recognize the limits of Section 230 immunity under Rule 12(b)(6). *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024) ("Plaintiffs' claims may proceed if § 230(c)(1) does not apply."); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (noting Section 230 functions as an affirmative defense). In *G.G.*, the Seventh Circuit reversed the Rule 12(b)(6) dismissal because "[t]he allegations [did] not support the second and third elements," and therefore, the defendant could not establish Section 230 immunity based on the pleadings. *G.G.*, 76 F.4th. at 566. The *G.G.* court found that the plaintiff alleged that Salesforce supported, expanded, facilitated, helped and enabled the third party's unlawful conduct. *Id.* at 567. In other words, the *G.G.* plaintiff

11

properly sought to hold Salesforce responsible "for its own … acts or practices, rather than for publishing content [for] another." *Id.*[6]

The allegations foreclose the Passes Defendants from asserting Section 230 immunity because the Passes Defendants cannot satisfy these elements from "the face of the complaint." The Complaint does not concede that the Passes Defendants are a "service provider" and does not allege that the Passes Defendants are merely publishers or speakers of information or that a different content provider provided the information.  The Complaint alleges the exact opposite. Similar to the *G.G.* allegations, Plaintiff seeks to hold the Passes Defendants accountable for *their* acts and practices, as detailed within the four corners of the Complaint.  *See, e.g.,* Compl. ¶¶ 71-72, 80-81 (detailing Guo's overriding of safety measures for minors), ¶ 76 (Guo assuring Plaintiff "you can upload anything"), ¶¶ 85, 87 (Passes identified Plaintiff's content as CSAM and messages as CSAM advertisements); *see Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) ("[A] website helps to develop unlawful content, and thus falls within the [immunity] exception to [S]ection 230, if it contributes materially to the alleged illegality of the conduct."); *see also MG Freesites*, 676 F. Supp. 3d at 1162 (finding that plaintiffs plausibly alleged that defendants "materially contribute[d] to the provision of child pornography on their platforms" by "encourag[ing]" its development); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 841 (C.D. Cal. 2021).  Section 230 immunity therefore is inapplicable.

---

[6] The cases cited by the Passes Defendants are inapposite because those plaintiffs did not allege "material[] contributions" by the defendants, only that those defendants passively permitted wrongful third-party content. *See, e.g., Marriott Int'l*, 604 F. Supp. 3d at 1365 (no facts alleged showing that craigslist "actually 'encouraged'" the illegal conduct); *Omegle.com*, 2022 WL 93575, at *4 (no factual allegations that Omegle materially contributes to the unlawfulness of the content at issue); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) (no facts to plausibly establish that defendant corporations "knowingly participated" in the illegal conduct at issue).

### III.   Venue Is Proper in the Southern District of Florida

#### A.  Legal Standard

The Passes Defendants are incorrect that this action should be transferred for improper venue pursuant to 28 U.S.C. § 1406(a).  Faced with such a motion, the Court must accept all well-pleaded allegations in the complaint as true.  *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1379 (S.D. Fla. 2014).  The plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).  The court must also draw all reasonable inferences in the plaintiff's favor.  *Prou*, 62 F. Supp. 3d at 1379.  When affidavits submitted by the defendant conflict with the facts in the complaint, the court must give "greater weight" to the plaintiff's statement of facts and must construe such facts in the light most favorable to the plaintiff."  *Kearney Partners Fund, LLC v. United States*, 814 F. Supp. 2d 1349, 1352 (M.D. Fla. 2011) (citing *Home Ins. Co. v. Thomas Indus. Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)).

The Eleventh Circuit clearly "direct[s]" the court to "allow additional discovery" to clarify the issue of venue, rather than dismiss the action.  In *Home Insurance Company*, the Circuit reversed a district court's dismissal of a case for lack of venue where the court did not hold an evidentiary hearing.  896 F.2d at 1355.  The Eleventh Circuit then directed the court to determine the proper venue, but only after such discovery had been conducted.  *Id.* at 1359.  The Eleventh Circuit has reiterated this holding in subsequent decisions, holding that for issues such as "jurisdiction, venue, and service of process," the parties must "have sufficient opportunity to develop a record."  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  The U.S. Supreme Court held that ordering discovery into venue is appropriate to properly "ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n.13 (1978).

13

District courts in this Circuit have applied this directive when appropriately denying motions to dismiss for improper venue. *Kearney Partners Fund*, 814 F. Supp. 2d at 1357 (conducting an evidentiary hearing for defendant's motion to transfer venue and ultimately denying the motion based "on the testimony and evidence admitted" during the hearing); *McGrew v. Morgan*, No. 3:20-cv-1371-BJD-PDB, 2021 WL 7451894, at *8 (M.D. Fla. May 3, 2021), *report and recommendation adopted*, 2021 WL 8200186 (M.D. Fla. Aug. 18, 2021) (before resolving a Rule 12(b)(3) motion to dismiss for improper venue, "the parties must have a sufficient opportunity to develop the record"); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) (holding that "Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction").

### B.   The Passes Defendants Improperly Dispute the Complaint's Allegations

Venue is proper in this District because "a substantial part of the events or omissions giving rise to the claim occurred in" this District.  28 U.S.C. § 1391(b)(2); Compl. ¶ 22.  Specifically, the harm upon Plaintiff clearly arose out of the Passes Defendants' "business activities in the forum." *Prou*, 62 F. Supp. 3d at 1379-80 (denying motion to dismiss for improper venue even though defendant did not reside in Florida because business activities occurred in the forum).  Taken as true, as the Court must, Guo launched Passes—the platform that enabled the marketing and sale of sexually explicit conduct of an underage Plaintiff—in this District and while Miami was her primary residence.  From its inception, Passes was headquartered in Miami, Florida, and Guo raised millions in funding to establish and grow Passes *in Miami*, long before its purported relocation to Los Angeles.  Compl. ¶¶ 13, 16, 29, 31.  Guo also recruited Celestin as her agent to Passes when Guo's "primary" residence was in Miami, Florida.  *Id*. ¶¶ 47-50, 53. Because this District was where Guo first established Passes, Passes' Miami office can be reasonably inferred to have contemporaneous records and evidence of the alleged, relevant unlawful conduct.  This

14

includes the Passes messaging platform containing the agents of the Passes Defendants' advertisements and distribution of Plaintiff's CSAM and the Passes learning classifiers that identified Plaintiff's uploaded content as child pornography. *Id*. ¶¶ 85-88. Drawing on all reasonable inferences, the Passes Miami office likely houses computers, servers and records that contemporaneously documented the actions germane to Plaintiff's specific allegations.

The Passes Defendants nevertheless submit a declaration from Guo (the "Guo Declaration" or "Guo Decl.") consistent with their strategy to improperly litigate the facts of this case on a motion to dismiss. The Guo Declaration is evidently designed to create factual issues with well-pleaded facts establishing venue in this District. Closely read however, the Guo Declaration does not refute or conflict with Plaintiff's well-pleaded venue allegations in the slightest. Instead, the Guo Declaration attempts to state enough factual allegations to *try* to contradict the Complaint but still acknowledges facts that undermine their venue arguments. It is irrelevant that Guo refers to her California home as her "*primary* residence"—she does not deny that she continues to maintain her residence in *this* District. Guo Decl. ¶ 3 (emphasis added). Nor does Guo deny that Passes' headquarters and principal place of business have only ever been registered in Miami, nor that Passes still "maintains an office in Miami." *Id*. ¶¶ 5-6. Even taking the Guo Declaration as true, it does nothing to rebut the actual venue allegations in the Complaint. In fact, even if the Court determines that "those facts are contradicted by the defendant's affidavits, *the court must resolve such conflicts in favor of the plaintiff*." *Whitwam v. JetCard Plus, Inc.*, 34 F. Supp. 3d 1257, 1259 (S.D. Fla. 2014) (emphasis added); *see also Prou*, 62 F. Supp. 3d at 1379.

Plaintiff's ample allegations, as set forth above, are more than sufficient to set forth a *prima facie* showing of venue. Accordingly, the Court must deny the Motion to Dismiss for improper

15

venue or, in the alternative, to transfer venue; if the Court is not inclined to deny the Motion, the Court must instead order limited discovery into venue.[7]

## IV.     The Passes Defendants Are Liable for the Conduct of Their Agents, Defendants Celestin and Ginoza

The Passes Defendants' argument that the Complaint does not "come close to pleading that Celestin and Ginoza" are their agents is laughable.  The Complaint alleges "Guo instructed Celestin to act as an agent on behalf of her and Passes to recruit Creators between the ages of 15 and 17, such as Plaintiff," and "to guide and help minor Creators between the ages of 15 and 17 create and upload any content for Passes" and knew of Celestin's plans to produce, market and sell Plaintiff's CSAM on the Passes platform.  Compl. ¶¶ 48-49, 72, 81.  Guo's instructions were an acknowledgement that Celestin would act on behalf of Guo and Passes in recruiting minors to the platform, demonstrated Guo's ability to direct Celestin's actions in this regard, and shows that Guo enabled Celestin to scale the exploitation with the removal of the minor safety features.

### A.  Defendants Celestin and Ginoza Were Agents of the Passes Defendants

In an argument that seems to ignore the entirety of the 30-page Complaint, the Motion argues that Plaintiff does not sufficiently allege Defendants Celestin and Ginoza were agents of the Passes Defendants.  The Complaint is explicit that Defendants Celestin and Ginoza were both

---

[7] Nor does 28 U.S.C. § 1391 "limit venue to the place where all or most of the events giving rise to the claim occurred." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 2007 WL 1021359, at *4 (N.D. Fla. Mar. 31, 2007).  The plaintiff "must simply choose a venue where a substantial part of the events" giving rise to the claims occurred. *Cap. Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *2 (M.D. Fla. Aug. 27, 2008) (citation omitted).

In any event, "when a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328–29 (M.D. Fla. 2010) (citation omitted).  Here, as Plaintiff is a resident of Miami, Florida, the inconvenience of litigating this action in California would be substantial.

employees and agents of the Passes Defendants. *See, e.g.,* Compl. ¶¶ 19, 44 , 47-52, 53, 64-81, 89, 104. The fact that the Passes Defendants are going to dispute those facts at trial has no bearing on and is inappropriate to raise on a motion to dismiss.[8]

As to Defendant Passes, the argument is irrelevant. "The rule is well established that a corporation is an artificial entity that can act only through agents." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985). As a matter of law, the Complaint has therefore pleaded in the only way that Passes, a corporation, could be liable, and the Passes Defendants' argument is nonsensical. As to Defendant Guo, the cases the Passes Defendants cite to relate to different bases of liability under common law or statutes. Here, however, the statute under which Plaintiff brings these civil claims—18 U.S.C. § 2255—explicitly invokes criminal statutes 18 U.S.C. §§ 2252 and 2252A and is intended to provide a similar remedy for such criminal conduct. Federal law is clear that "whoever . . . aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2; *see also* Compl. ¶¶ 48-49 (alleging Guo instructed Celestin, acting as an agent of the Passes Defendants, to recruit underage Creators aged 15-17 and to help these minor Creators both create and upload any content to Passes).

**B. Counts I and II Should Not Be Dismissed on "Shotgun Pleading" Grounds**

The Passes Defendants appear to argue that Counts I and II combine allegations for both direct and agency liability in a manner that has been criticized by the Eleventh Circuit. What they do *not* dispute, however, is that these Counts satisfy the notice pleading standard. In light of the

---

[8] The Court should swiftly reject the Passes Defendants' tortured argument that Celestin acting as Plaintiff's *talent* agent means Celestin and Ginoza were "Plaintiff's agents" for purposes of a *legal* agency relationship. Mot. at 16 ("Passes cannot be held liable for the action of Plaintiff's own agents."). This argument turns the concept of a victim of child pornography on its head by arguing that Plaintiff, the victim, had control over Celestin and Ginoza and instructed them to create videos and images of herself, a minor, engaged in sexually explicit conduct.

17

Passes Defendants arguing against finding agency liability, Mot. at 14-15, they were clearly given "fair notice of the plaintiff's claim and the grounds upon which it rests," and therefore cannot reasonably assert the claims were improperly combined. *United States v. Universal Pharmacy, Inc.*, 2011 WL 13319470, at *2 (S.D. Fla. Mar. 2, 2011), *report and recommendation adopted sub nom. United States v. Mg Universal Pharmacy, Inc.*, 2011 WL 13319466 (S.D. Fla. Mar. 28, 2011).

To the extent the Court may find Counts I and II to impermissibly combine theories of liability, Eleventh Circuit precedent directs a district court to afford a "chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds*." Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Further, the Eleventh Circuit specifies that a defendant asserting shotgun pleadings should "move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The Passes Defendants' shotgun pleading argument contravenes established Eleventh Circuit precedent by raising their (incorrect) "impermissible shotgun pleading" arguments, Mot. at 14-16, under Rule 12(b)(6) rather than moving for a more definite statement of claims under Rule 12(e). The Court cannot dismiss on these grounds.

## V.   The Complaint's Class Action Allegations Should Not Be Stricken Nor Dismissed at the Pleadings Stage

The Passes Defendants' Motion to strike or dismiss the class action allegations is, at best, premature, and it would be manifest error to do so before discovery. "[M]otions to strike class allegations are generally disfavored because a motion for class certification is a more appropriate vehicle" to address such arguments. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1351-52 (S.D. Fla. 2013) (citations omitted). Striking class allegations at the pleadings stage "is the functional equivalent of denying class certification." *Foster v. Green Tree Servicing, LLC*, Case No 8:15-cv-1878-T-27MAP, 2016 WL 11493319, at

18

*2 (M.D. Fla. Nov. 8, 2016); *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 936-37 (11th Cir. 2016) (reversing on the grounds that the district court "should have allowed limited discovery instead of striking the class allegations based solely on the face of the complaint").

The Eleventh Circuit is clear that "pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008). The Passes Defendants' only argument is ultimately that the "*individualized* allegations" in the Complaint automatically bar the action from proceeding as a class action. Mot. at 20 (emphasis in original). If class actions required every putative class member to have identical allegations, as the Passes Defendants appear to argue, class actions would simply not exist.

Further, even assuming that the Passes Defendants' Motion is appropriate to address at the pleadings stage, it fails the Rule 12(f) standard, which prescribes that an allegation must be "redundant, immaterial, impertinent, or scandalous" to be struck. Fed. R. Civ. P. (12)(f); *see also Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014) (deeming it "proper . . . to view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike" and accordingly denying defendant's motion to strike).[9] In light of this District's precedent that striking a pleading is a "drastic remedy" and viewed "with disfavor," the Court should deny the

---

[9] The Passes Defendants skirt the open question in the Eleventh Circuit as to which standard of review applies to assessing a motion to strike class allegations, Rule 12(f) or Rule 23. Mot. at 19 n.11. In citing *Lawson v. Life of the S. Ins., Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012), they fail to mention that the *Lawson* court only struck class action allegations *six years* after the initial putative class action was filed and that considerable discovery had long been conducted. Plaintiff submits that applying the Rule 12(f) standard governing motions to strike is appropriate here, as other in-district courts have done. *See, e.g., Gill-Samuel*, 298 F.R.D. at 699.

19

Passes Defendants' Motion to strike or dismiss the class allegations and, instead, permit limited discovery into the question of class suitability if the Court finds it appropriate. *Gill-Samuel*, 298 F.R.D. at 699 (collecting cases).

**CONCLUSION**

For the foregoing reasons, the Court should deny the Passes Defendants' Motion to Dismiss for improper venue and for failure to state a claim. In the alternative, Plaintiff respectfully requests an opportunity to address any and all pleading deficiencies, as determined by the Court, in an amended complaint. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (holding that "plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice" (citation omitted)). Finally, Plaintiff has not acted with undue delay, in bad faith, or with dilatory motive, nor would amendment be futile here, as many detailed allegations are already set forth in the Complaint. Permitting amendment would not cause undue prejudice to the Passes Defendants, due to the early stages of this action. *Id.*, 252 F.3d at 1163 (reversing district court's dismissal of the action without leave to amend).[10]

---

[10] In the Passes Defendants' Certificate of Compliance with Local Rule 7.1(a)(2), the Defendants incorrectly state that "Plaintiff's counsel would not confirm Plaintiff's position on the motion" despite "multiple attempts." Mot. at 22. Defense counsel, not having yet made an appearance or granted *pro hac vice* admission to this District, requested a meet and confer on short notice to discuss venue. Plaintiff's counsel followed up on its prior and repeated attempts to have a Rule 26(f) conference with Defendants' prior counsel at the same time of the meet and confer for venue. Defense counsel, however, refused to do so, arguing that they had only been recently retained and were unprepared to do so. Three days later, defense counsel managed to get sufficiently prepared to file the instant Motion to Dismiss. No genuine attempts to discuss the Motion were made by the Passes Defendants.

20

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiff joins the Passes Defendants' request for oral argument pursuant to Local Rule 7.1(b)(2) and for the reasons stated therein.  Plaintiff would request approximately forty-five minutes for oral argument.

Dated: May 12, 2025
       Miami, Florida

SCHWARTZ BRESLIN PLLC

By: */s/ Jonathan Noah Schwartz, Esq.*
Jonathan Noah Schwartz, Esq.
Florida Bar. No. 1014596
E-Mail: JS@JSJB.Law; Tel.: (305) 577-4626
Schwartz Breslin PLLC
The Alfred I. DuPont Building, Ste. 700
169 E. Flagler Street, Miami, Florida 33131

CLARK SMITH VILLAZOR LLP
Christopher J. Clark, Esq.
clark@csvllp.com
(admitted *pro hac vice*)
Rodney Villazor, Esq.
rodney.villazor@csvllp.com
(admitted *pro hac vice*)
Michelle E. Lee, Esq.
michelle.lee@csvllp.com
(*pro hac vice forthcoming*)
Natalia Lima, Esq.
natalia.lima@csvllp.com
(admitted *pro hac vice*)

666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850

*Attorneys for Plaintiff*