UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|  Kelly Davis  |  N/A  |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**PROCEEDINGS:   (IN CHAMBERS)  ORDER (1) GRANTING IN PART AND
DENYING IN PART DEFENDANTS PASSES, INC. AND
LUCY GUO'S MOTION TO DISMISS AND STRIKE CLASS
ALLEGATIONS (Doc. 121); AND (2) GRANTING IN PART
AND DENYING IN PART DEFENDANT LANI GINOZA'S
MOTION TO DISMISS AND STRIKE CLASS
ALLEGATIONS (Doc. 122)**

Before the Court is a Motion to Dismiss First Amended Complaint and Strike
Class Allegations filed by Defendants Passes, Inc. and Lucy Guo, and a Motion to
Dismiss First Amended Complaint and Strike Class Allegations filed by Defendant Lani
Ginoza.  (Passes Mot., Doc. 121; Ginoza Mot., Doc. 122.)  Plaintiff Alice Rosenblum
opposed both Motions, and Defendants Passes, Inc. and Lucy Guo replied.  (Opp. to
Passes, Doc. 123; Opp. to Ginoza, Doc. 130; Passes Reply, Doc. 131.)  The Court held a
hearing on this matter on January 23, 2026.  For the following reasons, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

GRANTS IN PART AND DENIES IN PART Passes Inc. and Lucy Guo's Motion, and
GRANTS IN PART AND DENIES IN PART Lani Ginoza's Motion.

## I.    BACKGROUND

Defendant Passes, Inc. ("Passes") is an online platform through which creators sell exclusive content, livestreams, chats, and personalized experiences to customers and subscribers.  (First Amended Complaint ("FAC") ¶ 14, Doc. 118.)  Defendant Lucy Guo is the founder and Chief Executive Officer ("CEO") of Passes.  (*Id.* ¶ 17.)  Guo founded Passes in April 2022.  (*Id.* ¶ 27.)

Many comparable subscription-based platforms do not allow creators under the age of 18.  (*Id.* ¶¶ 31, 57.)  However, "[a]t all relevant times," Passes allowed creators between the ages of 15 to 17 to sell content on its platform, subject to certain safeguards. (*Id.* ¶ 31.)  Specifically, Passes' onboarding process collects and stores a creator's driver's license or other identification to verify the creator's age.  (*Id.* ¶ 90.)  If the creator is a minor, Passes requires parental consent before they can join as a creator or post content.  (*Id.* ¶ 44.)  Passes has also implemented various internal mechanisms to protect creators who are minors, including a restriction on direct messaging, automated review using machine learning of the creators' uploaded content and captions, manual review of content flagged by the machine learning algorithm, and the automatic deactivation of a minor creator's account if the creator uploads content containing nudity.  (*Id.* ¶¶ 46–49.) Passes' Community and Content Guidelines prohibit adult content and nudity, and prohibit the exploitation of any person under 18 years old.  (*Id.* ¶ 46.)

In late 2022 or early 2023, Guo hired Defendant Alec Celestin to lead creator acquisition and strategy for Passes, with an "aggressive compensation offer."  (*Id.* ¶ 58.) Celestin reported directly to Guo, had access to proprietary Passes data and Passes'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                              Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

internal systems, and coordinated recruitment strategies with Guo through "daily
communications."  (*Id.* ¶ 65.)

        Guo also allegedly instructed Celestin to grow Passes by recruiting creators
between the ages of 15 to 17, incentivizing them to join by emphasizing that "Passes
'higher-ups' such as Guo would personally help Creators create and upload content to get
their profiles off the ground[.]"  (*Id.* ¶ 62.)  At Guo's direction, on June 4, 2024, Celestin
reached out to Plaintiff Alice Rosenblum, who was 17 years old.  (*Id.* ¶ 78.)  Celestin
wrote that Plaintiff needed to sign up for Passes, and Plaintiff replied, "I am once I'm
18!!"  (*Id.*)  On August 10, 2024, Celestin again wrote to Plaintiff: "[] are you still
thinking Passes once you're 18?!  I know it's coming soon so just wanted to reach out to
check in.  Also, noticed you're in LA!  If you need a mansion to shoot at you're welcome
to use mine."  (*Id.* ¶ 79.)

        Plaintiff came to Celestin's house that same day.  (*Id.* ¶ 80.)  There, Celestin
pitched to Plaintiff that Plaintiff create and upload content to Passes, and that Passes
would market and sell her content to Passes customers.  (*Id.* ¶ 81.)  Plaintiff signed a
contract with WLM Management LLC ("WLM").[1]  (*Id.* ¶ 83.)  Celestin also took
photographs of Plaintiff, which were later uploaded to Passes.  (*Id.* ¶ 82.)  Additionally,
Celestin began creating a Passes creator profile for Plaintiff.  (*Id.* ¶ 89.)  To do so,
Celestin took a photo of Plaintiff's driver's license and uploaded it to Passes.  (*Id.* ¶ 89.)
However, Celestin allegedly planned to sell sexually explicit content of Plaintiff on
Passes, and therefore wanted to remove Passes' parental consent requirement for creators
under the age of 18, like Plaintiff.  (*Id.* ¶¶ 92–94.)  Celestin then called Guo, informed her
that he wanted to upload "adult content" of Plaintiff, and asked her to therefore waive the

---

[1] Plaintiff entered into a second contract with WLM on August 12, 2024, and a third
contract replacing WLM with Nofhotos Group, LLC ("Nofhotos") on December 24, 2024.  (*Id.*
¶ 84.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                          Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

parental consent requirement for Plaintiff's creator profile.  (*Id.* ¶ 94.)  Celestin then told Plaintiff that Guo had removed the requirement.  (*Id.* ¶ 97.)

Three days later, Plaintiff's account creation was complete.  (*Id.* ¶ 99.)  Celestin called Plaintiff, and Plaintiff expressed that she was having difficulty understanding the platform.  (*Id.* ¶ 100–01.)  Celestin then added Guo to the call, who instructed Plaintiff on how to upload content to the Passes Vault database, saying, "you can upload anything." (*Id.* ¶ 101–02.)  Additionally, that same day, Defendant Lani Ginoza, Celestin's assistant, told Plaintiff that she was "gonna try to get a clearance [for direct messaging] due to you being 18 in a month."  (*Id.* ¶ 105.)  Ginoza and Celestin asked Guo to override the direct messaging ban for minor creators for Plaintiff's profile.  (*Id.* ¶ 106–07.)  Guo allegedly "orchestrat[ed] the removal" of the direct messaging ban for Plaintiff's profile.  (*Id.* ¶ 107.)

Over the next month, while Plaintiff was still 17 years old, Celestin and Ginoza allegedly directed Plaintiff to create sexually explicit images and videos of herself.  (*Id.* ¶¶ 110–15.)  Celestin and Ginoza directed Plaintiff to upload the images and videos to Plaintiff's Passes Vault.  (*Id.* ¶¶ 110–12.)  Celestin and Ginoza then marketed the images and videos on Passes, and sold them to Passes subscribers, using Plaintiff's Passes' account.  (*Id.* ¶¶ 125–26.)  Specifically, the FAC provides over 14 examples of child sexual abuse material ("CSAM") involving Plaintiff, being marketed on the Passes platform for $69 to $4,000.  (*Id.* ¶¶ 126, 137.)  Furthermore, Passes agents posing as Plaintiff allegedly communicated via direct message to "big spenders" to continue to market and sell CSAM involving Plaintiff.  (*Id.* ¶¶ 139–42.)  One such spender spent over $47,000 on CSAM involving Plaintiff.  (*Id.* ¶ 141.)

Prior to Plaintiff's 18th birthday on September 21, 2024, Celestin and Ginoza asked Plaintiff to participate in an "18th birthday marketing campaign[.]"  (*Id.* ¶¶ 144–45.)  Specifically, on September 16, Ginoza allegedly directed Plaintiff to "do an icing /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

cake photoshoot" involving nudity.  (*Id.* ¶ 146.)  Ginoza also told Plaintiff the pricing
strategies she was considering for the campaign, and later told Plaintiff to "upload the
shower video when you get a chance."  (*Id.* ¶¶ 149–50.)  Passes then hosted a banner on
its platform featuring the photograph Celestin took of Plaintiff on August 10, 2024,
which advertised CSAM involving Plaintiff for $40 to $350.  (*Id.* ¶ 151.)

        In August 2024, Plaintiff learned that a sexually explicit image of her, which had
been uploaded to the Passes Vault and sold to Passes subscribers, had been posted to a
different platform.  (*Id.* ¶¶ 127–28.)  The same day, Plaintiff was summoned to her high
school principal's office regarding concerns about CSAM.  (*Id.* ¶ 129.)  Plaintiff was
"emotionally devastated" and expressed "extreme distress" about the reposted
photograph to both Ginoza and Celestin, writing to Celestin, "I'm not 18 yet so I don't
really know what to do . . . I'm 17 and I hate that my principal already knows . . ."  (*Id.*
¶¶ 128–30.)

        On February 26, 2025, Plaintiff filed this putative class action in the Southern
District of Florida against Defendants Passes, Nofhotos, WLM, Guo, Celestin, and
Ginoza.  (Compl., Doc. 1.)  On September 2, 2025, the case was transferred to this Court
in the Central District of California.  (Order Granting MTD, Doc. 69.)  Plaintiff filed a
FAC on October 24, 2025 on behalf of a proposed class, defined as "[a]ll persons who
were under 18 years of age at the time they were depicted in a video or image of any
child pornography as defined under 18 U.S.C. § 2252A, that has been possessed by
Defendants or distributed to Passes subscribers by Defendants."  (FAC ¶ 160.)  Plaintiff
brings 11 claims for (1) receipt, distribution, and possession of child pornography in
violation of 18 U.S.C. § 2252, 2252A, against all Defendants; (2) aiding and abetting
sexual exploitation of a minor, against Passes and Guo; (3) nonconsensual distribution of
intimate content in violation of California Civil Code § 1708.85, against Passes, Guo,
Nofhotos, WLM, and Ginoza; (4) intentional infliction of emotional distress ("IIED"),
against Passes, Guo, Nofhotos, WLM, and Ginoza; (5) negligence, against Passes and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Guo; (6) negligent hiring, supervision, or retention, against Passes and Guo; (7) engagement in human trafficking in violation of California Civil Code § 52.5, against Passes, Guo, Nofhotos, WLM, and Ginoza; (8) civil conspiracy against Passes, Guo, Nofhotos, WLM, and Ginoza; (9) declaratory judgment that Plaintiff and Celestin's contract is unenforceable, against Celestin; (10) declaratory judgment that Plaintiff and WLM's contract is unenforceable, against WLM and Celestin; and (11) declaratory judgment that Plaintiff and Nofhotos's contract is unenforceable, against Nofhotos and Celestin.  (*Id.* at 37–45.)

On November 14, 2025, Passes and Guo ("Passes Defendants") filed a Motion to Dismiss the FAC as to Passes Defendants and Strike its Class Allegations.  (Passes Mot.) On November 26, 2025, Ginoza filed a Motion to Dismiss the FAC as to Ginoza and Strike the Class Allegations.  (Ginoza Mot.)  The Court first considers Passes Defendants and Ginoza's (together, "Moving Defendants") Motions to Dismiss, then turns to Moving Defendants' Motions to Strike.

## II.    <u>MOTIONS TO DISMISS</u>

### A.    **Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                     Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

When courts find that a complaint fails to state a claim, they are to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (indicating that leave to amend is granted with "extreme liberality").  But Rule 15's "liberality does not apply when amendment would be futile."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).  A proposed amendment is futile if "no set of facts can be proved under the amendment that would constitute a valid claim or defense."  *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005).

**B.      Analysis**

Moving Defendants seek dismissal of the FAC's claims against Passes, Guo, and Ginoza for (1) receipt, distribution, and possession of child pornography in violation of 18 U.S.C. § 2252, 2252A; (2) aiding and abetting sexual exploitation of a minor; (3) nonconsensual distribution of intimate content in violation of California Civil Code § 1708.85; (4) intentional infliction of emotional distress ("IIED"); (5) negligence; (6) negligent hiring, supervision, or retention; (7) engagement in human trafficking in violation of California Civil Code § 52.5; and (8) civil conspiracy.  (*See* Passes Mot., Ginoza Mot.)  Passes Defendants contend that Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), immunizes them from liability for Plaintiff's first, third, fourth, fifth, and seventh claims.  (Passes Mot. at 17–21.)  Passes Defendants further argue that Plaintiff fails to state a claim for any of the eight claims as to Passes and Guo.  (*Id.* at 21–31.)  Ginoza also seeks to dismiss the FAC's first, third, fourth, seventh, and eighth claims against herself.  (*See* Ginoza Mot.)  The Court first addresses Passes Defendants' Section 230 argument, then addresses each claim in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

**1.**    **Section 230**

Passes Defendants contend that Passes, as an interactive computer service, and
Guo, as Passes' CEO, are immune from liability for five of Plaintiff's claims, all of which
involve the receipt and distribution of CSAM, under Section 230.  (Passes Mot. at 17–
18.)  Section 230 provides that "[n]o provider . . . of an interactive computer service shall
be treated as the publisher or speaker of any information provided by another information
content provider."  47 U.S.C. § 230(c)(1).  In general, Section 230 is meant to "protect[]
websites from liability for material posted on the website by someone else."  *Doe v.
Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).  The Ninth Circuit uses a three-
prong test to evaluate immunity under Section 230: the defendant will be immune if they
are "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks
to treat . . . as a publisher or speaker (3) of information provided by another information
content provider."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir.
2019) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)).  "When
a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's
claims should be dismissed."  *Id.*

Section 230 immunity plainly does not apply to Plaintiff's claims.  To be sure,
Plaintiff does largely seek to hold Passes Defendants liable as providers of an interactive
computer service, and several allegations treat Passes as a publisher, as they involve
Passes' distribution of CSAM involving Plaintiff.[2]  *See Doe #1 v. Twitter, Inc.*, 2023 WL

---

[2] The first and second *Barnes* prongs may not apply to some of the allegations, however.
For example, as discussed more in-depth below, Plaintiff's allegation that Guo encouraged
Plaintiff over the phone to post content, which supports Plaintiff's claims for IIED and California
Civil Code § 52.5, does not hold Guo accountable for Passes' publishing activity.  *Cf. Klayman
v. Zuckerberg*, 753 F.3d 1354, 1357–58 (D.C. Cir. 2014) (concluding that Facebook's CEO
qualifies for protection under Section 230 because the plaintiff "seeks to hold him accountable
for his role" in making Facebook available).  To the extent the FAC seeks to hold Passes
vicariously liable for these same actions, the second *Barnes* prong is not satisfied as to Passes, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                          Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

3220912, at *2 (9th Cir. May 3, 2023).  Still, the third *Barnes* prong precludes Section
230 immunity.  Under the third *Barnes* prong, an interactive computer service like Passes
will be entitled to immunity only if it is sued as a publisher of *third-party* content,
meaning that Passes must not be "'responsible, in whole or in part, for the creation or
development of' the offending content."  *Fair Hous. Council of San Fernando Valley v.
Roommates.Com*, 521 F.3d 1157, 1162 (9th Cir. 2008) (quoting 47 U.S.C. § 230(f)(3)).
Here, Plaintiff alleges that Passes and its agents were directly responsible for the creation
and portrayal of the CSAM on the Passes platform: Plaintiff alleges that Celestin, acting
as an agent of Passes, personally took at least one photo of Plaintiff which was uploaded
to Passes, and further instructed her to create specific photographs and videos and upload
them to Passes, which he later marketed under specific captions and sold.  Plaintiff
further alleges that Passes itself hosted a banner featuring a sexually explicit photo of
Plaintiff, which marketed CSAM involving Plaintiff.  Plaintiff therefore seeks to hold
Passes liable for harm allegedly arising out of its own creation of harmful content.  *See
Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021) ("[E]ven if Snap is acting as a
publisher in releasing Snapchat and its various features to the public, the Parents' claim
still rests on nothing more than Snap's "'own acts.'" (quoting *Roommates*, 521 F.3d at
1165)); *Roommates*, 521 F.3d at 1166 (finding that Section 230 immunity did not apply
where the platform was "much more than a passive transmitter of information provided
by others; it [was] the developer, at least in part, of that information[.]").

Passes Defendants attempt to attribute such actions to Celestin and Ginoza only,
deeming them third parties who independently uploaded content onto Passes.  (Passes

---

Plaintiff's theory of liability does not depend on a duty that "derives from [Passes'] status or
conduct as a publisher or speaker."  *Barnes*, 570 F.3d at 1107; *cf. Quinteros v. InnoGames*, 2024
WL 132241, at *1 (9th Cir. Jan. 8, 2024) ("Quinteros plausibly alleges that Forge of Empires
moderators improperly accessed a sensitive image of hers . . . .  These allegations do not treat
Defendants as publishers or speakers and therefore are not covered by the CDA.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Mot. at 19–20.)  This argument is unavailing.  As alleged, Celestin was not merely another third-party user of Passes; rather, he acted as an agent and employee of Passes.[3]

        "An innocent principal or employer is liable for the torts committed by an agent or employee while acting within the scope of the agency or employment."  *Stokes v. California Horse Racing Bd.*, 98 Cal. App. 4th 477, 482 (2002).  "Generally, for an agency relationship to exist, a principal must consent to the agent acting on his behalf and subject to his control, and the agent must consent to act for the principal."  *Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005) (citing Restatement (2d) of Agency § 1).  The FAC contains facts sufficient to plausibly allege the existence of such a relationship.  First, it alleges that because Guo "recruited and hired Celestin," then "instructed Celestin to promote Passes" and "'personally asked' him to reach out to certain creators, and because Celestin "communicated directly with Creators, including Plaintiff, via his official Passes accounts," leading revenues to "flow[] through Passes' official financial systems," Celestin was acting on behalf of Passes.  (FAC ¶ 157.)  Second, it pleads facts going to Passes' control over Celestin's actions: Celestin allegedly "reported directly to" Guo, Passes' CEO; Celestin and his assistant Ginoza reached out to Guo for permission to take certain actions; and Guo and Celestin had "daily communications."  (*Id.* ¶¶ 65, 93–94, 104.)  Because the FAC plausibly alleges that Celestin was acting on behalf of Passes, the CSAM created and distributed by Celestin is not third-party content, as required by the third *Barnes* prong.  *See Quinteros*, 2024 WL 132241, at *1 ("Quinteros

---

        [3] Plaintiff further alleges that Celestin was also an agent of Guo.  For reasons discussed below, this argument is unavailing.  But this does not affect the Section 230 analysis as to Guo.  To the extent the FAC seeks to hold Guo liable for her actions outside of her role as provider of Passes, immunity is not available; to the extent the FAC seeks to hold Guo liable based on her status as a provider of Passes, immunity is also not available because Passes has allegedly contributed to the creation of the content at issue.  *See Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023) (reasoning that CEOs "are immune under § 230 to the same extent" as their companies), *aff'd,* 2025 WL 927186 (9th Cir. Mar. 27, 2025).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                           Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

sufficiently alleges that moderators are not third parties within the meaning of the CDA,
but rather individuals with some unspecified agency relationship to Defendants.
Accordingly, the CDA does not immunize Defendants from the alleged actions of
moderators.").  Thus, Section 230 immunity does not apply to Passes, a platform which
has allegedly, through its agents, deliberately created, marketed, and sold illegal content,
acting as an "information content provider" that uses its own "interactive computer
service."

　　　The Court therefore turns to the merits of Plaintiff's claims.

## 2.      18 U.S.C. § 2252, 2252A

　　　Under 18 U.S.C. § 2255, "any person who, while a minor, was a victim of a
violation of section . . . 2252, 2252A . . . may sue in any appropriate United States
District Court and shall recover the actual damages . . . ."  18 U.S.C. §§ 2252 and 2252A
proscribe "knowingly receiv[ing], or distribut[ing] . . . child pornography," and
"knowingly sell[ing] or possess[ing] with intent to sell any child pornography."  Plaintiff
alleges that all Defendants violated the statutes because they "knowingly received,
possessed, advertised and distributed child pornography."  (FAC ¶ 169.)  In their
motions, Moving Defendants do not contest that the CSAM depicting Plaintiff that was
sold to Passes subscribers, as alleged, qualifies as child pornography under the statutes.
Rather, Passes Defendants argue that neither Passes nor Guo had the requisite knowledge
required to establish a direct violation of §§ 2252 and 2252A, and that they also cannot
be held vicariously liable for the actions of Celestin.  (Passes Mot. at 21–28.)  Ginoza
additionally argues that the FAC contains no individualized assertions that Ginoza herself

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                             Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

violated §§ 2252 and 2252A.  (Ginoza Mot. at 13.)  The Court first addresses Ginoza,
Passes, and Guo's direct liability, then turns to vicarious liability.

### A) Direct Liability

First, the FAC adequately alleges that Ginoza distributed and sold CSAM
involving Plaintiff.  Celestin and Ginoza allegedly directed Plaintiff to create CSAM and
upload it to Passes, which they then marketed on Passes using certain sexually explicit
captions and sold to Passes subscribers—one subscriber spent over $47,000 on CSAM
involving Plaintiff.  (FAC ¶¶ 126, 141.)  As to Ginoza individually, the FAC contains
several specific allegations detailing her involvement: she eliminated the direct
messaging restriction on Plaintiff's account, which allowed for marketing of CSAM
directly to Passes subscribers; she directed Plaintiff to "do an icing / cake photoshoot"
involving nudity and to "upload the shower video when you get a chance"; she shared
marketing strategies with Plaintiff, indicating that Ginoza planned to "send them out as a
mass DM" or "send out a text mass dm that says 'now that im 18 things are about to get
wild'"; and she told Plaintiff that she would try to sell one video "for $4,000 to Plaintiff's
'biggest spender.'"  (*Id.* ¶¶ 146–50.)  These allegations are sufficient to establish that
Ginoza, in addition to Celestin, knowingly distributed and sold CSAM.

Second, the FAC adequately alleges Passes' direct liability.  Passes received and
distributed CSAM involving Plaintiff, and allegedly did so with the knowledge "both [of]
the sexually explicit nature of the material and [of] the age of [Plaintiff]."  *Doe v. Apple
Inc.*, 2025 WL 1266928, at *4 (N.D. Cal. May 1, 2025) (quoting *United States v. X-
Citement Video*, 513 U.S. 64, 78 (1994)).  Unlike in *Doe v. Apple*, the allegations do not
merely contend that Passes provided "a platform where it is easy to share child
pornography."  *Id.*  To the contrary, the FAC alleges that Passes ordinarily requires
parental consent for all minor creators' accounts, but that Passes deliberately removed the
requirement for Plaintiff's account specifically, and did so only after Celestin "informed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                           Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Guo that Plaintiff needed the parental consent requirement waived so that she could upload adult content."  (FAC ¶¶ 93–94.)  In addition, Passes also removed the direct messaging ban.  (*Id.* ¶ 107.)  These account safeguards exist only for creators under the age of 18; thus, allegations that Passes overrode them, after having been told that the override was needed to post "adult content," support Plaintiff's claim that Passes had actual knowledge that the content being distributed from Plaintiff's account was CSAM. Further, Plaintiff alleges that Passes' machine learning classifiers flagged Plaintiff's images and videos containing nudity for manual review, and that they also recognized banned words in Plaintiff's direct messages, triggering manual review by a human moderator.  (*Id.* ¶¶ 117–20, 124.)  These additional facts also plausibly allege that Passes viewed, and therefore had actual knowledge of, CSAM involving Plaintiff, which it then distributed and sold.  *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal.), *adhered to on denial of reconsideration,* 574 F. Supp. 3d 760 (C.D. Cal. 2021) (concluding that the plaintiff had plausibly alleged actual knowledge of child pornography because "according to Plaintiff, Defendants' moderators knowingly reviewed, approved, and featured child pornography videos on their platforms, including videos of Plaintiff").

However, the FAC fails to allege that Guo has directly violated §§ 2252 and 2252A, as there are no allegations that Guo herself received, distributed, or sold CSAM. Nevertheless, Plaintiff alleges that Celestin and Ginoza were acting within the scope of authority granted to them by Passes and Guo to support a claim of vicarious liability as to Guo.  (Opp. to Passes at 11–15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                          Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

**B) Vicarious Liability[4]**

"A corporate employee typically acts on behalf of the corporation, not its owner or officer."  *Meyer v. Holley*, 537 U.S. 280, 286 (2003).  Although, as discussed above, Plaintiff plausibly alleges an agency relationship as between Celestin and Passes, there are no facts to support the existence of an "independent agency relationship" between Celestin and Guo, or Ginoza and Guo.  *Rose v. Seamless Fin. Corp. Inc.*, 916 F. Supp. 2d 1160, 1168 (S.D. Cal. 2013).  Indeed, Plaintiff appears to concede that any alleged agency relationship between Celestin and Guo is tied to, or essentially the same as, the agency relationship between Celestin and Passes.  (*See* FAC ¶ 60 ("[B]oth Passes and Guo, as Passes' CEO, had full control over the acts that Celestin took on behalf of Passes in furtherance of his role.").)  The Court therefore sees no reason to depart from "traditional principles" of vicarious liability, which would hold Passes, Celestin's employer, vicariously liable for Celestin's actions, rather than Guo, Passes' CEO.  *Meyer*, 537 U.S. at 286.  Accordingly, Plaintiff has failed to state a viable claim as to Guo's direct or vicarious liability under § 2255.

Moving Defendants' motion to dismiss Count I are DENIED, with the exception that Guo's motion is GRANTED with leave to amend as to Guo.

**3.       Aiding and Abetting**

Plaintiff further alleges that "Guo and Passes knowingly and substantially assisted in the distribution and possession of child pornography," thus aiding and abetting

---

[4] Other courts have found that a theory of vicarious liability is not available for violations of §§ 2252 and 2252A.  *See, e.g.*, *E.M. v. Varsity Brands, LLC*, 2024 WL 2808183, at *7 (C.D. Cal. May 31, 2024) (collecting cases).  The Court does not reach this issue because it concludes that as alleged, Guo is not vicariously liable for Celestin's actions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                              Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Celestin and Ginoza's violations of §§ 2252 and 2252A.[5]  (FAC ¶ 176.)  Passes
Defendants argue that the statute under which Plaintiff attempts to sue for aiding and
abetting liability, 18 U.S.C. § 2255, does not permit such liability.  (Passes Mot. at 28.)

The Court agrees with Passes Defendants that *Central Bank of Denver, N.A. v.
First Interstate Bank of Denver, N.A.* forecloses Plaintiff from suing Passes Defendants
for aiding and abetting under § 2255.  In *Central Bank*, the Supreme Court considered
whether aiding and abetting liability was available for § 10(b) of the Securities Exchange
Act, and reasoned, "when Congress enacts a statute under which a person may sue and
recover damages from a private defendant for the defendant's violation of some statutory
norm, there is no general presumption that the plaintiff may also sue aiders and abettors."
511 U.S. 164, 182 (1994).  The Supreme Court thus declined to "interpret the statutory
silence [of § 10(b)] as tantamount to an implicit congressional intent to impose § 10(b)
aiding and abetting liability."  *Id.* at 185.  Like § 10(b), 18 U.S.C. § 2255 is silent as to
aiding and abetting liability; it provides only that "any person who, while a minor, was a
victim of a violation of section . . . 2252, 2252A . . . may sue in any appropriate United
States District Court and shall recover the actual damages . . . ."

Plaintiff cites to several cases that have allowed for aiding and abetting liability
under § 2255, and argues that because the "statute 'does not specify against whom a
lawsuit may be brought,'" (*see* Opp. to Passes at 23 (citing *T.D.P. v. Choice Hotels Int'l,
Inc.*, 725 F. Supp. 3d 784, 791 (S.D. Ohio 2024))), aiding and abetting liability is
permitted.  But *Central Bank* does not allow the Court to read § 2255's failure to address
aiding and abetting liability as Congressional intent to impose aiding and abetting

_____

[5] The FAC does not identify the statute to which it attempts to attach aiding and abetting
liability, but the allegations under Count II relate to the distribution and possession of child
pornography, invoking the language of §§ 2252 and 2252A.  Plaintiff's opposition and
statements at the hearing further clarify that she alleges Passes and Ginoza aided and abetted
violations of §§ 2252 and 2252A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

liability.  *See Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 481 (D.S.C. 2023)
("To be sure, the court recognizes that a few other courts have read secondary liability
into § 2255. . . .  In doing so, however, those courts overlooked the Supreme Court's
decision in *Central Bank*[.]").  Rather, the Court concludes that in the absence of any
indication that Congress intended to include aiding and abetting liability in § 2255,
Plaintiff cannot bring such a claim.  *See Mandel v. Daskal*, 2025 WL 2452362, at *4
(E.D.N.Y. Aug. 25, 2025) ("In sum, section 2255 is silent on secondary liability, so the
remaining defendants cannot be held secondarily liable as aiders and abettors under that
statute."); *Doe 1 v. Varsity Brands, LLC*, 724 F. Supp. 3d 463, 470 (E.D.N.C. 2024)
(reaching the same conclusion); *Doe v. Hansen*, 2018 WL 2223679, at *6 (E.D. Mo. May
15, 2018) (same); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281–82 (D. Conn. 2013)
(same); *Doe 9*, 679 F. Supp. 3d at 481–82.  Accordingly, Count II is DISMISSED WITH
PREJUDICE.

### 4.        Cal. Civ. Code § 1708.85

Under California Civil Code § 1708.85, "[a] private cause of action lies against a
person who intentionally distributes . . . [sexually explicit material] of another, without
the other's consent[.]"  Here, for the reasons described above, Plaintiff has adequately
alleged that Ginoza intentionally distributed CSAM, and that Passes, having actual
knowledge of the nature of the content distributed from Plaintiff's account, also
intentionally distributed CSAM.

However, just as Plaintiff fails to allege that Guo personally distributed CSAM in
violation of §§ 2252 and 2252A, Plaintiff also fails to allege that Guo distributed CSAM
in violation of § 1708.85.  Moreover, as discussed above, Guo cannot be held vicariously
liable for Celestin and Ginoza's actions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Accordingly, Moving Defendants' motions to dismiss Count III are DENIED, with the exception that Guo's motion is GRANTED with leave to amend as to Guo.

## 5.        IIED

Under California law, "[t]he elements of a prima facie case for the tort of intentional infliction of emotional distress [are] as follows: '(1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (quoting *Cervantez v. J.C. Penney Co.* 24 Cal. 3d 579, 593 (1979)).

Plaintiff has sufficiently alleged IIED as to each of Moving Defendants.  Ginoza allegedly repeatedly directed 17-year-old Plaintiff to create and upload CSAM, and marketed and sold the CSAM.  (FAC ¶¶ 110–27.)  Moreover, Ginoza continued to engage in this behavior even after Plaintiff had expressed to her that the CSAM had been leaked.  (*See* FAC ¶ 128.)  Passes allegedly removed the parental consent requirement and the direct messaging restriction from Plaintiff's account, after having been informed that such changes were necessary to distribute CSAM, and continued to distribute CSAM involving Plaintiff despite manually reviewing Plaintiff's content.  (*Id.* ¶¶ 94, 97, 107, 124); *see Mindgeek*, 558 F. Supp. 3d at 844–45.  And Guo was allegedly told of the plan for sexually explicit content involving Plaintiff, a minor, to be uploaded to Passes, and nevertheless facilitated the removal of several safeguards protecting minor accounts, and told Plaintiff over the phone how to upload content.  (FAC ¶¶ 94, 97, 102, 107.)  These "extreme and outrageous" actions were undertaken with at least reckless disregard for Plaintiff's well-being, and resulted in severe emotional distress to Plaintiff, who learned that CSAM involving her was publicly leaked.  (*Id.* ¶ 128.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:25-cv-08457-JLS-PD                              Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

Accordingly, Moving Defendants' motions to dismiss Count IV are DENIED.

### 6.        Negligence

Plaintiff successfully alleges a negligence claim as to Passes Defendants.  A
plaintiff bringing a negligence claim must plead duty, breach, causation, and damages.
*See Marlene F. v. Affiliated Psych. Med. Clinic, Inc.*, 770 P.2d 278, 281 (Cal. 1989).
Although Passes Defendants contend that a website operator does not owe users a duty of
care "when a website facilitates communication, in a content-neutral fashion," Plaintiffs
do not allege that Passes acted neutrally.  *Dyroff*, 934 F.3d at 1101.  Rather, Plaintiff's
alleges that Passes, through its agent Celestin, recruited Plaintiff, created CSAM
involving Plaintiff, and distributed the CSAM through Plaintiff's website.  Such actions
create a duty to Plaintiff to take reasonable care in preventing the harms that can be
reasonably anticipated from the creation and distribution of such CSAM.  *Cf. In re
Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F.Supp.3d 767, 799 (N.D.
Cal. 2019) ("[T]he plaintiffs allege that they entrusted Facebook with their sensitive
information, and that Facebook failed to use reasonable care to safeguard that
information[.]").  Plaintiff alleges that Passes took no such actions, resulting in
substantial harm.

Plaintiff further successfully states a negligence claim as to Guo.  Plaintiff alleges
that Guo directed Celestin to reach out to Plaintiff, knew that Celestin wanted to upload
"adult content" to Plaintiff's account, but nevertheless removed safeguards in place for
creators under the age of 18 from Plaintiff's account, and told Plaintiff how to post
content.  (FAC ¶¶ 78, 94, 97 102, 107.)  Such actions constitute a breach of the duty of
care Guo owed to Plaintiff, resulting in the distribution of CSAM and substantial harm.
Accordingly, Plaintiff has plausibly alleged that Passes Defendants acted negligently, and
Passes Defendants' Motion to Dismiss Count V is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                         Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

**7.       Negligent Hiring, Supervision, or Retention**

Plaintiff alleges that Passes Defendants negligently hired, supervised, or retained Celestin.  "California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996).  "Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.*

Plaintiff successfully states a negligent supervision or retention claim as to Passes Defendants.  First, with respect to Guo, Celestin's direct supervisor, "the potential legal responsibility of [individual supervisors] for negligent hiring or retaining [an employee] arises from the special relationship they had with plaintiff." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 877 (2012).  The FAC adequately alleges that Guo and Plaintiff had a special relationship giving rise to a "duty to take reasonable measures to protect plaintiff from injuries at the hands of others." *Id.*  Unlike in *de Villers*, in which employees had no duty to protect a victim from an attack by his wife (their coworker) because they had no special protective relationship with the victim, Plaintiff is not just another third party to Guo.  *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 249–51 (2007).  Rather, Guo was allegedly responsible for recruiting Plaintiff to Passes, thereby putting her in harm's way.  (FAC ¶¶ 78, 93–97.)  Such actions give rise to a special relationship between Guo and Plaintiff through which Guo owed Plaintiff a duty to protect her from the foreseeable injuries at the hands of her employees. *See Greyhound Lines, Inc. v. Dep't of California Highway Patrol*, 213 Cal. App. 4th 1129, 1136 (2013) (reasoning that placing someone in harm's way creates a special relationship and a duty of care).

Plaintiff plausibly alleges that Guo did not take reasonable measures to protect Plaintiff from Celestin's actions.  Guo allegedly knew of Celestin's grooming of Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

and Celestin's plans to distribute CSAM involving Plaintiff: Plaintiff alleges that while Plaintiff was at Celestin's house, Celestin called Guo and informed her of his plan to upload sexually explicit material onto Plaintiff's under-18 Passes account, and that Guo joined a call days later with Celestin and Plaintiff, in which they discussed uploading content.  (FAC ¶ 102.)  Nevertheless, Guo did not terminate Celestin nor disable his access to Passes, but rather allowed Celestin to distribute and sell CSAM involving Plaintiff via Passes over the course of the next month.  (*See id.* ¶¶ 126, 138.)  Such facts plausibly allege that Guo negligently retained Celestin and caused substantial harm, and are therefore also sufficient to state a negligent retention claim as to Passes, Guo's employer.  *See William S. Hart*, 53 Cal. 4th at 875, 877 (holding that individual allegations as to employees' negligent supervision render their employers, including private employers, liable under a theory of vicarious liability).

Accordingly, Passes Defendants' Motion to Dismiss Count VI is DENIED.

### 8.    CTVPA, Cal. Civ. Code § 52.5

Under California's Trafficking Victims Protection Act ("CTVPA"), "[a] victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action . . . ."  Cal. Civ. Code. § 52.5(a).  Section 236.1 of the California Penal Code defines human trafficking, in relevant part, as "caus[ing], induc[ing], or persuad[ing], or attempt[ing] to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of" various statutes, including California Penal Code § 311.1. § 311.11 prohibits knowingly sending, possessing, publishing obscene matter depicting a person under the age of 18, with intent to distribute.

The FAC contains sufficient allegations to state a CTVPA claim against Ginoza. Plaintiff alleges that Ginoza caused, induced, and persuaded Plaintiff to create sexually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

explicit content and upload such content while Plaintiff was 17 years old.  (*See, e.g.*, *id.* ¶¶ 113–14, 146–47 ("Ginoza expressly instructed Plaintiff to 'do an icing / cake photoshoot' and sent Plaintiff an example of nude pictures of a female[.]").)  Plaintiff further alleges that Ginoza induced Plaintiff to do so with the intent to sell the CSAM. (*See, e.g.*, *id.* ¶ 149 ("Ginoza would . . . 'send them out as a mass DM' through Passes for $500").)

The FAC also contains sufficient allegations to state a CTVPA claim against Guo. Plaintiff alleges that Guo orchestrated the removal of certain safeguards, enabling Plaintiff to create a minor creator account through which Plaintiff could upload sexually explicit content without parental approval, and additionally allowed for the account to advertise CSAM via direct messages.  (*Id.* ¶¶ 96–99, 107.)  Plaintiff further alleges that Guo directly told Plaintiff, "you can upload anything," after she allegedly learned of Celestin's plan to have Plaintiff upload "adult content."  (*Id.* ¶ 102.)  Plaintiff therefore plausibly alleges that Guo, through her actions and words to Plaintiff, induced, or at least attempted to induce, Plaintiff to create and upload CSAM.  Plaintiff further plausibly alleges that Guo did so with the "intent to effect" the distribution of CSAM: the FAC alleges that Guo knew of Celestin's plan to sell CSAM involving Plaintiff on Passes.  (*Id.* ¶ 94.)

Finally, Plaintiff has plausibly alleged that Passes violated the CTVPA under a theory of vicarious liability for Guo's actions.  "Vicarious liability is a deeply rooted sentiment in California."  *Presbyterian Camp & Conf. Centers, Inc. v. Superior Ct.*, 42 Cal. App. 5th 148, 155–56 (2019) (internal quotation marks omitted).  Because § 52.5 does not preclude vicarious liability, and indeed broadly allows a "victim of human trafficking" to bring a civil action without additional caveats, the Court concludes that Passes may be held vicariously liable for its employees' actions under the CTVPA.  *See id.* at 156 ("[W]e presume the Legislature did not intend to depart from [the common law rules governing vicarious liability] since sections 13009 and 13009.1 are silent on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                          Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

issue of vicarious liability.")  Because Guo was allegedly acting as an agent of Passes in
her capacity as CEO while she was engaging with Plaintiff and facilitating the
distribution of her content, Plaintiff has successfully stated a CTVPA claim as to Passes.

Accordingly, Moving Defendants' motions to dismiss Count VII are DENIED.

**9.        Civil Conspiracy**

In California, "[c]onspiracy is not a cause of action, but a legal doctrine that
imposes liability on persons who, although not actually committing a tort themselves,
share with the immediate tortfeasors a common plan or design in its perpetration."
*Applied Equip. Corp. v. Litton Saudi Arabi Ltd.*, 7 Cal. 4th 503, 510–11 (1994).  Thus,
"the basis of a civil conspiracy is the formation of a group of two or more persons who
have agreed to a common plan or design to commit a tortious act."  *Kidron v. Movie
Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995) (citation omitted).  To plead a
civil conspiracy in California, a plaintiff must allege "(1) the formation and operation of
the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage
resulting."  *Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal App. 4th 1022, 1048 (1998)
(quoting *Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616, 631 (1972)).  "The sine qua non of a
conspiratorial agreement is the knowledge on the part of the alleged conspirators of its
unlawful objective and their intent to aid in achieving that objective."  *Kidron*, 40 Cal.
App. 4th at 1582 (quoting *Schick v. Lerner*, 193 Cal. App. 3d 1321, 1328 (1987)).

Plaintiff alleges that Passes, Guo, Nofhotos, WLM, and Ginoza were parties to a
civil conspiracy.  But Plaintiff's allegations as to Nofhotos and WLM's conduct are
barebones; it is unclear if and how Nofhotos and WLM agreed to "a common and
unlawful plan" with the other alleged co-conspirators.  *Berg & Berg Enters., LLC v.
Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 (2005).  And even if there were an
agreement among Passes, Guo, Nofhotos, WLM, and Ginoza, "it is well established there

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                          Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

can be no conspiracy among a corporation and its own employees." *Sprint Sols., Inc. v. Cell Wholesale, Inc.*, 2015 WL 13919095, at *9 (C.D. Cal. Dec. 10, 2015) (Staton, J.). "When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire." *Id.* (quoting *Black v. Bank of Am.*, 30 Cal. App. 4th 1, 6 (1994)).  "Thus, '[t]o hold that a subordinate employee of a corporation can be liable for conspiring with the corporate principal would destroy what has heretofore been the settled rule that a corporation cannot conspire with itself.'"  *Id.* (quoting *Black*, 30 Cal. App. 4th at 6). Plaintiff alleges that Nofhotos, WLM, and Ginoza are agents of Passes (FAC ¶ 156), and therefore has alleged throughout her FAC that Passes Defendants authorized, as principals and employers, the allegedly illegal actions; Plaintiff therefore cannot now identify an illegal agreement that exists outside Passes' corporate structure.

Accordingly, Moving Defendants' motions as to Count VIII are GRANTED, and this claim is DISMISSED with leave to amend.

## III.   <u>MOTIONS TO STRIKE CLASS ALLEGATIONS</u>

In addition to moving to dismiss, Passes Defendants move to strike the FAC's class allegations because "[t]he FAC provides no plausible basis for contending any other class members exist," and Ginoza moves to strike the class allegations for similar reasons.  (Passes Mot. at 16; Ginoza Mot.)

### A.    **Legal Standard**

"[M]otions to strike, as a general rule, are disfavored."  *Daniel v. Lennar Corp.*, 2019 WL 8194735, at *2 (C.D. Cal. Oct. 16, 2019).  Moreover, "the issue of class relief is generally more appropriately determined through a motion for class certification" because "the shape and form of a class action evolves only through the process of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                                Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

discovery." *Lightbourne v. Printroom Inc.*, 2014 WL 12597108, at *8 (C.D. Cal. Sept. 8, 2014) (citations omitted).

However, the Supreme Court and Ninth Circuit have both contemplated that striking class allegations may be appropriate in certain cases. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("[A] party seeking class certification is not always entitled to discovery on the class certification issue . . . ."). It is appropriate to strike class allegations at the pleading stage if the action "could not possibly proceed on a classwide basis." *Heredia v. Sunrise Senior Living LLC*, 2019 WL 5149854, at *6 (C.D. Cal. Mar. 4, 2019); *see also Garza v. Swift Beef Co.*, 2024 WL 5415842, at *12 (C.D. Cal. Jan. 23, 2024) ("A court, therefore, may strike class allegations when no class action can possibly be maintained on the face of the pleading."); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("Rule 12(f) also grants courts the authority to strike class allegations that cannot possibly move forward on a classwide basis." (citations omitted)); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("[W]here the matter is sufficiently obvious from the pleadings, a court may strike class allegations.").

**B.    Analysis**

Plaintiff brings this action on behalf of herself and a class including "[a]ll persons who were under 18 years of age at the time they were depicted in a video or image of any child pornography as defined under 18 U.S.C. § 2252A, that has been possessed by Defendants or distributed to Passes subscribers by Defendants." (FAC ¶ 160.) Plaintiff alleges that "Passes has at least 1,000 creators and allowed minors between 15 and 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                              Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

years old to join as Creators between April 27, 2022, and February 24, 2025," so "[t]here are therefore numerous individuals who were minors at the time they joined Passes and were subject to the same deficient security guidelines[.]"  (*Id.* ¶ 162.)

Plaintiff's barebones allegations do not plead facts to support the existence of any other similarly situated class members.  Plaintiff merely proffers the fact that Passes was, for a time, open to creators under the age of 18.  But this is far from sufficient to adequately allege the existence of any other class members who, like Plaintiff, were subject to violations of state and federal law due to specific interactions with Passes and its employees.  Further, at the hearing, Plaintiff did not object to the class allegations being stricken.  Thus, it "is sufficiently obvious from the pleadings" that a class action may not be maintained, *Route*, 2013 WL 658251, at *8, and Passes Defendants' and Ginoza's motions to strike are GRANTED.

IV.    <u>CONCLUSION</u>

For the above reasons, Passes Defendants' Motion is GRANTED IN PART AND DENIED IN PART, and Ginoza's Motion is GRANTED IN PART AND DENIED IN PART.  Counts I and III and are DISMISSED only as to Guo, with LEAVE TO AMEND.  Count II is DISMISSED WITH PREJUDICE.  Count VIII is DISMISSED in its entirety, WITH LEAVE TO AMEND.  The class allegations are STRICKEN and this case shall proceed as an individual action.

Plaintiff may amend the pleading in a manner, correcting the deficiencies identified herein, in a manner consistent with all Rule 11 obligations.  Any amended complaint shall be filed within **twenty-one (21) days** of the date of this Order.  Any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-08457-JLS-PD                    Date: February 03, 2026
Title:  Alice Rosenblum v. Passes, Inc. et al

claim not included in a timely-filed amended complaint will be deemed dismissed with
prejudice.

Initials of Deputy Clerk: kd