**CLARK SMITH VILLAZOR LLP**
Rodney Villazor (Bar #310212)
666 Third Avenue, 21st Floor
New York, New York 10017
Tel: (212) 377-0850
Email: rodney.villazor@csvllp.com

**THE FREEDMAN FIRM PC**
Michael G. Freedman (Bar # 281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

*Attorneys for Plaintiff Alice Rosenblum*

*Additional Counsel listed on Next Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE ROSENBLUM,<br><br>            Plaintiff,<br><br>      v.<br><br>PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual, ALEC CELESTIN, an individual, and LANI GINOZA, an individual,<br><br>            Defendants. | Case No.: 2-25-cv-08457-JLS-PD<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2.1 REGARDING PLAINTIFF'S MOTION TO COMPEL A RESPONSE TO CERTAIN INTERROGATORIES**<br><br>**Motion Date: July 10, 2026**<br>**Motion Time: 1:30 p.m.**<br>**Courtroom: 580**<br><br>Discovery Cutoff: February 5, 2027<br>Pre-Trial Conference: July 9, 2027<br>Trial: TBD |

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

**KENDALL BRILL & KELLY LLP**
Bert H. Deixler (70614)
bdeixler@kbkfirm.com
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: 310.556.2700

*Attorneys for Defendants Passes, Inc. and Lucy Guo*

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

# TABLE OF CONTENTS

**PLAINTIFF'S PRELIMINARY STATEMENT** ...................................................................... 1

**PASSES DEFENDANTS' PRELIMINARY STATEMENT** ............................................... 2

**PLAINTIFF'S STATEMENT OF FACTS** ........................................................................... 4

**PASSES DEFENDANTS' STATEMENT OF FACTS** ......................................................... 7

**SPECIFIC INTERROGATORIES IN DISPUTE** ................................................................ 10

**Plaintiff's Interrogatory to Passes No. 8** ........................................................................... 10

    Passes' Amended Response to Interrogatory No. 8 ........................................................ 10

    Passes' Revised Response to Interrogatory No. 8 .......................................................... 12

    Plaintiff's Position on Interrogatory No. 8 ..................................................................... 12

    Passes' Position on Interrogatory No. 8 .......................................................................... 17

**Interrogatory to Passes No. 13** ............................................................................................ 18

    Passes' Amended Response to Interrogatory No. 13 ...................................................... 19

    Passes' Revised Response to Interrogatory No. 13 ........................................................ 20

    Plaintiff's Position on Interrogatory No. 13 ................................................................... 20

    Passes' Position on Interrogatory No. 13 ........................................................................ 21

**Interrogatory to Passes No. 14** ............................................................................................ 22

    Passes' Amended Response to Interrogatory No. 14 ...................................................... 23

    Passes' Revised Response to Interrogatory No. 14 ........................................................ 24

    Plaintiff's Position on Interrogatory No. 14 ................................................................... 24

    Passes' Position on Interrogatory No. 14 ........................................................................ 25

**Plaintiff's Interrogatory to Passes No. 6** ............................................................................ 26

    Passes' Response to Interrogatory No. 6 ........................................................................ 27

    Passes' Revised Response to Interrogatory No. 6 .......................................................... 28

    Plaintiff's Position on Interrogatory No. 6 ..................................................................... 28

    Passes' Position on Interrogatory No. 6 .......................................................................... 29

**Interrogatory to Guo No. 12** ............................................................................................... 30

    Guo's Amended Response to Interrogatory No. 12 ........................................................ 30

    Guo's Revised Response to Interrogatory No. 12 .......................................................... 31

    Plaintiff's Position on Interrogatory No. 12 ................................................................... 31

    Lucy Guo's Position on Interrogatory No. 12 ................................................................ 32

**Interrogatory to Guo No. 14** ............................................................................................... 32

    Guo's Amended Response to Interrogatory No. 14 ........................................................ 33

    Guo's Revised Response to Interrogatory No. 14 .......................................................... 34

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Plaintiff's Position on Interrogatory No. 14 .................................................................... 34

Lucy Guo's Position on Interrogatory No. 14 .................................................................... 34

**PLAINTIFF'S CONCLUSION** ............................................................................................ 36

**PASSES DEFENDANTS' CONCLUSION** ......................................................................... 36

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

472 F. App'x 503 (9th Cir. 2012) ...........................................................................................18

*A.W. v. Red Roof Inns, Inc.*,
   No. 2:21-CV-4934, 2025 WL 227160 (S.D. Ohio Jan. 17, 2025) ........................................18

*Anders*,
   2020 WL 8575132 .............................................................................................................20

*Board of Trs. of Kern Cnty. Elec. Workers' Pension Fund v. Trinity Constr. Enters., Inc.*,
   No. 1:24-cv-00563-JLT-CDB, 2025 WL 1233872 (E.D. Cal. Apr. 29, 2025).....................17

*Boyce v. Weber*,
   No. 19-CV-3825 (JMF), 2021 WL 2821154 (S.D.N.Y. July 7, 2021) ............................18, 19

*Doe v. Manhattan Beach Unified Sch. Dist.*,
   No. CV 19-06962-DDP (RAOx), 2020 WL 11271845 (C.D. Cal. Oct. 20, 2020)...............17

*Ford v. Unknown*,
   No. 2:21-cv-00088-DMG-MAR, 2023 WL 6194282 (C.D. Cal. Aug. 24, 2023) .................17

*Greel v. Martel*,
   No. 0804474 CW, 2010 WL 2944262 (N.D. Cal. July 23, 2010) ..................................18, 19

*Indep. Living Ctr. of Southern Cal. v. City of Los Angeles*,
   296 F.R.D. 632 (C.D. Cal. 2013) ........................................................................................17

*Jadwin v. Cnty. of Kern*,
   No. 1:07-cv-0026-OWW-TAG, 2008 WL 2025093 (E.D. Cal. May 9, 2008).....................17

*United States v. Manning*,
   106 F.4th 796 (8th Cir. 2024) .............................................................................................19

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ..............................................................................................18

**Statutes**

18 U.S.C. chapter 110 ..............................................................................................................19

18 U.S.C. §§ 2252 and 2252A ............................................................................................17, 19

**Rules**

Fed. R. Civ. P. 26(b)(1)..............................................................................................................17

v

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Fed. R. Evid. 414(d)(2) ................................................................................18

Federal Rule of Evidence 415(a) ...............................................................18

Federal Rules of Evidence 413, 414, and 415 ...........................................19

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

## **PLAINTIFF'S PRELIMINARY STATEMENT**

Plaintiff alleges that Defendants Passes, Inc. ("Passes") and Lucy Guo (collectively, the "Passes Defendants") knowingly received, possessed, advertised, and distributed child pornography involving Plaintiff. To prove her claims and, in particular, to establish knowledge and intent on the part of the Passes Defendants, Plaintiff is entitled to discovery that demonstrates the degree to which abuse similar to abuse Plaintiff suffered was otherwise occurring on the Passes platform. This includes information regarding safeguards in place to protect minors, specific instances where those safeguards were removed (like what occurred with Plaintiff), and the Passes Defendants' monetary benefit from individuals who were situated similarly to Plaintiff. The Interrogatories in dispute request just that information.

The parties appear to agree that such information is discoverable, and they have stipulated to that fact. However, the Passes Defendants have attempted to limit discovery in this action regarding other minors situated similarly to Plaintiff by agreeing only to produce information regarding minors whose accounts were actually flagged for potential or actual child sexual abuse material ("CSAM"). But this position ignores that there is strong reason to believe that Passes took steps to prevent the identification and removal of CSAM posted on its platform. Indeed, by Guo's own admission, Passes apparently chose to *disable* machine learning classifiers designed to detect CSAM for certain minors, including Plaintiff.  Thus, if the Passes Defendants only provide responses on the basis of CSAM the platform *actually* detected, key relevant information will not be produced to Plaintiff.

The Interrogatories at issue in this motion to compel are aimed at providing Plaintiff with information regarding minors who were similarly

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

situated to her in important respects, including because they had key protections removed from their Passes accounts that would have otherwise applied to minors or protections that were otherwise likely to be abused or circumvented. The information sought, which in each case is targeted at proving Plaintiff's key allegations and specific claims, is appropriately tailored and both relevant and proportional to the needs of the case. The Passes Defendants' objections misconstrue both the Federal Rules of Civil Procedure and Magistrate Judge Donahue's guidance during the parties' May 8, 2026 informal discovery conference. For the reasons outlined below, Plaintiff's motion to compel should be granted in full.

### PASSES DEFENDANTS' PRELIMINARY STATEMENT

For the most part, Plaintiff's motion to compel rests on a misunderstanding of the Passes Defendants' position. Throughout this dispute, the Passes Defendants have maintained one consistent position: they will provide information regarding minor creators who, like Plaintiff, posted or distributed actual or suspected child sexual abuse material ("CSAM") on the Passes platform. This approach aligns with Judge Donahue's guidance that the Passes Defendants "answer interrogatories regarding their encountering and handling of circumstances similar to the allegations raised by the plaintiff in this case." IDC Tr. at 13:25–14:4. The parties do not appear to have a genuine dispute about this approach; the disagreement instead stems from Plaintiff's misapprehension of how the Passes Defendants intend to apply it.

Plaintiff's misapprehension is particularly puzzling given the origin of the disputed language. The very phrase Plaintiff now challenges—limiting responses to "instances where content involving minor Creators was *flagged for potential or actual CSAM*"—came from Plaintiff's own pre-IDC submission. When the

2

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Passes Defendants adopted that language in an effort to reach a compromise after the IDC, Plaintiff objected, apparently without recognizing it as her own formulation. In any case, when Plaintiff objected that this language would exclude minor creators whose CSAM was not detected by Passes' machine learning tools, the Passes Defendants proposed even broader language to address that concern: they agreed to provide information about "those minor creators who engaged in the same or similar activity as Alice alleges—*i.e.*, those who posted or distributed suspected or actual CSAM." The Passes Defendants did ***not*** seek to limit their responses to minor creators whose CSAM-related activity was detected by system tools. Such a limitation would be illogical: Plaintiff herself contends that her own CSAM was not detected by Passes' machine learning tools, meaning that limiting discovery to detected activity would exclude the minor creators most similarly situated to Plaintiff. Contrary to Plaintiff's characterization, the Passes Defendants intend to identify similarly situated minor creators based on Passes' Trust and Safety team's ***manual review*** of content posted by all minor creators, not on algorithmic detection. In short, the Passes Defendants have been offering exactly what Plaintiff claims to want.

To the extent any daylight remains between the parties' positions, it is limited to the following: Plaintiff seeks to expand the definition of "similarly situated" minor creators to include those whose "Verifiable Parent Consent" procedures or direct messaging ban was overridden, or whose accounts were suspended, removed, or deactivated—***regardless*** of whether those creators ever posted or distributed CSAM. That effort exceeds Judge Donahue's guidance. The Court was clear: Plaintiff had not demonstrated the relevance of minor creators whose accounts did not involve CSAM-related activity. *See* IDC Tr. at 13:20–23.

Plaintiff has identified no non-speculative basis for believing that removing

3

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

these administrative measures leads to CSAM-related activity, nor has she shown that all instances of account suspension were prompted by CSAM. Not all minor creators on the Passes platform are similarly situated to Plaintiff. The vast majority used Passes for entirely lawful purposes—sharing music, art, or other creative work—without ever posting or distributing CSAM or coming anywhere close to that line. Plaintiff's attempt to paint all minor creators with the same broad brush ignores this reality. The fact that some creators may have had the parental consent requirement waived or direct messaging enabled does not mean they engaged in conduct similar to what Plaintiff alleges. Passes has also suspended, removed, or deactivated accounts in enforcing its policies regarding non-CSAM related activities, such as suspected money laundering. Compelling the Passes Defendants to produce information about recruiters, creators income, and account settings for creators who, unlike Plaintiff, did not use the platform would be invasive, disproportionate, and untethered to Plaintiff's actual claims. Discovery should be limited to what is relevant: minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM.

For all of these reasons, Plaintiff's motion should be denied.

## PLAINTIFF'S STATEMENT OF FACTS

Plaintiff alleges that the Passes Defendants recruited and groomed Plaintiff, then a 17-year-old minor, to join Passes as a Creator, and thereafter knowingly produced, marketed, sold, and distributed child pornography and other child sexual abuse material ("CSAM") on the Passes platform. *See generally* Second Amended Complaint ("SAC"). Among other allegations, Plaintiff states that the Passes Defendants facilitated her abuse through their delegation of authority to their agents, Alec Celestin and Lani Ginoza, and by removing important safeguards from her Passes account, including the

4
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

requirement for "Verifiable Parent Consent" and a ban on sending direct messages to subscribers. *See* SAC ¶¶ 96-101, 106.

Plaintiff served her first set of Interrogatories on Passes and Guo on June 16, 2025 and July 2, 2025, respectively. Villazor Decl. Exs. 1, 2. Passes and Guo served initial responses and objections on July 16, 2025 and August 1, 2025; served amended responses and objections on February 27, 2026; and served a second set of amended responses and objections on April 16, 2026. Villazor Decl. Exs. 3, 4, 5. In their April 16 responses and objections, the Passes Defendants stated that they would only respond to Plaintiff's discovery requests as they applied to Plaintiff specifically. The Passes Defendants justified this limitation by stating that doing so was "[c]onsistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-plaintiff action." Villazor Decl. Ex. 5 at 5-6.

On April 21, 2026, Plaintiff sent the Passes Defendants a letter pursuant to Local Rule 37-1 explaining that, notwithstanding the limitation of the action to Plaintiff, evidence of the Passes Defendants' actions with respect to other minor Creators who had experiences similar to Plaintiff remained relevant to, among other issues, the Passes Defendants' intent and knowledge. The parties subsequently met and conferred and, reaching an impasse, held an informal discovery conference before Magistrate Judge Donahue on May 8, 2026. In that conference, Magistrate Judge Donahue agreed with Plaintiff that information regarding other similarly situated minor Creators remained relevant after the striking of the class allegations. *See* Tr. of Proceedings ("Tr.") at 8:13-16 ("I understand the district judge's ruling regarding the class. That does not render irrelevant all information that's in the defendant's possession, custody or control regarding other individuals."); *see also id.* at 11:4-9 ("I think [the Passes

5

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Defendants] [are] trying to narrow the case only to this plaintiff, and I think that . . . it is relevant as to whether there may be other individuals who are similarly situated. So I think perhaps the defense has drawn these too narrowly."). Consistent with that understanding, Judge Donahue ordered the parties to come to an agreement regarding the Passes Defendants' production of information regarding minor Creators similarly situated to Plaintiff.

Based on Magistrate Judge Donahue's guidance, the parties met and conferred regarding the scope of information the Passes Defendants would produce regarding "other individuals who are similarly situated" to Plaintiff. Tr. at 11:7. Plaintiff proposed a definition of similarly situated minor Creators as "other minor creators who had or may have had experiences with respect to the Passes Defendants similar to what Plaintiff alleges she experienced." However, the Passes Defendants countered that they were only willing to "provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

During negotiations, Plaintiff explained that a response that answered only on the basis of individuals whose accounts were actually flagged for CSAM was improperly narrow. As background, Plaintiff alleges, and Passes has affirmed, that Passes uses "machine learning classifiers" to identify and flag potential CSAM by its creators, which is purportedly removed immediately once detected. *See* SAC ¶¶ 44-45, 47-48; *see also* Ex. 4 at 8 (stating that Passes "uses the following third-party content moderation systems: Amazon Rekognition Content Moderation, Hive Moderation, and Microsoft PhotoDNA."). That said, Plaintiff understands that during the relevant time period, for Creators, like Plaintiff, who were managed by a talent manager, Passes apparently *turned off* its machine learning classifiers. Plaintiff learned this information directly from Defendant

6

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Lucy Guo, Passes' CEO. After this lawsuit was filed, on March 2, 2025, Guo posted on the social media site X, "[o]ur [machine learning] classifiers did not catch [CSAM involving Plaintiff] because [Alec Celestin] was marked as a talent manager, aka we trusted him." *See* Villazor Decl. Ex. 7. She subsequently followed up, "[t]his is an oversight on our part and an engineering issue in terms of complexity." *See id*. Guo then elaborated, "our [machine learning] classifiers were not running because he was marked as a talent manager. They are expensive to run and we trusted a talent manager to abide by our TOS. Unfortunately, we were wrong about that." *See* Villazor Decl. Ex. 6. Guo subsequently deleted these posts on X.

The parties submitted a stipulation and proposed order on May 22 outlining the issues on which they agreed. ECF No. 175. The parties also stipulated that Plaintiff would file a motion to compel production of additional information responsive to the identified Interrogatories, and this motion followed.

A copy of the order establishing the case schedule is attached as Exhibit 8.

## PASSES DEFENDANTS' STATEMENT OF FACTS

The Passes Defendants offer the following corrections and clarifications to Plaintiff's statement of facts.

First, the limitation Plaintiff now objects to—limiting interrogatory responses to "instances where content involving minor Creators was flagged as potential child sexual abuse material ('CSAM')"—originated in Plaintiff's own pre-IDC submission to the Court. In describing her preferred resolution of this dispute, Plaintiff wrote:

> Plaintiff has requested various information, in its Requests for Production 23, 26, and 26.1; its Interrogatories to Passes Nos. 4, 6, 8, 9, 11, 12, 13, and 14; and its Interrogatories to Guo Nos. 4, 11, 12,

7

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and 14 (attached for your reference), regarding minor 'Creators' on the Passes platform, controls put in place and/or overridden for those minor Creators, and ***instances where content involving minor Creators was flagged as potential child sexual abuse material ("CSAM")***. The Passes Defendants have asserted that they will not produce such information, except as it relates specifically to the individual Plaintiff.

*See* Kim Decl., Ex. A (4/30/2026 joint request for IDC) at 1 (emphasis added).

In that same pre-IDC submission, the Passes Defendants offered a broader compromise: they would "produce documents and answer interrogatories regarding their encountering and handling of circumstances similar to what Plaintiff allegedly experienced, with the relevant non-party minor Creators' identifying information redacted to protect their privacy interests." *See id.* at 2. At the IDC, Judge Donahue expressly endorsed this proposal, noting that it "seems entirely reasonable" to have the Passes Defendants provide information only regarding "minors who are potentially more similarly situated to the plaintiff." IDC Tr. at 8:18–24.

At the IDC, Plaintiff's counsel suggested that Passes' content moderation systems might not have captured all instances where a minor creator posted or distributed suspected or actual CSAM. *See id.* at 5:3–9. But the Passes Defendants did not seek to limit their responses to what the system tools detected. Instead, they focused on the substantive similarity between Plaintiff and other minor creators potentially subject to Plaintiff's requests. *See id.* at 12:7–9. They did not propose to narrow Plaintiff's requests based on how that similarity is determined. *See id.*

Following the IDC, the Passes Defendants attempted to fashion a compromise that Plaintiff would accept. Adopting Plaintiff's own language from her April 30, 2026 pre-IDC submission, the Passes Defendants proposed that they

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

would produce "additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

Plaintiff nonetheless objected to this compromise—apparently without recognizing that it used her own language—claiming that because "Passes' machine learning classifiers and other protections were apparently turned off for creators who were 'agency managed,' your proposed scope of discovery ('discovery relating to minor creators whose accounts were flagged for potential or actual CSAM') is impermissibly narrow." Kim Decl., Ex. B.

In response, the Passes Defendants clarified their position. In their May 15, 2026 email, the Passes Defendants' counsel wrote that under their compromise, they would provide information concerning "those minor creators who engaged in the same or similar activity as Alice alleges—*i.e.*, those who posted or distributed suspected or actual CSAM—consistent with Judge Donahue's reactions to the parties' arguments." *Id.* In the parties' joint stipulation submitted on May 22, 2026, the Passes Defendants again confirmed that their proposed limitation was only meant to exclude "minor creators whose accounts did not distribute or transmit potential or actual CSAM." Kim Decl., Ex. C ¶ 4.a. The Passes Defendants did not limit their responses to minor creators whose CSAM-related activity was detected by Passes' system tools.

Second, Plaintiff's concern is unfounded because the Passes Defendants do not intend to rely on system tools to determine which minor creators posted or distributed suspected or actual CSAM. When Passes hosted minor creators, its Trust and Safety team manually reviewed the content posted and distributed by all minor creators as part of its obligation to report actual or suspected CSAM to the National Center for Missing and Exploited Children. Although machine learning tools could provide assistance, the Passes Defendants do not need to rely on them

9

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

to identify minor creators who, like Plaintiff, used the Passes platform to post or distribute actual or suspected CSAM.

In sum, the limiting language Plaintiff now challenges originated in Plaintiff's own pre-IDC submission. When Plaintiff objected to the adoption of her own language, the Passes Defendants proposed a broader compromise that clarified their responses would include similarly situated minor creators—with no suggestion that identification would depend solely on algorithmic detection. There is no genuine dispute regarding the Passes Defendants' willingness to produce information about similarly situated minor creators; the only dispute is Plaintiff's attempt to expand the definition of "similarly situated" beyond those minor creators who posted or distributed CSAM.

## SPECIFIC INTERROGATORIES IN DISPUTE[1]

### Plaintiff's Interrogatory to Passes No. 8

Describe the process through which "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles can be overridden, disabled, or otherwise restricted, and identify all instances of any such overriding, disabling, or restricting and the rationale for each such decision.

### Passes' Amended Response to Interrogatory No. 8[2]

Responding Party incorporates by reference its general objections set forth above. Responding Party further objects to this interrogatory on the grounds that

---

[1] Plaintiff does not move to compel the production of additional documents or information with respect to her Interrogatories to Passes Nos. 11 and 12 or Request for Production No. 23. Plaintiff reserves the right to move to compel as to those disputed discovery requests at a later time.

[2] For ease of review, Plaintiff has excluded the Passes Defendants' initial responses and objections and first amended responses and objections, and is including only the Passes Defendants' amended responses and objections to Plaintiff's Interrogatories, dated April 16, 2026, and their position as to how they intend to further amend their responses and objections, as memorialized in the parties' May 22 Stipulation and Proposed Order.

10

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

the undefined terms "direct messaging ban," "overriding," "disabling," and "restricting" are vague, ambiguous, and overbroad.  In addition, Responding Party objects to this interrogatory as misleading and conclusory, including on the grounds that it assumes unestablished facts to be true.  Responding Party also objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the issues pending in this proceeding nor reasonably calculated to lead to the discovery of evidence admissible at trial.  Further, to the extent any part of the interrogatory asks for information about time periods not at issue in this litigation, Responding Party objects to the interrogatory as overbroad, irrelevant, and disproportionate to the needs of this case.  Responding Party also objects to this interrogatory to the extent that it calls for information that may be more efficiently or accurately derived from documents that will be produced by it and/or other parties to this litigation.  Responding Party further objects to this interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege, work product doctrine, common-interest privilege, joint defense doctrine, or any other applicable privilege or protection.  Further, because this interrogatory asks for potentially proprietary and commercially-sensitive information, Responding Party will only provide supplemental information after the entry of a Protective Order that adequately addresses its confidentiality concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which seeks information specific to Plaintiff.  Consistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-

11

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Passes' Revised Response to Interrogatory No. 8**

Passes has stipulated to "amend [its] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 8**

A full response to this Interrogatory, not limited exclusively to minor Creators whose accounts were actually flagged for potential or actual CSAM, is necessary to obtain information relevant and proportional to the needs of the case. And because Plaintiff alleges, for her Passes account, Passes overrode the requirement for verifiable parental consent and lifted the ban that prevents minors from engaging in direct messaging (SAC ¶¶ 96-101, 106), Interrogatory No. 8 comfortably seeks discovery about minors "similarly situated" to Plaintiff.

"Generally, a party can discover any nonprivileged information that is relevant to the claims or defenses of any other party." *Indep. Living Ctr. of Southern Cal. v. City of Los Angeles*, 296 F.R.D. 632, 634 (C.D. Cal. 2013) (citing Fed. R. Civ. P. 26(b)(1)). "Information need not be admissible in evidence to be discoverable." *Board of Trs. of Kern Cnty. Elec. Workers' Pension Fund v. Trinity Constr. Enters., Inc.*, No. 1:24-cv-00563-JLT-CDB, 2025 WL 1233872, at *2 (E.D. Cal. Apr. 29, 2025) (citing *Ford v. Unknown*, No. 2:21-cv-00088-DMG-MAR, 2023 WL 6194282, at *1 (C.D. Cal. Aug. 24, 2023)). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objection." *Trinity Constr.*, 2025 WL 1233872, at *2 (quoting *Jadwin v. Cnty. of*

12

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*Kern*, No. 1:07-cv-0026-OWW-TAG, 2008 WL 2025093, at \*1 (E.D. Cal. May 9, 2008)).

Plaintiff alleges that the Passes Defendants violated 18 U.S.C. §§ 2252 and 2252A, which require proof of knowledge on the part of the defendant. Courts routinely recognize that, in cases involving claims premised on sexual exploitation, evidence regarding a defendant's knowledge and patterns or practices is discoverable and relevant to the question of intent. *See Doe v. Manhattan Beach Unified Sch. Dist.*, No. CV 19-06962-DDP (RAOx), 2020 WL 11271845, at \*4 (C.D. Cal. Oct. 20, 2020) (ordering the defendants to produce records of other sexual-misconduct complaints because the "[d]efendants' handling of other allegations of sexual misconduct is relevant to [p]laintiff's allegation that there was a culture of hostility" on the relevant issue); *A.W. v. Red Roof Inns, Inc.*, No. 2:21-CV-4934, 2025 WL 227160, \*3 (S.D. Ohio Jan. 17, 2025) (granting discovery into a corporate defendant's "general knowledge of sex trafficking" because such evidence "could reasonably bear on how [the defendant] should have interpreted signs of [the plaintiff's] alleged trafficking" and constituted constructive knowledge directly relevant to the plaintiff's claim).

Similarly, in the Trafficking Victims Protection Act of 2000 ("TVPA") context, the Ninth Circuit has expressly held that a defendant's knowledge of his "own modus operandi" is a permissible, and often the primary, way of proving the statutory knowledge element. *See United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("When an act of Congress requires knowledge of a future action, it . . . requires . . . that the defendant know in the sense of being aware of an established modus operandi"); *see also Boyce v. Weber*, No. 19-CV-3825 (JMF), 2021 WL 2821154, at \*4 (S.D.N.Y. July 7, 2021) (admitting testimony of multiple non-party accusers because "one way—if not the only way—to prove

13

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

the knowledge element of a [sexual-exploitation] claim is by establishing that the defendant had a *modus operandi*, or a pattern or practice").

Additionally, Federal Rule of Evidence 415(a) provides that, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation," and that such evidence "may be considered as provided in Rules 413 and 414." Fed. R. Evid. 415(a); *see also* Fed. R. Evid. 414(d)(2) (defining "child molestation" to include, among other things, "any conduct prohibited by 18 U.S.C. chapter 110"); *Greel v. Martel*, No. 0804474 CW, 2010 WL 2944262, at *7 (N.D. Cal. July 23, 2010) ("Pursuant to Federal Rules of Evidence 413, 414, and 415, evidence of prior sexual misconduct is explicitly recognized as admissible in sex offense cases, subject to considerations of prejudice and probative value."), *aff'd*, 472 F. App'x 503 (9th Cir. 2012); *Boyce*, 2021 WL 2821154, at *8 (explaining that Rules 413, 414, and 415 "reflect[] an exception in [cases involving] sex crimes to the common law practice of excluding propensity evidence" because Congress "considered knowledge that the defendant has committed [sex crimes] on other occasions to be critical in assessing the relative plausibility of sexual assault claims" (citation omitted)). Because Plaintiff's claim under Sections 2252 and 2252A involves "conduct prohibited by 18 U.S.C. chapter 110," any other instances of CSAM on Passes' platform similar to what Plaintiff experienced are not just relevant, but presumptively admissible in evidence under Rule 415. And while Passes has suggested that Rule 415 may not apply based on Rule 414's definition of a "child" as someone under 14, Rule 414's separate definition of "child molestation" as "conduct prohibited by 18 U.S.C. chapter 110" creates a separate category of conduct; the definition of "child" is not relevant. *See United States v.*

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*Manning*, 106 F.4th 796, 800 (8th Cir. 2024) (finding that "Rule 414's definition of 'child' is not relevant to whether Manning's prior 'child molestation' conviction involves 'any conduct prohibited by . . . Chapter 110.'" (citation modified)).

Discovery on this issue is also relevant to Plaintiff's negligence claim to establish whether the Passes Defendants "(1) had, or should have had, knowledge from which it may reasonably have apprehended that" CSAM was being distributed and sold, and "(2) had the ability in the exercise of the requisite degree of care to prevent the injury." *Anders*, 2020 WL 8575132, at *7 (granting in part motion to compel discovery into defendant's responses to other incidents of alleged sexual assault over a five-year period as relevant to negligence-based claims).

Plaintiff alleges that the Passes Defendants overrode Passes' ordinarily applicable "Verifiable Parent Consent" requirement, as well as a ban on direct messages to subscribers, for Plaintiff's account, despite the fact that those protections ordinarily would apply for minor Creators. *See* SAC ¶¶ 96-101, 106. If Passes engaged in a pattern of conduct with respect to other minor Creators that parallels what they are alleged to have done with Plaintiff—including by removing protections put in place to stop the distribution of CSAM—that pattern makes it materially more likely that they knew about, intended, and participated in the same conduct as to Plaintiff. Understanding the circumstances in which Passes can remove protections for minor Creators is relevant to understanding how Passes assesses the risk of CSAM being uploaded and when it can remove otherwise applicable protections and their reasons for doing so.

Passes' proposed limitation on answering this Interrogatory is insufficient for two reasons. *First*, it is not clear how Passes' response—that it will answer

with respect to minor creators whose accounts were flagged for potential or actual CSAM—applies to the first portion of the Interrogatory ("Describe the process through which "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles can be overridden, disabled, or otherwise restricted."). And because Plaintiff argues that the Passes Defendants' decision to override protections intended for minor Creators facilitated the abuse of Plaintiff, information regarding how protections for minor Creators can be overridden is relevant and proportional to the needs of the case. Indeed, the Court appeared to agree with Plaintiff that such information would be relevant and should be answered. *See* Tr. at 11:17-22 discussing Interrogatory to Passes No. 8 ("So if the procedure that was followed for the plaintiff in this case is the same procedure that's followed for every case, then certainly Passes could say that. Or . . . maybe there are numerous procedures by which these controls can be overridden, but it seems that that is relevant and proportional here.").

*Second*, as to the second portion of the Interrogatory ("identify all instances of any such overriding, disabling, or restricting and the rationale for each such decision"), Passes' limitation is unreasonable. As explained in Plaintiff's statement of facts, Plaintiff is of the understanding that Passes *turned off* its machine learning classifiers designed to detect and remove any CSAM or other inappropriate material from its platform. Thus, there is strong reason to believe that Passes' response, if answered only with respect to minor Creators whose accounts were actually flagged for potential or actual CSAM, would not capture all relevant communications. Answering the Interrogatory in full will allow Plaintiff to understand the scope of Passes' knowledge of its own safeguards being undermined and, by extension, its knowledge of the likelihood that CSAM of "managed" Creators, like Plaintiff, was being uploaded. Passes

16

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

should not be permitted to limit its answer to only those circumstances in which it actually identified CSAM when its CEO (and co-Defendant) *has admitted* that Passes' ability to identify CSAM was limited and unlikely to capture instances of abuse similar to that suffered by Plaintiff.

**Passes' Position on Interrogatory No. 8**

Plaintiff's dispute regarding Interrogatory No. 8 rests on a misunderstanding of Passes' position. Plaintiff assumes that Passes would limit its response to minor creators whose CSAM-related activity was detected by system tools. But Passes has not sought to impose such a limitation. To the contrary, Passes intends to provide information relating to minor creators who posted or distributed actual or suspected CSAM on the platform, based on its Trust and Safety team's manual review, not algorithmic detection. This approach is consistent with Judge Donahue's guidance that Passes "answer interrogatories regarding [its] encountering and handling of circumstances similar to the allegations raised by the plaintiff in this case." IDC Tr. at 13:25–14:4.

As noted above, Plaintiff's motion objects to the language she proposed herself. The phrase "instances where content involving minor Creators was flagged for potential or actual CSAM" comes directly from Plaintiff's own pre-IDC submission. Passes adopted that language in an effort to facilitate a compromise following the IDC. Plaintiff thereafter contended that this language was "impermissibly narrow"—apparently without recognizing that she is challenging her own formulation. Passes responded to that concern by clarifying it would provide information about "those minor creators who engaged in the same or similar activity as Alice alleges—*i.e.*, those who posted or distributed suspected or actual CSAM—consistent with Judge Donahue's reactions to the parties'

17

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

arguments.  *See* [IDC Tr.] at 9:1-5, 9:13-19, 12:7-10, 13:20-23." Kim Decl., Ex. B.

Plaintiff's stated concern with the limitation—that Passes' machine learning tools may not have detected all CSAM—further underscores her misunderstanding of Defendant Passes' proposal.  Plaintiff herself contends that her own CSAM was *not* detected by Passes' machine learning tools.  And the Passes has consistently communicated its willingness to "answer interrogatories regarding their encountering and handling of circumstances similar to what Plaintiff allegedly experienced." *See* Kim Decl., Ex. A (pre-IDC submission) at 2; *see also id*., Ex. B (post IDC proposal to provide information about "those minor creators who engaged in the same or similar activity as Alice alleges—*i.e.*, those who posted or distributed suspected or actual CSAM").  A proposal to provide information about the category of minor creators most similarly situated to Plaintiff would naturally capture those minor creators who, like Plaintiff, posted or distributed CSAM that may not have been caught by automated systems.

Because Plaintiff agrees with Passes' proposal—as correctly understood— there is no real dispute regarding Interrogatory No. 8.  Nevertheless, for the avoidance of doubt, Passes confirms that it will:  (1) describe the process through which "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles can be overridden, disabled, or otherwise restricted, as those processes relate to other minor creators who posted or distributed actual or suspected CSAM on Passes; and (2) identify all instances, if any, where those procedures or bans were so overridden, disabled, or restricted for such minor creators, and provide the rationale for each such decision.

**Interrogatory to Passes No. 13**

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

For any minor Creator profiles that were suspended, removed, or deactivated from Passes for posting sexually explicit content or including banned words in captions or messages, identify all income generated or payments received by those profiles, including payments for recurring subscriptions, one-time events or content access, livestreams, and direct sales of content, including photos and video, through direct messaging or otherwise, and identify the share of such income or payments that Passes obtained.

**Passes' Amended Response to Interrogatory No. 13**

Responding Party incorporates by reference its general objections set forth above.  Responding Party further objects to this interrogatory on the grounds that the undefined terms "sexually explicit," "banned words," and "caption" are vague, ambiguous, and overbroad.  In addition, Responding Party objects to this request as misleading and conclusory, including because it assumes facts not established in this case.  Responding Party also objects that this interrogatory may call for information related to the review of CSAM, which requires a protocol to be presented to and ordered by the Court addressing how such material will be handled in this action before responding to this interrogatory. Responding Party also objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the issues pending in this proceeding nor reasonably calculated to lead to the discovery of evidence admissible at trial.  Further, to the extent any part of the interrogatory asks for information about persons or time periods not at issue in this litigation, Responding Party objects to the interrogatory as overbroad, irrelevant, and disproportionate to the needs of this case.  Further, because this interrogatory asks for certain proprietary and commercially-sensitive information, as well as sensitive third-party information, Responding Party will

19
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

only provide supplemental information after the entry of a Protective Order that adequately addresses its confidentiality and third-party privacy concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which seeks information specific to Plaintiff.  Consistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Passes' Revised Response to Interrogatory No. 13**

Passes has stipulated to "amend [its] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 13**

Passes' position on Interrogatory Number 13 is not entirely clear, given that they have stipulated to answer with respect to minor Creators whose content was flagged for potential or actual CSAM but have affirmed that they *do not* intend to answer this Interrogatory in full. To the extent that Passes does not intend to answer any portion of this Interrogatory on the basis that the information requested is not relevant, Passes should be compelled to do so.

Information regarding the income Passes generated from minor Creators situated similarly to Plaintiff is relevant to Plaintiff's claims regarding intent. Plaintiff alleges that Guo viewed minor Creators as a unique, and potentially lucrative, revenue stream for Passes because minors could not join comparable platforms. *See* SAC ¶ 59. In order to prove her claims and establish knowledge on the part of Passes and its CEO, Guo, Plaintiff should be permitted to understand exactly how much benefit Passes was gaining from the abuse of

20

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

minor Creators. Establishing this fact is relevant to understanding the degree to which Passes relied on such content and the monetary benefit that strategy ultimately produced, each of which helps establish Passes' motivations for its actions in this case. Further, as explained above, Passes' proposed limitation to individuals whose accounts were flagged for actual and potential CSAM is inadequate because Guo herself admitted that Passes removed its ability to use its primary detector of such content, machine learning classifiers, for "managed" Creators, like Plaintiff.  If an account was ostensibly suspended for posting banned words, it is more likely that the account also may have posted CSAM, which Passes may not have detected or may have ignored.  That information is therefore relevant.

**Passes' Position on Interrogatory No. 13**

Passes incorporates its position regarding Interrogatory No. 8.  In keeping with Judge Donahue's guidance that Passes "answer interrogatories regarding [its] encountering and handling of circumstances similar to the allegations raised by the plaintiff in this case," IDC Tr. at 13:25–14:4, Passes will answer this interrogatory as it relates to minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM on Passes.

This proposal is calibrated to respond to the relevant aspect of the interrogatory.  The interrogatory seeks income information for minor creator profiles that were "suspended, removed, or deactivated from Passes for posting sexually explicit content or including banned words in captions or messages."  But not every account suspended for "sexually explicit content" or "banned words" involved CSAM.  For example, Passes' banned word list contains words related to violence, controlled substance, and racism, too.  Passes' response appropriately focuses on accounts that involved actual or suspected CSAM—because those are

21

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

the accounts whose circumstances are "similar to the allegations raised by the plaintiff in this case." *Id.*

Plaintiff's suggestion that accounts suspended for "banned words" are "more likely" to have also posted CSAM is pure speculation. *See* Pl.'s Pos. on Interrog. No. 13 ("If an account was ostensibly suspended for posting banned words, it is more likely that the account also may have posted CSAM."). Plaintiff offers no evidentiary basis for this assumption. As the Court correctly recognized, Plaintiff has not demonstrated the relevance of minor creators whose accounts did not involve CSAM-related activity. *See* Tr. at 13:20–23. Discovery cannot be permitted based on speculation that one type of violation might correlate with another.

Plaintiff also continues to misunderstand Passes' position regarding its methods of detection. As explained above, Passes will identify similarly situated minor creators based on its Trust and Safety team's manual review, not solely on algorithmic detection. Plaintiff's concern that Passes' machine learning classifiers may not have captured all CSAM is thus moot. Passes has been offering exactly what Plaintiff claims to have wanted all along: information about minor creators who posted or distributed CSAM, regardless of whether that activity was detected by automated systems. Nothing further is warranted.

**Interrogatory to Passes No. 14**

For any minor Creator profiles where "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles was overridden, disabled, or otherwise restricted, identify all income generated or payments received by those profiles, including payments for recurring subscriptions, one-time events or content access, livestreams, and direct sales of

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

content, including photos and video, through direct messaging or otherwise, and identify the share of such income or payments that Passes obtained.

**Passes' Amended Response to Interrogatory No. 14**

Responding Party incorporates by reference its general objections set forth above. Responding Party further objects to this interrogatory on the grounds that the undefined terms "direct messaging ban," "overridden," "disabled," and "restricted" are vague, ambiguous, and overbroad. In addition, Responding Party objects to this request as misleading and conclusory, including because it assumes facts not established in this case. Responding Party also objects that this interrogatory may call for information related to the review of CSAM, which requires a protocol to be presented to and ordered by the Court addressing how such material will be handled in this action before responding and providing further objections, if any, to this interrogatory. Responding Party also objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the issues pending in this proceeding nor reasonably calculated to lead to the discovery of evidence admissible at trial. In addition, to the extent any part of the interrogatory asks for information about persons or time periods not at issue in this litigation, Responding Party objects to the interrogatory as overbroad, irrelevant, and disproportionate to the needs of this case. Further, because this interrogatory asks for certain proprietary and commercially-sensitive information, as well as sensitive third-party information, Responding Party will only provide supplemental information after the entry of a Protective Order that adequately addresses its confidentiality and third-party privacy concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which

23
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

seeks information specific to Plaintiff.  Consistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Passes' Revised Response to Interrogatory No. 14**

Passes has stipulated to "amend [its] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 14**

As with Interrogatory No. 13, information regarding the income Passes generated from minor Creators situated similarly to Plaintiff is relevant to Plaintiff's claims regarding intent and damages. Plaintiff alleges that the Passes Defendants overrode the direct messaging ban and "Verifiable Parent Consent" procedures with respect to Plaintiff's account, and it is reasonable for Plaintiff to seek information regarding minor Creators who were similarly situated on these facts.

Moreover, given that, by its own CEO's admission, the Passes Defendants' ability to identify and remove CSAM was limited and flawed, Passes should not be permitted to limit its discovery obligations by relying on its own, unreliable, procedures. And, requesting information regarding Creators whose "Verifiable Parent Consent" and/or direct messaging bans were overridden is a narrowly-tailored request likely to produce information relevant and proportional to the case. These protections were presumably put in place by the Passes Defendants because the Passes Defendants viewed *not* requiring parental consent and/or allowing direct messages to subscribers as presenting an unreasonably high risk of resulting in the upload of inappropriate material or CSAM. Permitting

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

discovery of such materials, in addition to discovery into minor Creators whose accounts were actually flagged for potential or actual CSAM, would allow Plaintiff to gain an accurate understanding of the scope of the Passes Defendants' pattern or practice on these issues.

**Passes' Position on Interrogatory No. 14**

Passes incorporates its position stated above. As with the other interrogatories at issue, Plaintiff's dispute appears to rest, at least in part, on a misunderstanding of Passes' proposal. For avoidance of doubt, Passes confirms that it will answer this interrogatory as it relates to minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM on Passes.

That should be enough. However, Plaintiff seeks to expand the definition of "similarly situated" minor creators to include any creator whose "Verifiable Parent Consent" procedures or direct messaging ban was overridden—regardless of whether those creators posted or distributed CSAM. That approach exceeds Judge Donahue's guidance. At the IDC, when reviewing Plaintiff's request for Passes to "[i]dentify all instances where any minor Creator profiles were suspended, removed, or deactivated from Passes," Judge Donahue indicated that Plaintiff had not demonstrated the relevance of minor creators whose profiles were suspended, removed, or deactivated for reasons other than posting or distributing CSAM. *See* IDC Tr. at 13:20–14:4.

That reasoning applies here. Plaintiff has not demonstrated any connection between the overriding of parental consent procedures or the direct messaging ban, on the one hand, and the posting or distribution of CSAM, on the other. These are fundamentally different categories. The "Verifiable Parent Consent" requirement and the direct messaging ban are administrative measures that Passes implemented to regulate minor creators' use of the platform. They serve important purposes,

25

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

but they do not, by themselves, indicate that a minor creator posted or distributed CSAM. A minor creator might have the parental consent requirement waived for completely different reasons—for example, because the creator was emancipated, because a parent or guardian provided informal consent, or because of an administrative error—without ever posting inappropriate content. Similarly, a minor creator with direct messaging enabled could have sent direct messages for a multitude of reasons, without ever using that capability to distribute CSAM. Plaintiff's assumption that removing these measures "present[s] an unreasonably high risk of resulting in the upload of inappropriate material or CSAM" is based on a false premise that other minors creators share Plaintiff's tendency to take advantage of Passes' direct messaging function to distribute actual or suspected CSAM. *See* Pl.'s Pos. on Interrog. No. 14. Judge Donahue's guidance was clear: Passes should provide information about minor creators who are "similarly situated" to Plaintiff only in the sense that matters—namely, those who posted or distributed CSAM. Speculation that some subset of other minor creators not subject to these administrative measures might also have posted or distributed CSAM does not satisfy Plaintiff's burden to demonstrate relevance.

Moreover, Plaintiff again misapprehends the scope of Passes' proposal. As recounted above, Passes has consistently offered to provide information about minor creators who posted or distributed CSAM, regardless of how that activity was identified. Consistent with that proposal, Passes will identify similarly situated minor creators responsive to this interrogatory through its Trust and Safety team's manual review, not solely through algorithmic detection.

**Plaintiff's Interrogatory to Passes No. 6**

Identify all Persons involved with the marketing to or recruitment of minor Creators to join Passes, including, without limitation Alec Celestin, Lani Ginoza,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and any affiliated entities, and for each such Person, describe: (i) the nature of their relationship with Passes; (ii) any agreements, whether formal or informal, they had with Passes; (iii) any compensation arrangements they had with Passes; (iv) and the nature of any directives Passes gave them with respect to recruitment of minor Creators.

**Passes' Response to Interrogatory No. 6**

Responding Party incorporates by reference its general objections set forth above. Responding Party further objects to this interrogatory as compound and because it represents an effort to evade the cap on the number of interrogatories that may be propounded on another party. In addition, Responding Party objects to this interrogatory as vague and ambiguous, including with respect to the undefined terms and phrases "any agreements, whether formal or informal" and "the nature of any directives." Responding Party also objects to this interrogatory on the grounds that the interrogatory calls for a legal conclusion and assumes unestablished facts to be true. Responding Party also objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the issues pending in this proceeding nor reasonably calculated to lead to the discovery of evidence admissible at trial. Further, to the extent any part of the interrogatory asks for information about time periods not at issue in this litigation, Responding Party objects to the interrogatory as overbroad, irrelevant, and disproportionate to the needs of this case. Responding Party also objects to the parts of the this [sic] interrogatory that call for information that may be more efficiently or accurately derived from documents that will be produced by it and/or other parties to this litigation. Responding Party further objects to this interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege,

27

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

work product doctrine, common-interest privilege, joint defense doctrine, or any other applicable privilege or protection.  Responding Party further objects to this interrogatory as confusing, unintelligible, and potentially impossible to respond to, insofar as there are persons unknown to it who may have recruited individuals to join the platform.  Further, because this interrogatory asks for certain proprietary and commercially-sensitive information, as well as sensitive third-party information, Responding Party will only provide supplemental information after the entry of a Protective Order that adequately addresses its confidentiality and third-party privacy concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which seeks information specific to Plaintiff.  Consistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Passes' Revised Response to Interrogatory No. 6**

Passes has stipulated to "amend [its] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 6**

Plaintiff alleges that Guo viewed minor Creators as a unique and potentially lucrative opportunity for Passes and that she recruited Alec Celestin to Passes to recruit Creators, including minor Creators, to join Passes. SAC ¶¶ 59-63. To the extent that the Passes Defendants engaged other individuals to recruit minor Creators who have been identified as being similarly situated to Plaintiff, either because they were not required to obtain parental consent, had

28

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

their direct messaging ban overridden, or otherwise were likely to have been abused in some way by the Passes Defendants, Plaintiff is entitled to learn about the individuals who recruited them and the nature of Passes' arrangements with them. As explained above, limiting the answer to recruiters whose clients' accounts were flagged for potential or actual CSAM is very likely to be underinclusive because, as explained, it appears Passes *turned off* its machine learning classifiers for accounts managed by such recruiters.

**Passes' Position on Interrogatory No. 6**

Passes incorporates its position stated above. As with the other interrogatories at issue, Plaintiff's dispute rests on a misunderstanding of Passes' proposal. For avoidance of doubt, Passes confirms that it will answer this interrogatory as it relates to minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM on Passes.

Plaintiff again seeks to expand the definition of "similarly situated" minor creators to include additional minor creators, regardless of whether these creators posted or distributed CSAM. Plaintiff's proposed expansion would require Passes to disclose information about recruiters of minor creators who used the Passes platform for entirely innocent purposes. Many minor creators joined Passes to share lawful content—music, art, or other creative work—without ever posting or distributing CSAM. The fact that they were recruited by affiliates of Passes does not transform their lawful activity into something relevant to Plaintiff's claims. Minor creators who never posted or distributed CSAM are not "similarly situated" to Plaintiff.

Plaintiff's concern that Passes' machine learning classifiers were "turned off" for accounts managed by talent managers does not change this analysis. As the Passes Defendants have consistently explained, they will identify similarly

29

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

situated minor creators through their Trust and Safety team's manual review, not solely through algorithmic detection.  Passes has been offering what Plaintiff claims to have wanted all along:  information about recruiters of minor creators who posted or distributed CSAM, regardless of whether that activity was caught by automated systems.  Plaintiff's motion to compel anything beyond that line should be denied.

**Interrogatory to Guo No. 12**

Identify all instances in which You authorized or executed any such overriding, disabling, or restricting of "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles, and Your rationale for each such decision.

**Guo's Amended Response to Interrogatory No. 12**

Responding Party incorporates by reference her general objections set forth above.  Responding Party further objects to this interrogatory on the grounds that the undefined terms "direct messaging ban," "overriding," "disabling," and "restricting" are vague, ambiguous, and overbroad.  Responding Party further objects to this interrogatory as compound and an effort to evade the cap on the number of interrogatories that may be propounded to another party. In addition, Responding Party objects to this interrogatory as misleading and conclusory, including on the grounds that it assumes unestablished facts to be true.  Further, because this interrogatory asks for potentially proprietary and commercially-sensitive information, Responding Party will provide supplemental information after the entry of a Protective Order that adequately addresses the confidentiality concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which

30

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

seeks information specific to Plaintiff.  Consistent with the Court's striking of the class allegations, and consequent reduction of the scale of this case to a single-plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Guo's Revised Response to Interrogatory No. 12**

Guo has stipulated to "amend [her] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 12**

Plaintiff alleges that, when Plaintiff was setting up her account on Passes, Celestin called his "business partner Lucy" (Guo), who then overrode or directed the overriding of Passes' parental consent requirement and enabled direct messaging for Plaintiff's account, with knowledge that doing so would result in the distribution of CSAM involving Plaintiff. *See* SAC ¶¶ 96, 99. This Interrogatory is thus directly relevant to Plaintiff's allegations regarding Guo's involvement in facilitating the upload of CSAM to Passes.

Further, as explained above, this request is narrowly tailored to permit Plaintiff to obtain information regarding minor Creators situated similarly to her. It is reasonable that, if protections were removed for any other minor Creators by Guo, there is a substantially increased likelihood that it could have led to the upload of CSAM involving those minor Creators. In addition, Guo, in her Answer, denies having overridden the protections for Plaintiff's account.  (Passes Defs.' Answer at 36-37.)  If Guo had a history of overriding these protections for others, that would make it more likely that she did the same thing with respect to Plaintiff's account.  Additionally, given that the Passes Defendants intend to redact the names or personally identifiable information of any additional minor

31

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Creators identified by this or any other Interrogatory or Request for Production, any privacy concerns are minimized. Finally, as Guo remains a named defendant in this action, Plaintiff is entitled to understand the extent of her personal involvement in, and knowledge of, the upload of CSAM on Passes.

**Lucy Guo's Position on Interrogatory No. 12**

Lucy Guo incorporates Passes' position on similar interrogatories above, including Passes' position on Interrogatory No. 8.  As with those interrogatories, Plaintiff's dispute appears to rest on a misunderstanding of the Passes Defendants' proposal.  For avoidance of doubt, Guo confirms that she will answer this interrogatory as it relates to minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM on Passes.

Plaintiff seeks to expand the definition of "similarly situated" minor creators to include any creator whose "Verifiable Parent Consent" procedures or direct messaging ban was overridden—regardless of whether those creators posted or distributed CSAM.  Plaintiff's assertion that removing these measures would "substantially increase[]" the likelihood of CSAM-related activity is speculation.  As explained above, Plaintiff has not demonstrated any connection between the overriding of these measures and the posting or distribution of CSAM.

Moreover, Guo will identify relevant minor creators based on Passes' Trust and Safety team's manual review, not solely on algorithmic detection.  Plaintiff's concern about machine learning classifiers is therefore moot.

**Interrogatory to Guo No. 14**

Identify Your role and/or involvement in all instances where any minor Creator profiles were suspended, removed, or deactivated from Passes and the reason for such suspension, removal, or deactivation.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

**<u>Guo's Amended Response to Interrogatory No. 14</u>**

Responding Party incorporates by reference her general objections set forth above.  Responding Party also objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the issues pending in this proceeding nor reasonably calculated to lead to the discovery of evidence admissible at trial.  Responding Party further objects that this interrogatory may call for information related to the review of CSAM, which requires a protocol to be presented to and ordered by the Court addressing how such material will be handled in this action before responding to this interrogatory.  Further, to the extent any part of the interrogatory asks for information about persons or time periods not at issue in this litigation, Responding Party objects to the interrogatory as overbroad, irrelevant, and disproportionate to the needs of this case.  Responding Party also objects to this interrogatory to the extent that it calls for information that may be more efficiently derived from documents produced in this litigation.  Responding Party further objects to this interrogatory to the extent that it seeks information that is protected from discovery by the attorney-client privilege, work product doctrine, common-interest privilege, joint defense doctrine, or any other applicable privilege or protection.  Further, because this interrogatory asks for certain proprietary and commercially-sensitive information, as well as sensitive third-party information, Responding Party will only provide supplemental information after the entry of a Protective Order that adequately addresses its confidentiality and third-party privacy concerns.

Subject to and without waiving these objections, Responding Party is willing to meet-and-confer about responding to a narrowed interrogatory which seeks information specific to Plaintiff.  Consistent with the Court's striking of the

33

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

class allegations, and consequent reduction of the scale of this case to a single-plaintiff action, Responding Party declines to provide additional information concerning minor Creators other than Plaintiff.

**Guo's Revised Response to Interrogatory No. 14**

Guo has stipulated to "amend [her] written responses to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM."

**Plaintiff's Position on Interrogatory No. 14**

Guo draws her distinction too narrowly by focusing exclusively on minor Creators whose accounts were actually flagged for potential or actual CSAM. To the extent that other similarly situated minor Creators had their accounts suspended or deactivated, including by, for example, posting suggestive material that did not necessarily constitute actual CSAM, Plaintiff is entitled to discovery related thereto. Understanding the extent to which Passes monitored, flagged, and suspended minors for violating its internal standards, and Guo's involvement in such monitoring, flagging, and suspending, is relevant to questions of knowledge and intent.

**Lucy Guo's Position on Interrogatory No. 14**

Lucy Guo incorporates her and Passes' position on similar interrogatories above. As with those interrogatories, Plaintiff's dispute appears to rest on a misunderstanding of the Passes Defendants' proposal. For avoidance of doubt, Guo confirms that she will answer this interrogatory as it relates to minor creators who, like Plaintiff, posted or distributed actual or suspected CSAM on Passes.

Judge Donahue expressly indicated at the IDC that minor creators whose accounts were suspended, removed, or deactivated for reasons other than posting or distributing CSAM are not similarly situated to Plaintiff. *See* IDC Tr. at 13:20–

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

25. Guo's proposal, correctly understood, fully covers the scope Judge Donahue identified—and goes further by including minor creators suspended, removed, or deactivated for posting or distributing *suspected* CSAM as well.

Plaintiff's argument that she is "entitled to discovery" regarding minor creators who posted "suggestive material that did not necessarily constitute actual CSAM" finds no support in Judge Donahue's guidance. *See* Pl.'s Pos. on Interrog. No. 14. Accounts that posted vaguely "suggestive material" may have involved lawful content that breached Passes' internal content policies, but not the posting or distribution of CSAM. Plaintiff's claims in this case are predicated on the knowing receipt, possession, and distribution of CSAM—not on Passes' enforcement of its broader content standards. Minor creators whose accounts were suspended for posting vaguely "suggestive" but lawful content are not "similarly situated" to Plaintiff in any sense relevant to her claims. Plaintiff has not demonstrated any connection between accounts suspended for posting "suggestive material" and accounts that involved actual or suspected CSAM. Because Guo will respond to this interrogatory as it relates to minor creators who actually posted or distributed actual or suspected CSAM, discovery based on such speculation is unwarranted.

Moreover, Guo will identify relevant minor creators based on Passes' Trust and Safety team's manual review, not solely on algorithmic detection. The Passes Defendants have been offering what Plaintiff claims to have wanted all along: information about Guo's role in instances where minor creators posted or distributed CSAM, regardless of whether that activity was caught by automated systems. Plaintiff's motion to compel anything beyond that point should be denied.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

## PLAINTIFF'S CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion to compel a response to its Interrogatories to Passes Nos. 6, 8, 13, and 14 and Interrogatories to Guo Nos. 12 and 14.

## PASSES DEFENDANTS' CONCLUSION

For the foregoing reasons, the Passes Defendants respectfully request that the Court deny Plaintiff's motion to compel responses to Interrogatories to Passes Nos. 6, 8, 13, and 14 and Interrogatories to Guo Nos. 12 and 14.

IT IS SO STIPULATED.

DATED: June 8, 2026                          Respectfully submitted,

THE FREEDMAN FIRM PC

By:    /s/ Michael G. Freedman
       Michael G. Freedman

CLARK SMITH VILLAZOR LLP

/s/ Rodney Villazor
Christopher J. Clark, Esq.
clark@csvllp.com
(admitted *pro hac vice*)
Rodney Villazor, Esq.
rodney.villazor@csvllp.com
(Cal. Bar. No. 310212)

666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850

36
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

KENDALL BRILL & KELLY LLP

By:    /s/ Bert H. Deixler
       Bert H. Deixler
       bdeixler@kbkfirm.com
       Nary Kim (293639)
       nkim@kbkfirm.com
       Charles J. Snyder (287246)
       csnyder@kbkfirm.com
       10100 Santa Monica Blvd, Ste 2500
       Los Angeles, California 90067
       Telephone:   310.556.2700
       Facsimile:   310.556.2705

37
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*Pursuant to L.R.5-4.3.4, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By:   /s/Rodney Villazor

Rodney Villazor

38

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL