KENDALL BRILL & KELLY LLP
Bert H. Deixler (70614)
  *bdeixler@kbkfirm.com*
Nary Kim (293639)
  *nkim@kbkfirm.com*
Charles J. Snyder (287246)
  *csnyder@kbkfirm.com*
10100 Santa Monica Blvd., Suite 2500
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendants Passes, Inc.
and Lucy Guo

*Additional Counsel listed on Next Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE ROSENBLUM,<br><br>Plaintiff,<br><br>v.<br><br>PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual ALEC CELESTIN, an individual, and LANI GINOZA, an individual,<br><br>Defendants. | Case No. 2:25-cv-08457-JLS-PD<br><br>**DISCOVERY MATTER:**<br><br>**JOINT STIPULATION RE PASSES, INC.'S MOTION TO COMPEL DOCUMENTS REFLECTING PLAINTIFF'S ONLINE ACTIVITY ON OTHER PLATFORMS**<br><br>Judge:  Hon. Patricia Donahue<br>Ctrm.:   580<br>Hearing Date: July 10, 2026<br>Hearing Time: 1:30 p.m.<br><br>Fact Discovery Cutoff: Feb. 5 2027<br>Pretrial Conference: July 9, 2027<br>Trial Date:  Not Set |

604501139

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

CLARK SMITH VILLAZOR LLP
Rodney Villazor (310212)
666 Third Avenue, 21st Floor
New York, New York 10017
Tel: (212) 377-0850
Email: rodney.villazor@csvllp.com

THE FREEDMAN FIRM PC
Michael G. Freedman (281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

*Attorneys for Plaintiff Alice Rosenblum*

604501139

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENTS .............................................................. 1

    A.    Defendant Passes' Introductory Statement ...................................... 1

    B.    Plaintiff's Introductory Statement ................................................... 4

II.    THE REQUESTS FOR PRODUCTION AT ISSUE ................................. 5

III.    DEFENDANT PASSES' ARGUMENT .................................................... 16

    A.    Passes' Proposed Compromise To Resolve This Dispute .............. 20

    B.    Documents Reflecting Plaintiff's Continued Distribution Of Pornographic Content Are Relevant To Causation And Damages .......................................................................................... 22

    C.    Plaintiff's Attempt To Diminish The Relevance Of This Material Fails ................................................................................. 23

    D.    The Requests Seek More Than Just Publicly Available Documents ..................................................................................... 25

IV.    PLAINTIFF'S ARGUMENT ................................................................... 26

    A.    Factual Background ....................................................................... 26

    B.    Argument ....................................................................................... 28

        1.    The Passes Defendants Theory of Relevance—that the Requested Information Concerns the "Same Type of Content"—is Incorrect ........................................................ 28

        2.    The Passes Defendants' Request is Wildly Overbroad and Disproportionate to the Needs of the Case .................... 31

    C.    Conclusion .................................................................................... 32

i

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bikley v. Schneider Nat., Inc.*,
 2011 WL 1344195, No. C 08-508 ................................................................. 31

*Doe v. City of Lafayette, Ind.*,
 334 F.3d 606 (7th Cir. 2003) (Ripple, J., dissenting) ................................... 29

*Donnelly v. Am. Express Bank, FSB*,
 2018 WL 4759206, No. 18-cv-1024-GPC-WVG (S.D. Cal. Oct.
 2, 2018) ........................................................................................................ 31

*Elden v. Nirvana L.L.C.*,
 88 F.4th 1292 (9th Cir. 2023) ........................................................................ 24

*Gilbert v. Citigroup, Inc.*,
 2009 WL 10692463 (N.D. Cal. Apr. 2, 2009) ............................................... 22

*Lopez v. Lee*,
 2025 WL 2653642, No. 23-cv-03660-HSG (N.D. Cal. Sept. 16,
 2025) .............................................................................................................. 31

*U.S. v. Marcus*,
 193 F. Supp. 2d 552 (E.D.N.Y. 2001) ............................................................ 29

*In re Packaged Seafood Prods. Antitrust Litig.*,
 2018 WL 4327876 (S.D. Cal. Sept. 10, 2018) ............................................... 22

*Synergy Hematology-Oncology Med. Assocs., Inc. v. Abbott Lab'ys.,
 Inc.*,
 2022 WL 18938098, No. CV 22-01560 SPG ................................................. 31

**Statutes**

18 U.S.C. § 2255 .................................................................................................. 24

Cal. Civ. Code § 1708.85 ..................................................................................... 24

**Rules**

Fed. R. Civ. P. 26.........................................................................................22, 31

604501139

iii

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2, Defendant Passes, Inc. submits this joint stipulation regarding its motion to compel the production of additional documents relating to Plaintiff's online activity on other platforms, including WideApp, OnlyFans, Twitter/X, and Instagram.

Pursuant to Local Rule 37-1, the parties have completed a pre-filing conference of counsel and have attended an Informal Discovery Conference on May 8, 2026, at which some (but not all) of their discovery disputes were resolved.

## I.  INTRODUCTORY STATEMENTS

### A.  Defendant Passes' Introductory Statement

Plaintiff Alice Rosenblum alleges that, 39 days before she turned eighteen, a talent manager named Alec Celestin convinced her to leave one subscription platform (WideApp) for another (Passes) and distributed sexual images of her on Passes. *See* Declaration of Nary Kim ("Kim Decl."), Ex. B (SAC) ¶¶ 79–83. After a fleeting tenure on Passes, Plaintiff now seeks over $100 million in damages, on the theory that the dissemination of her sexual images on Passes has caused her catastrophic financial, emotional, and reputational fallout.

But Plaintiff's theory that Passes is responsible for debasing her reputation and causing her ill repute founders on her own conduct. Before Passes, during Passes, and after Passes, Plaintiff voluntarily disseminated the same type of content across other platforms like WideApp, OnlyFans, Twitter/X, and Instagram. Yet she now seeks to wall off this evidence from discovery, even as she continues to sell the same type of explicit material she claims caused her to suffer humiliation and shame. The question is straightforward: Can a plaintiff demanding $100 million for financial, emotional, and reputational harm block discovery into her identical conduct on other platforms? The answer is no.

Plaintiff's history of posting sexual content online is well-documented. Plaintiff joined Passes on or around August 13, 2024. *See id.* ¶ 101. But well before

604501139

1

that, Plaintiff had launched her career as an explicit content creator on a platform called WideApp. As Plaintiff recounts, in June 2024, Celestin saw Plaintiff's provocative images on WideApp and allegedly told her she could "most likely make 5-10x more than WideApp" on Passes. *Id.* ¶ 80 & n.5. Two months later, Plaintiff opened a Passes account. *See id*. ¶ 91. She was seventeen and eleven months old at the time.

After turning eighteen on September 21, 2024, Plaintiff's online presence grew more notorious. In December 2024, Plaintiff opened an OnlyFans account, declaring she had decided to leave Passes for OnlyFans because Passes had "too many rules" limiting the type of content she could post.

Today, at nineteen, Plaintiff's business of selling explicit content has grown so prolific that she is rumored to earn eight figures annually. She recently went viral for meeting an OnlyFans follower who had spent over $2 million on her images.[1] Far from retreating in shame, she has doubled down.

The continuous stream of Plaintiff's online activity—before, during, and after Passes—confirms Passes' view of the case: she was not exploited by Passes. If her activity on Passes caused massive reputational, emotional, and financial fallout, Plaintiff would have stopped. Instead, she amplified it.

Passes accordingly propounded document requests relating to Plaintiff's activity on other platforms to undermine Plaintiff's theory of injury, causation, and damages. Plaintiff refused, categorically. In the ensuing meet-and-confer, Plaintiff's counsel proposed a baffling compromise: Plaintiff would comply with these requests only if Passes' CEO, Lucy Guo, agreed to produce the same volume of documents from her personal social-media accounts, even though they had no equivalent relevance to any claim or defense in the case. Because the parties disagreed as to whether Plaintiff's obligation to produce documents could be conditioned on what

---

[1] *See* https://www.youtube.com/watch?v=NWPgwAWHCTw.

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

another party does in discovery, Passes sought this Court's guidance at an Informal Discovery Conference.

At the May 8, 2026 IDC, Plaintiff's counsel conceded some of the content Plaintiff posted on other platforms was discoverable, but insisted discovery be limited to content posted before Plaintiff turned eighteen. Passes' counsel countered that no such limitation should apply. Content posted after age eighteen continues to be relevant, including because it reflects Plaintiff's fully voluntary, adult decision to continue selling the same type of sexual content she claims harmed her. As Passes' counsel emphasized to the Court, Passes was entitled to discovery about Plaintiff's conduct after leaving Passes, as the fact that she continues to create "substantially the same type of content for audience consumption" would suggest "it really wasn't Passes that … damaged her reputation" or caused her to suffer humiliation, as she claims. *See* Kim Decl., Ex. C (IDC Transcript) at 25:9–16.

The Court agreed with Passes' relevance theory and instructed the parties to craft a proportional compromise. *Id*. at 27:16–28:4 ("[C]ertainly given what the defense has argued, I think the plaintiff should have a good understanding of their theory of relevance and I agree with them."). In line with this Court's instruction, Passes proposed narrowing these document requests to target only "sexually explicit or sexually suggestive content posted on other platforms, including … all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10. Plaintiff, however, struck this language from the post-IDC compromise submitted to the Court. Kim Decl., Ex. D (Dkt. No. 175). Instead, Plaintiff insisted that such documents were relevant only if she disseminated them prior to turning eighteen.

Accordingly, Passes moves to compel the subset of documents reflecting "Plaintiff's continued posting and transmission of sexual and pornographic content after she turned 18." Kim Decl., Ex. D ¶ 4.c. This subset of documents is narrow,

proportional, and directly tied to Plaintiff's own damages theory. This Court should grant it.

**B.  Plaintiff's Introductory Statement**

The Passes Defendants' motion goes far beyond the arguments necessary to support their contention regarding the purported relevance of the limited category of documents at issue. Rather, the Passes Defendants use this motion as a vehicle to present pages of entirely superfluous (and false and disingenuous) victim-blaming to the Court. Why the Passes Defendants have used this motion to disparage Plaintiff, a victim who had child pornography depicting her uploaded to the Passes platform, by labeling her as a "notorious" individual who "amplified" her own harm (which, again, was child pornography) is unclear. What is clear is that the Passes Defendants' motion rests on a misconception of the case.

Putting aside the Passes Defendants' baffling desire to disparage Plaintiff and engage in arguments on the merits—none of which undermine Plaintiff's core allegations regarding the Passes Defendants' dissemination of child pornography involving her—their motion to compel is baseless. The Passes Defendants' motion to compel can be distilled into one argument—that Plaintiff cannot have been exploited by Passes when she was a minor because she chose to create adult content after her 18th birthday. Yet nowhere in its motion does Defendant contend with the obvious distinction between child sexual abuse material ("CSAM"), illegal material produced through the exploitation of a minor, versus content voluntarily created by an adult. Instead, the Passes Defendants' motion treats the two as interchangeable, referring to both as the "same type of content." Any decision by Plaintiff, made as a consenting adult, to voluntarily create *lawful* content does not negate the harm of having been exploited when she was a minor, nor does any such decision entitle Defendant to open-ended discovery into every aspect of Plaintiff's career as a result.

Plaintiff's post-IDC compromise was reasonable and directly responsive to the

604501139

4

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

Court's instruction. Plaintiff agreed to produce documents related to "the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes" and "instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms." That narrowing captures the only cross-platform material with genuine relevance to this case. What Defendants actually want—every piece of sexually explicit or "suggestive" content Plaintiff has created as an adult, across every platform, plus every private communication she has ever had with *any individual* about that content (*see* Request for Production No. 11)—goes far beyond anything the Court contemplated, seeks irrelevant information, and is unduly burdensome and disproportionate to the needs of the case. There is no factual or legal basis to compel Plaintiff to search for and hand every intimate image to the very platform that exploited her as a child. Defendant's motion to compel should be denied.

## II.    THE REQUESTS FOR PRODUCTION AT ISSUE

**Request for Production No. 7:**

Unless produced in response to other Requests for Production, all YOUR COMMUNICATIONS with Jade Rosenblum, David Rosenblum, Deborah Rees, or Damian Brunton regarding YOUR SOCIAL MEDIA ACCOUNTS, including without limitation the content you post on YOUR SOCIAL MEDIA ACCOUNTS and your interaction with other users through YOUR SOCIAL MEDIA ACCOUNTS.

**Plaintiff's Response to Request for Production No. 7:**

In addition to the foregoing General Objections and Objections to Definitions and Instructions, Plaintiff objects to this Request on the grounds that it is overbroad, disproportionate to the needs of the case, and seeks irrelevant information insofar as it calls for "all" COMMUNICATIONS.  Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest or joint defense privilege, and privilege from disclosure of communication with litigation

consultants and insurers to the extent recognized by the Applicable Rules. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents that are not in Plaintiff's possession, custody, or control and are in the possession, custody, or control of third parties, including because her PASSES profile was deleted by PASSES. Plaintiff further objects to this Request on the grounds that it is duplicative of Request No. 6. Plaintiff further objects to this Request on the grounds that it seeks information and content not relevant to the case, in that it requests all information and content without reference to whether such information and content has any relevance to the facts alleged in the Second Amended Complaint, including insofar as it seeks information and content shared on Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES. In addition, to the extent that this request potentially calls for the production of documents related to potential CSAM, Plaintiff will need to work with the Passes Defendants to establish a protocol to be presented to and ordered by the Court addressing how such material will be handled in this ACTION, prior to making documents available in response to this Request.

Without waiving the foregoing objections, Plaintiff agrees to meet and confer with the Passes Defendants concerning a Search Protocol. Plaintiff will complete a reasonable search and produce non-privileged, responsive information and content, if any, as they relate to Plaintiff's content shared on PASSES only, in accordance with the Search Protocol. However, based on the foregoing objections, Plaintiff will not produce communications in response to this Request insofar as it seeks information and content shared or prepared for sharing on Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES, if any responsive communications exist.

**Defendant Passes' Present Position For Resolving RFP No. 7:**

Mindful of the Court's guidance on how to narrow the scope of this request, Passes has proposed to limit its reach to focus on Plaintiff's "sexually explicit or sexually suggestive content posted on other platforms, including without limitation

604501139                                      6

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10. With this limitation (appearing in boldface and underlining), the as-narrowed request would require Plaintiff to produce:

> Unless produced in response to other Requests for Production, all YOUR COMMUNICATIONS with Jade Rosenblum, David Rosenblum, Deborah Rees, or Damian Brunton regarding **sexually explicit or sexually suggestive content, including without limitation all pornographic materials transmitted or sold** on YOUR SOCIAL MEDIA ACCOUNTS other than PASSES.[2]

Because this request, as re-calibrated, targets a narrower set of documents that would undermine Plaintiff's theory of causation and damages, Plaintiff has no principled basis for resisting the production of responsive documents.

**Plaintiff's Compromise Proposal**

Plaintiff has agreed to conduct a reasonable search for and produce responsive, non-privileged documents (including without limitation, communications, private and direct messages, photos, videos, comments, postings, and other images and materials) in Plaintiff's possession, custody, or control, that relate to: (i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf.

**Request for Production No. 8:**

All information and content YOU have shared, attempted to share, or prepared for sharing through all YOUR SOCIAL MEDIA ACCOUNTS, including without limitation photos, videos, livestreaming, profile information, comments and responses to comments, direct messages, whether currently displayed on YOUR SOCIAL

---

[2] For clarity, Passes' proposals for narrowing RFP Nos. 7–11 are in addition to, and do not impact, the categories of social-media content Plaintiff has already agreed to produce under the parties' Stipulation Regarding Parties' Discovery Disputes (Dkt. No. 175). *See* Kim Decl. Ex. D ¶ 4.c.

604501139

7

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

MEDIA ACCOUNTS.

**Plaintiff's Response to Request for Production No. 8:**

In addition to the foregoing General Objections and Objections to Definitions and Instructions, Plaintiff objects to this Request on the grounds that it is overbroad, disproportionate to the needs of the case, and seeks irrelevant information insofar as it calls for "All" information and content. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest or joint defense privilege, and privilege from disclosure of communication with litigation consultants and insurers to the extent recognized by the Applicable Rules. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents that are not in Plaintiff's possession, custody, or control and are in the possession, custody, or control of third parties or the Passes Defendants, including because her PASSES profile was deleted by PASSES. Plaintiff further objects to this Request on the grounds that it is duplicative of Request Nos. 9 and 10. Plaintiff further objects to this Request on the grounds that it seeks information and content not relevant to the case, in that it requests all information and content without reference to whether such information and content has any relevance to the facts alleged in the Second Amended Complaint, including insofar as it seeks information and content shared on Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES. In addition, to the extent that this request potentially calls for the production of documents related to potential CSAM, Plaintiff will need to work with the Passes Defendants to establish a protocol to be presented to and ordered by the Court addressing how such material will be handled in this ACTION, prior to making documents available in response to this Request.

Without waiving the foregoing objections, Plaintiff agrees to meet and confer with the Passes Defendants concerning a Search Protocol. Plaintiff will complete a

604501139

8

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

reasonable search and produce non-privileged, responsive information and content, if any, as they relate to Plaintiff's content shared on PASSES only, in accordance with the Search Protocol.  However, based on the foregoing objections, Plaintiff will not produce communications in response to this Request insofar as it seeks information and content shared or prepared for sharing on Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES, if any responsive communications exist.

**Defendant Passes' Present Position For Resolving RFP No. 8:**

Mindful of the Court's guidance on how to narrow the scope of this request, Passes has proposed to limit its reach to focus on Plaintiff's "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10.  With this limitation (appearing in boldface and underlining), the as-narrowed request would require Plaintiff to produce:

All **sexually explicit or sexually suggestive content, including without limitation all pornographic materials** YOU have shared, attempted to share, or prepared for sharing through all YOUR SOCIAL MEDIA ACCOUNTS, including without limitation photos, videos, livestreaming, profile information, comments and responses to comments, direct messages, whether currently displayed on YOUR SOCIAL MEDIA ACCOUNTS.

Because this request, as re-calibrated, targets a narrower set of documents that would undermine Plaintiff's theory of causation and damages, Plaintiff has no principled basis for resisting the production of responsive documents.

**Plaintiff's Compromise Proposal**

Plaintiff has agreed to conduct a reasonable search for and produce responsive, non-privileged documents (including without limitation, communications, private and direct messages, photos, videos, comments, postings, and other images and materials) in Plaintiff's possession, custody, or control, that relate to: (i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on

other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf.

**Request for Production No. 9:**

Unless produced in response to other Requests for Production, all YOUR COMMUNICATIONS with Jade Rosenblum RELATED TO sharing photos, videos, livestreaming, or other content depicting YOU on any SOCIAL MEDIA PLATFORM, including without limitation by posting or sending such content through direct messages.

**Plaintiff's Response to Request for Production No. 9:**

In addition to the foregoing General Objections and Objections to Definitions and Instructions, Plaintiff objects to this Request on the grounds that it is overbroad, disproportionate to the needs of the case, and seeks irrelevant information insofar as it calls for "All" COMMUNICATIONS. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest or joint defense privilege, and privilege from disclosure of communication with litigation consultants and insurers to the extent recognized by the Applicable Rules. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents that are not in Plaintiff's possession, custody, or control and are in the possession, custody, or control of third parties, including because her PASSES profile was deleted by PASSES. Plaintiff further objects to this Request on the grounds that it is duplicative of Request Nos. 6, 7, 8, and 10. Plaintiff further objects to this Request on the grounds that it seeks communications not relevant to the case, in that it requests all information and content without reference to whether such information and content has any relevance to the facts alleged in the Second Amended Complaint, including insofar as it seeks information and content shared on Plaintiff's SOCIAL MEDIA

604501139

ACCOUNTS other than PASSES.  In addition, to the extent that this request potentially calls for the production of documents related to potential CSAM, Plaintiff will need to work with the Passes Defendants to establish a protocol to be presented to and ordered by the Court addressing how such material will be handled in this ACTION, prior to making documents available in response to this Request.

Without waiving the foregoing objections, Plaintiff agrees to meet and confer with the Passes Defendants concerning a Search Protocol.  Plaintiff will complete a reasonable search and produce non-privileged, responsive communications, if any, as they relate to Plaintiff's content shared on PASSES only, in accordance with the Search Protocol.  However, based on the foregoing objections, Plaintiff will not produce communications in response to this Request insofar as it seeks communications related to Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES, if any responsive communications exist.

**Defendant Passes' Present Position For Resolving RFP No. 9:**

Mindful of the Court's guidance on how to narrow the scope of this request, Passes has proposed to limit its reach to focus on Plaintiff's "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10.  With this limitation (appearing in boldface and underlining), the as-narrowed request would require Plaintiff to produce:

> Unless produced in response to other Requests for Production, all YOUR COMMUNICATIONS with Jade Rosenblum RELATED TO sharing **sexually explicit, sexually suggestive, or pornographic** photos, videos, livestreaming, or other content depicting YOU on any SOCIAL MEDIA PLATFORM, including without limitation by posting or sending such content through direct messages.

Because this request, as re-calibrated, targets a narrower set of documents that would undermine Plaintiff's theory of causation and damages, Plaintiff has no principled basis for resisting the production of responsive documents.

**Plaintiff's Compromise Proposal**

604501139

11

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

Plaintiff has agreed to conduct a reasonable search for and produce responsive, non-privileged documents (including without limitation, communications, private and direct messages, photos, videos, comments, postings, and other images and materials) in Plaintiff's possession, custody, or control, that relate to: (i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf.

**Request for Production No. 10:**

All photos, videos, livestreaming, or other content depicting YOU that Jade Rosenblum shared on any SOCIAL MEDIA PLATFORM, including without limitation by posting or sending such content through direct messages.

**Plaintiff's Response to Request for Production No. 10:**

In addition to the foregoing General Objections and Objections to Definitions and Instructions, Plaintiff objects to this Request on the grounds that it is overbroad, disproportionate to the needs of the case, and seeks irrelevant information insofar as it calls for "All" photos, videos, livestreaming, or other content. Plaintiff further objects to this Request on the grounds and to the extent that it seeks documents that are not in Plaintiff's possession, custody, or control and are in the possession, custody, or control of third parties, including because her PASSES profile was deleted by PASSES. Plaintiff further objects to this Request on the grounds that it is duplicative of Request Nos. 7-9. Plaintiff further objects to this Request on the grounds that it seeks communications not relevant to the case, in that it requests all information and content without reference to whether such information and content has any relevance to the facts alleged in the Second Amended Complaint, including insofar as it seeks information and content shared on Plaintiff's SOCIAL MEDIA ACCOUNTS other

than PASSES. In addition, to the extent that this request potentially calls for the production of documents related to potential CSAM, Plaintiff will need to work with the Passes Defendants to establish a protocol to be presented to and ordered by the Court addressing how such material will be handled in this ACTION, prior to making documents available in response to this Request.

Without waiving the foregoing objections, Plaintiff agrees to meet and confer with the Passes Defendants concerning a Search Protocol. Plaintiff will complete a reasonable search and produce non-privileged, responsive communications, if any, as they relate to Plaintiff's content shared on PASSES only, in accordance with the Search Protocol. However, based on the foregoing objections, Plaintiff will not produce communications in response to this Request insofar as it seeks communications related to Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES, if any responsive communications exist.

**Defendant Passes' Present Position For Resolving RFP No. 10:**

Mindful of the Court's guidance on how to narrow the scope of this request, Passes has proposed to limit its reach to focus on Plaintiff's "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10. With this limitation (appearing in boldface and underlining), the as-narrowed request would require Plaintiff to produce:

> All **sexually explicit, sexually suggestive, or pornographic** photos, videos, livestreaming, or other content depicting YOU that Jade Rosenblum shared on any SOCIAL MEDIA PLATFORM, including without limitation by posting or sending such content through direct messages.

Because this request, as re-calibrated, targets a narrower set of documents that would undermine Plaintiff's theory of causation and damages, Plaintiff has no principled basis for resisting the production of responsive documents.

**Plaintiff's Compromise Proposal**

Plaintiff has agreed to conduct a reasonable search for and produce responsive, non-privileged documents (including without limitation, communications, private and direct messages, photos, videos, comments, postings, and other images and materials) in Plaintiff's possession, custody, or control, that relate to: (i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf.

**Request for Production No. 11:**

Unless produced in response to other Requests for Production, all YOUR non-privileged COMMUNICATIONS with any other PERSON, including without limitation Jade Rosenblum, David Rosenblum, Deborah Rees, and Damian Brunton, RELATED TO CJ Rees, Team Rees LLC, DYCE MGMT LLC, Eros Modeling, and any other PERSON who has managed or provided services or advice to YOU, regarding the content, or YOUR interaction with other users, on YOUR SOCIAL MEDIA ACCOUNTS.

**Plaintiff's Response to Request for Production No. 11:**

In addition to the foregoing General Objections and Objections to Definitions and Instructions, Plaintiff objects to this Request on the grounds that it is overbroad, disproportionate to the needs of the case, and seeks irrelevant information insofar as it calls for "all" COMMUNICATIONS. Plaintiff further objects to this Request on the grounds that it is duplicative of Request Nos. 2 and 6-10. Plaintiff further objects to this Request on the grounds that it seeks documents and communications not relevant to the case, in that third parties Jade Rosenblum, David Rosenblum, Deborah Rees, Damian Brunton, CJ Rees, Team Rees LLC, DYCE MGMT LLC, and Eros Modeling are not mentioned in the Second Amended Complaint or the Passes

604501139

14

Defendants' Answer to the Second Amended Complaint, the management of social media content of Plaintiff that is not at issue in this ACTION and is not relevant to the claims in the case, and insofar as it seeks information and content shared on Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES. In addition, to the extent that this request potentially calls for the production of documents related to potential CSAM, Plaintiff will need to work with the Passes Defendants to establish a protocol to be presented to and ordered by the Court addressing how such material will be handled in this ACTION, prior to making documents available in response to this Request.

Without waiving the foregoing objections, Plaintiff agrees to meet and confer with the Passes Defendants concerning a Search Protocol. Plaintiff will complete a reasonable search and produce non-privileged, responsive communications, if any, as they relate to Plaintiff's content shared on PASSES only, in accordance with the Search Protocol. However, based on the foregoing objections, Plaintiff will not produce communications in response to this Request insofar as it seeks communications related to Plaintiff's SOCIAL MEDIA ACCOUNTS other than PASSES, if any responsive communications exist.

**Defendant Passes' Present Position For Resolving RFP No. 11:**

Mindful of the Court's guidance to narrow the scope of this request, Passes proposed to limit its reach to focus on Plaintiff's "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10. With this limitation (appearing in boldface and underlining), the as-narrowed request would require Plaintiff to produce:

> Unless produced in response to other Requests for Production, all YOUR non-privileged COMMUNICATIONS with any other PERSON, including without limitation Jade Rosenblum, David Rosenblum, Deborah Rees, and Damian Brunton, RELATED TO CJ Rees, Team Rees LLC, DYCE MGMT LLC, Eros Modeling, and any other PERSON who has managed or provided services or advice to YOU, regarding **sexually explicit or sexually suggestive content, including without**

604501139

15

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

**limitation all pornographic materials transmitted or sold** on YOUR SOCIAL MEDIA ACCOUNTS.

Because this request, as re-calibrated, targets a narrower set of documents that would undermine Plaintiff's theory of causation and damages, Plaintiff has no principled basis for resisting the production of responsive documents.

**Plaintiff's Compromise Proposal**

Plaintiff has agreed to conduct a reasonable search for and produce responsive, non-privileged documents (including without limitation, communications, private and direct messages, photos, videos, comments, postings, and other images and materials) in Plaintiff's possession, custody, or control, that relate to: (i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf.

## III.   DEFENDANT PASSES' ARGUMENT

Since age seventeen, Plaintiff has built a lucrative career selling sexual images of herself—a career she launched before she joined Passes, and has continued to expand after leaving Passes.

The record confirms as much. Well before Plaintiff joined Passes in August 2024, Plaintiff had begun her career as a provocative content creator on a platform called "WideApp":

604501139                                16

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL



According to her SAC, in June 2024, a talent manager named Alec Celestin saw Plaintiff's content on WideApp and allegedly recruited her to join Passes. *See* Kim Decl., Ex. B ¶ 80 & n.5. Two months later, 39 days before she turned eighteen, Plaintiff opened her Passes account. Eagle-eyed fans who had purchased Plaintiff's WideApp content recognized the content and complained that her Passes content was the same material they had already bought on WideApp.



Nor was WideApp the only platform she used for self-promotion. Before joining Passes, Plaintiff had also posted enticing images on her Instagram account:



Similarly, Plaintiff's older sister, who is also a content creator, had posted seductive photos of the both of them on her public Instagram, with no compunction that Plaintiff was under eighteen:



Plaintiff's online presence only intensified after she turned eighteen and left Passes. As a freshly-minted eighteen-year-old, Plaintiff opened an OnlyFans account

and told her fans that she had moved from Passes to OnlyFans because Passes had "too many rules" regulating the content she could post:



In promoting the sale of her content, Plaintiff teased she had "just turned 18 years old" and directed fans to her new OnlyFans account with the warning "TRY NOT TO CUM":



This trajectory continues unabated. Today, at nineteen, Plaintiff continues selling sexual images of herself and has become a bona fide celebrity in the world of explicit content.

Against this backdrop, Passes seeks the production of documents relating to Plaintiff's distribution of sexually-explicit and pornographic content on other platforms, to undermine her theory that she has suffered loss of privacy and severe economic, emotional, and reputational fallout as a result of having sexual images of her distributed on Passes. Plaintiff has no principled basis for refusing to produce such documents reflecting "Plaintiff's continued posting and transmission of sexual and pornographic content after she turned 18." Kim Decl., Ex. D ¶ 4.c. At various intervals, Plaintiff has offered different rationales for refusing.

Initially, she refused to comply with the requests, unless Passes' CEO, Lucy Guo, preemptively agreed to comply with the same requests, as if they applied to her. *See* Kim Decl. Ex. E (joint email requesting IDC) at 3. Then, for purposes of the IDC, Plaintiff's counsel switched course and instead argued her refusal was justified for two reasons: because the law does not require victims of child pornography to prove actual damages; and because some of the content was public and accessible to Passes. But, as explained below, neither of these objections holds up.

### A.   Passes' Proposed Compromise To Resolve This Dispute

As noted above, the original, as-drafted requests for production in dispute are RFP Nos. 7 to 11. Plaintiff refused to produce any documents in response.

At the ensuing meet-and-confer between counsel, Plaintiff's counsel offered a bizarre concession: Plaintiff would agree to produce documents responsive to these requests, but only if Passes' CEO (Lucy Guo) preemptively agreed to produce equivalent documents from her own social-media accounts. Passes' counsel expressed confusion. *See* Kim Decl. ¶ 8. Plaintiff's activity on other platforms relates directly to her theories of injury, causation, and damages, while Ms. Guo's social-

604501139

20

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

media activity is irrelevant to any claim or defense in this case.

Unable to resolve the dispute, the parties sought guidance at an Informal Discovery Conference.  At the IDC, Passes' counsel explained the relevance of Plaintiff's post-Passes activity:  her engagement "in substantially the same type of activity [and] creating substantially the same type of content for audience consumption would suggest that it really wasn't Passes that would have damaged her reputation, but [rather] her sprawling activity across the board on many other platforms." Kim Decl., Ex. C at 25:9–16.

The Court agreed.  It instructed the parties to craft a proportional compromise—one that refrained from demanding all of Plaintiff's social-media activity but instead re-calibrated to target the sexually explicit or suggestive materials that Passes explained was relevant.  *Id*. at 27:16–28:4 ("[C]ertainly given what the defense has argued, I think the plaintiff should have a good understanding of their theory of relevance and I agree with them.").

Following the Court's guidance, Passes narrowed this series of requests. Rather than seek all documents in response to the as-drafted RFPs, Passes proposed limiting the production to "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." *See* Kim Decl. ¶ 10.  Plaintiff refused to include this language in the post-IDC joint stipulation. *See* Kim Decl., Ex. D.

As reflected in the post-IDC joint stipulation, Plaintiff agreed only to produce documents related to "the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes" or "instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms." Kim Decl., Ex. D ¶ 4.c.  Passes thus brings this motion to compel production of additional documents reflecting "Plaintiff's continued posting and transmission of sexual and pornographic content after she turned 18." *Id*.

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

**B.** **Documents Reflecting Plaintiff's Continued Distribution Of Pornographic Content Are Relevant To Causation And Damages**

It is well-settled that "[e]ach party generally has the right to discover 'any matter, not privileged, that is relevant to the claim or defense of any party,' including 'information that a party may use to support its denial or rebuttal of the claims or defenses of another party.'" *Gilbert v. Citigroup, Inc.*, 2009 WL 10692463, at *2 (N.D. Cal. Apr. 2, 2009) (citing Fed. R. Civ. P. 26); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 4327876, at *3 (S.D. Cal. Sept. 10, 2018) ("Defendants contend that discovery is relevant because it contradicts one of Plaintiffs' theories:  whether a jury should infer collusion based on innocuous competitor communications.  This is not an attention-shifting defense; rather, it seeks to counter Plaintiffs' theory of the case.").

The documents Passes seeks are indispensable to its defense.  Plaintiff has placed her injury, causation, and damages squarely at issue by seeking over $100 million on the theory that her activity on Passes—and Passes alone—caused her catastrophic reputational harm, emotional distress, loss of privacy, and economic injury.  But Plaintiff cannot pursue this theory while shielding from discovery her own conduct on other platforms that contradicts it.  This evidence will demonstrate that Plaintiff built a lucrative career in explicit content creation—beginning before she ever encountered Passes, continuing during her brief tenure on the Passes platform, and accelerating after she departed.

Plaintiff's pre-Passes activity demonstrates that she initiated her career in this industry of her own volition.  The relevance of this evidence is undisputed:  at the IDC, Plaintiff's counsel conceded that sexual content posted on other platforms before she joined Passes is discoverable.  The reason is self-evident.  By Plaintiff's own account, she was already posting provocative content on WideApp when Alec Celestin first noticed her.  *See* Kim Decl., Ex. B (SAC) ¶ 80.  Celestin did not originate

Plaintiff's interest in creating this type of content; he responded to a career she had already chosen to pursue. This evidence eviscerates any claim that Passes or its alleged agents coerced her into the industry.

Plaintiff's post-Passes activity is equally, if not more, probative. If Passes had truly caused Plaintiff the devastating harm she alleges, the natural response would have been to cease the activity she now claims injured her, since one would expect a traumatized teenager to refrain from the very activity that caused her trauma. Instead, the opposite occurred. By December 2024—mere months after her brief tenure on Passes—Plaintiff had already opened an OnlyFans account and publicly declared that she had left Passes because it imposed "too many rules" restricting the content she could post.

This is not the conduct of a victim of exploitation; it is the conduct of an entrepreneur seeking fewer constraints on her chosen profession. Plaintiff not only continued creating and distributing explicit content after leaving Passes—she expanded her operations. Today, at nineteen, she is reportedly earning eight figures annually from the same kind of activity she claims damaged her. Plaintiff's trajectory as a content creator—from WideApp and Instagram, to Passes, then to OnlyFans and beyond—reveals Plaintiff's growing interest in monetizing her sexuality, not the aftermath of exploitation. The documents reflecting this evolution are essential to testing Plaintiff's theory that Passes caused catastrophic harm to her reputation, emotional well-being, privacy rights, and financial prospects.

### C. Plaintiff's Attempt To Diminish The Relevance Of This Material Fails

Plaintiff has attempted to deflect Passes' relevance argument with a slew of meritless points. First, in her pre-IDC submission, Plaintiff argued that Passes' "position that Plaintiff's career as an adult somehow 'disproves' the emotional distress inherent to the dissemination of child pornography depicting her is patently

ridiculous," because "[i]t is well established that victims of child pornography suffer concrete injuries" for purposes of Article III standing. Kim Decl., Ex. E (Plaintiff citing *Lily v. Rosenow*, No. 23-CV-00644-WQH-DEB, 2024 WL 4257636, at *2 (S.D. Cal. Sept. 20, 2024)).

This misses the point entirely. Passes does not dispute that Plaintiff has alleged an injury sufficient for Article III standing. Indeed, 18 U.S.C. § 2255(a) guarantees child pornography victims who are able to prove their case "liquidated damages in the amount of $150,000." But standing to sue is not the same as proof of entitlement to over $100 million in actual damages. Plaintiff has elected to pursue actual damages far exceeding any statutory floor—and having made that election, she bears the burden of proving the quantum of damages she actually suffered as a result of Passes' alleged conduct. She cannot meet that burden while blocking discovery into her own parallel conduct that directly undermines her actual damages.

What is more, Plaintiff's inability to establish how exactly she was injured would preclude her from establishing the essential elements of her claims altogether. For example, § 2255(a) requires plaintiffs claiming to be child pornography victims to prove they have suffered personal injury to recover. *Elden v. Nirvana L.L.C.*, 88 F.4th 1292, 1295 (9th Cir. 2023). Similarly, Plaintiff's second cause of action under Cal. Civ. Code § 1708.85 and her third cause of action for intentional infliction of emotional distress do not provide for presumed or statutory damages; they each require proof of actual harm as an element for establishing liability.

At bottom, the documents Passes seeks are essential to testing the existence, causation, and extent of Plaintiff's alleged damages. Her entire case rests on the premise that the dissemination of sexual images on Passes caused her harm. But if Plaintiff's reputation was already associated with sexual content before Passes, then Passes cannot be held responsible for creating that association. If she continued to expand her explicit content business after Passes, then any reputational harm cannot

be attributed solely to Passes.  And if she is currently earning eight figures annually from the same activity she claims damaged her, her assertion of suffering millions in financial injury rings hollow.  In short, Plaintiff cannot claim catastrophic reputational and financial harm from the dissemination of sexual images on one platform while monetizing the dissemination of the same type of images across multiple other platforms.

**D.     The Requests Seek More Than Just Publicly Available Documents**

In Plaintiff's pre-IDC submission to the Court, Plaintiff also explained that the refusal to produce documents responsive to these requests was justified because the fact that Plaintiff has continued to pursue a career as a content creator is "public knowledge" and "much of [the content requested] is already publicly available." Kim Decl., Ex. E.  This argument misapprehends both the nature of Plaintiff's online presence and the scope of the documents Passes seeks.

To be sure, a small fraction of Plaintiff's online activity is publicly visible.  But the vast majority of the content Passes seeks is not accessible to the general public or to Passes.  Platforms like OnlyFans, WideApp, and similar subscription-based services are designed to restrict access to paying subscribers.  The most intimate and explicit images that Plaintiff creates and distributes are hidden behind a paywall, so that Plaintiff can monetize their views.  Passes has no independent means of accessing this paywalled content without Plaintiff's production.  The same is true for the private messages Plaintiff exchanges with her patrons on these other platforms.

Moreover, even to the extent some content is publicly visible, Passes is entitled to authenticated copies from Plaintiff herself, rather than being forced to rely on screenshots or reproductions of less certain provenance.  Rule 34 contemplates the production of documents in a party's possession, custody, or control—not a scavenger hunt across the Internet.  Plaintiff's obligation to produce responsive documents is not excused because fragments of those documents might be glimpsed in public view.

## IV.    PLAINTIFF'S ARGUMENT

### A.    Factual Background

The Passes Defendants have apparently engaged in an about-face from the time they filed their motion to dismiss, in which they described Plaintiff's allegations as "disturbing." (*See* ECF No. 121 at 1.) Now, the Passes Defendants apparently view *Plaintiff* as the wrongdoer who has "amplified" her own harm.  Not only is none of the Passes Defendants' extensive disparagement of Plaintiff's career necessary, it also comes nowhere near justifying the basis for the document requests at issue.

The Passes Defendants' arguments are difficult to follow and have shifted significantly from the position they put forward during the IDC. In the Passes Defendants' portion of the parties' joint email to Magistrate Judge Donahue, they claimed that they were "entitled to find out whether any emotional distress Plaintiff allegedly suffered manifested itself on other platforms." (*See* Kim Decl. Ex. E. at 4 (citing cases related to discovery into emotional distress).) Following the IDC, Plaintiff agreed to produce communications related to her emotional distress, along with any material that related to Passes or the allegations in the SAC, including any CSAM in Plaintiff's possession, custody, or control that may have been posted to other platforms. Specifically, Plaintiff agreed to conduct a reasonable search for and produce several categories of her social media content in addition to any content posted on Passes, including content relating to: "(i) the same or similar child sexual abuse material that Plaintiff alleges was posted on Passes; (ii) instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms; (iii) Plaintiff's past or present emotional or mental state; or (iv) Passes, Lucy Guo, Alec Celestin, Lani Ginoza, WLM Management LLC, Nofhotos Group LLC, or any other person acting on Celestin's behalf." (Kim Decl., Ex. D, at 5.) In addition to the documents Plaintiff agreed to produce in connection with the present dispute, Plaintiff has agreed to produce documents related to the

604501139

26

following categories in response to the Passes Defendants' five (and counting)[3] sets of Requests of Production:

- Communications with each of the defendants. (Requests for Production Nos. 1, 3, 4, 5, and 23.)

- Communications with any other person related to any of the defendants or this action. (Requests for Production Nos. 6, 7, 9, 11, 13, 17, 18, 21, and 22.)

- Content posted, or related to, Passes, and communications concerning that content, the creation of that content, or communications sent or received through Passes. (Requests for Production Nos. 8, 10, 11, 24, 25, 26, 27, 28, 29, 30, 38, 39, 40, 41, 42, 43, and 44.)

- Communications with any former Passes employee or contractor. (Requests for Production No. 14.)

- Communications with any other person who considered bringing the same or similar claims against Passes or Guo. (Request for Production Nos. 15, 16, 20.)

- Communications related to Plaintiff's emotional distress. (Request for Production No. 19.)

- Documents shared with any law enforcement agency or nonprofit organization related to any of the defendants or Plaintiff's allegations in the SAC. (Request for Production No. 32.)

(*See* Villazor Dec. Exs. 1-4.)

Apparently unsatisfied with Plaintiff's agreement to produce documents relevant to proving or disproving Plaintiff's claims and the Passes Defendants' affirmative defenses, the Passes Defendants filed the present motion, seeking information regarding Plaintiff's current career as a content creator.

---

[3] The Passes Defendants served their Fifth Set of Requests for Production on May 15, and Plaintiff has not yet responded.

604501139

27

**B.**    <u>Argument</u>

    **1.**    <u>**The Passes Defendants Theory of Relevance—that the Requested Information Concerns the "Same Type of Content"—is Incorrect**</u>

At the outset, it is important to underscore the current state of discovery as it relates to the Passes Defendants' requests. *First*, Plaintiff has agreed to produce materials, including content posted on social media, related to her emotional distress, along with any materials posted on or related to Passes or any of the other defendants, content that constitutes the same or similar CSAM that Plaintiff alleges was posted on Passes, or materials related to instances of alleged abuse or improper content directed against Plaintiff and occurring on other social media platforms. All of this material will go towards proving or disproving the key allegations in the SAC: That Plaintiff was abused by the defendants, that CSAM depicting Plaintiff was uploaded to the Passes platform, that the defendants knew that CSAM depicting Plaintiff was uploaded to the Passes platform, and that Plaintiff suffered harm, including emotional distress. Her subsequent activity as an adult (beyond what Plaintiff has already agreed to produce) does not prove or disprove any of those allegations.

*Second*, the fact that Plaintiff is currently an adult who produces explicit material is not in dispute and already part of the record. If the Passes Defendants wish to engage in victim-blaming and argue that Plaintiff's fully legal activity as an adult somehow undermines her claims of abuse while she was a minor, they are free to do so already. The Passes Defendants' own motion to compel establishes that they have extensive materials to engage in merits-based arguments regarding the emotional distress Plaintiff suffered.[4]

These facts underscore the irrelevance of the additional information sought. Defendant's motion rests on the premise that Plaintiff's activity on other platforms constitutes "the same type of content" as what appeared on Passes when she was a

---

[4] The Passes Defendants have also raised Plaintiff's damages request from $30-$40 million, as stated in the parties' joint email to the Court and in the parties' Joint Rule 26(f) Report (ECF No. 149 at 7), to $100 million.

minor, or that this case concerns her "career in this industry," and that this therefore undermines her claims of injury, causation, and damages. But by definition, child sexual abuse material cannot be the "the same type of content" as content Plaintiff created on other platforms while she was an adult, as Defendant insists. *See U.S. v. Marcus*, 193 F. Supp. 2d 552, 558-59 (E.D.N.Y. 2001) (noting the "obvious distinctions between adult pornographic films . . . and child pornography" and stating, "[c]hild pornography, on the other hand, . . . necessarily victimizes someone. The victims of child pornography are youngsters, incapable of consenting as a matter of law, who are sexually abused for the gratification of others."); *see also Doe v. City of Lafayette, Ind.*, 334 F.3d 606, 618 (7th Cir. 2003) (Ripple, J., dissenting) ("Indeed, the Supreme Court has distinguished between child pornography and pornography featuring adults.") (citing *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990)). The fact that Plaintiff, after turning 18, chose to create adult content does not retroactively make the exploitation she experienced at 17 permissible under the law, nor does it make that content relevant.

The fundamental difference between CSAM and adult content vitiates the Passes Defendants' contentions. The Passes Defendants argue that Plaintiff's theory of the case is that "her activity on Passes—and Passes alone—caused her catastrophic reputational harm, emotional distress, loss of privacy, and economic injury." *Supra* § III.B; *see also id.* ("Plaintiff not only continued creating and distributing explicit content after leaving Passes—she expanded her operations."). Given that the "activity" at issue is the dissemination of child pornography—and that Plaintiff has agreed to produce any child pornography or other CSAM posted on Passes or elsewhere (subject to the ordering of a protocol regarding how to handle such materials)—the Passes Defendants' position makes no sense.

Moreover, the Passes Defendants' broad request contradicts the guidance given by Magistrate Judge Donahue during the IDC. During that conference, the Passes

Defendants put forward two discovery disputes—(1) the documents currently at issue, and (2) documents concerning the Passes Defendants' Request for Production No. 2, which requested "all YOUR COMMUNICATIONS with . . . any other PERSON who has managed or provided services or advice to YOU RELATED TO the content, or YOUR interaction with other users, on YOUR SOCIAL MEDIA ACCOUNTS, including without limitation (i) any COMMUNICATIONS RELATED TO any agreement between with [sic] the foregoing PERSONS and (ii) any COMMUNICATIONS RELATED TO the negotiations and performance of such agreement(s) and payments and invoices under such agreement(s)." (Villazor Dec. Ex. 1 at 6; *see also* Kim Decl. Ex. E at 4.). The Passes Defendants' second discovery demand was already dismissed by Magistrate Judge Donahue as "speculative." (*See* Kim Decl. Ex. C at 32: 16-20 ("Quite frankly [the requests for communications with subsequent management] sounds a bit speculative. Certainly all the communications with Celestin are relevant, but [] communications with – when she was an adult with subsequent management I don't see at this point how that is relevant.") The Passes Defendants' Requests for Production Nos. 7, 9, and 11 seek those same communications (to the extent they relate to her social media content that was sexually explicit or "suggestive") that were deemed "speculative," along with a much broader set of content and communications. The idea that a *subset* of the information requested by Requests for Production 7, 9, and 11 is unduly speculative, but the *entire set* of information covered by these Requests is not, is illogical.

In short, there is no reason for the Passes Defendants to have every single item of explicit or "suggestive" content that Plaintiff has ever posted up to the present. Seemingly, the only reason they would want these materials is so they could use them to attempt to harass and embarrass Plaintiff by showing these materials to her and other deponents, including her family. [5] But harassment is not a legitimate discovery

---

[5] The Passes Defendants have noticed the depositions of Plaintiff's father and brother and subpoenaed her mother, notwithstanding the fact that the SAC contains no allegations about them.

604501139    30

objective. *See Donnelly v. Am. Express Bank, FSB*, 2018 WL 4759206, No. 18-cv-1024-GPC-WVG, at *6 n.7 (S.D. Cal. Oct. 2, 2018) ("An 'improper purpose' is implicit in discovery that serves to annoy, embarrass, and oppress the discovery recipient.") (citing Fed. R. Civ. P. 26(b)(1)); *Bikley v. Schneider Nat., Inc.*, 2011 WL 1344195, No. C 08-508 JSW (JL), at *3 (denying discovery requests into plaintiffs' prior employment because "[i]t could reasonably inferred that Defendant's subpoenas were intended to harass Plaintiffs and constitute little more than an abuse of the discovery process.").

### 2.   The Passes Defendants' Request is Wildly Overbroad and Disproportionate to the Needs of the Case

The Passes Defendants seek: (a) every piece of sexually explicit or "suggestive" content Plaintiff has ever created on any platform, without limitation, and (b) every communication Plaintiff has ever had with any individual about that content. Even accepting the Passes Defendants' contentions regarding relevance, they fail to show that the requests at issue here are proportional to the needs of the case. The Passes Defendants' contention that these documents may tangentially shed light on the emotional distress or other harm Plaintiff suffered cannot justify discovery requests as broad as these. *See Lopez v. Lee*, 2025 WL 2653642, No. 23-cv-03660-HSG, at *4 (N.D. Cal. Sept. 16, 2025) ("rejecting discovery requests as "unduly burdensome and disproportionate to the needs of the case"); *Synergy Hematology-Oncology Med. Assocs., Inc. v. Abbott Lab'ys., Inc.*, 2022 WL 18938098, No. CV 22-01560 SPG (JMEx), at *2 (C.D. Cal. Nov. 8, 2022) (denying discovery requests as "disproportionate to the needs of the case and outside the scope permitted by Rule 26(b)(1)").

A brief examination of the Passes Defendants' discovery requests makes their overbreadth clear. For instance, the Passes Defendants' Request for Production No. 8

*See* Villazor Dec. Ex. 5, 6. They have also subpoenaed Plaintiff's high school, seeking essentially every record in existence about her entire school life. *See* Ex. 7. It is not difficult to discern the strategy behind the Passes Defendants' conduct here.

604501139                                          31

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

requests "[a]ll sexually explicit or sexually suggestive content, including without limitation all pornographic materials YOU have shared, attempted to share, or prepared for sharing through all YOUR SOCIAL MEDIA ACCOUNTS . . .". Responding to this Interrogatory would require Plaintiff to trawl through all of her accounts to produce an enormous amount of content she has made throughout her career as an adult creator. The contention that her posting of explicit content as an adult undermines her claims of emotional distress cannot justify searching through and the production of such a broad category of content.

Further, Request for Production 11 requests "all YOUR non-privileged COMMUNICATIONS with any other PERSON . . . regarding sexually explicit or sexually suggestive content, including without limitation all pornographic materials transmitted or sold on YOUR SOCIAL MEDIA ACCOUNTS."[6] This request would require her to produce not only substantial amounts of content she has made throughout her career, but also all communications she has had related to that content. This broad request will necessarily entail the review and production of an enormous volume of documents that will impose a significant burden on Plaintiff without any corresponding benefit.

C.   **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Passes Defendants' motion to compel be denied in its entirety.

---

[6] This Request for Production also entirely subsumes the Passes' Defendants Requests for Production 7 and 9, which request "all YOUR COMMUNICATIONS" with certain individuals regarding "sexually explicit or sexually suggestive content, including without limitation all pornographic materials transmitted or sold on YOUR SOCIAL MEDIA ACCOUNTS other than PASSES."

604501139

32

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL

DATED:  June 8, 2026          KENDALL BRILL & KELLY LLP

By:    /s/ Nary Kim
       Nary Kim
       Attorneys for Defendants Passes, Inc. and
       Lucy Guo

DATED: June 8, 2026          THE FREEDMAN FIRM PC

By: /s/ Michael G. Freedman

Michael G. Freedman
michael@thefreedmanfirm.com
(Cal. Bar No. 281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
(310) 285-2210

CLARK SMITH VILLAZOR LLP
Rodney Villazor, Esq.
rodney.villazor@csvllp.com
(Cal. Bar. No. 310212)
Christopher J. Clark, Esq.
clark@csvllp.com
(admitted *pro hac vice*)
Brian T. Burns, Esq.
brian.burns@csvllp.com
(admitted *pro hac vice*)
666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850
*Attorneys for Plaintiff*

By:    /s/ *Rodney Villazor*
       Rodney Villazor

*Pursuant to L.R.5-4.3,4, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By:    /s/ Nary Kim

JOINT STIPULATION REGARDING PASSES' MOTION TO COMPEL