# EXHIBIT B

**CLARK SMITH VILLAZOR LLP**
Rodney Villazor (Bar #310212)
666 Third Avenue, 21st Floor
New York, New York 10017
Tel: (212) 377-0850
Email: rodney.villazor@csvllp.com
*Attorneys for Plaintiff ALICE ROSENBLUM*

**THE FREEDMAN FIRM PC**
Michael G. Freedman (Bar # 281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICE ROSENBLUM,<br><br>                    Plaintiff,<br><br>        v.<br><br>PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual, ALEC CELESTIN, an individual, and LANI GINOZA, an individual,<br><br>                    Defendants. | Case No.: 2:25-cv-08457-JLS-PD<br><br>**SECOND AMENDED COMPLAINT**<br><br>**ACTION BASED ON CIVIL CODE § 1708.85** |

Plaintiff Alice Rosenblum, an individual ("Plaintiff"), by and through undersigned counsel, brings this action against the above-named Defendants. Plaintiff is a sex crime victim. She has had images and videos of her engaged in sexually explicit conduct made when she was under the age of 18, content knowingly produced, possessed, sold and distributed by Defendants Passes, Inc., a Delaware corporation ("Passes"), Nofhotos Group LLC, a California limited liability company ("Nofhotos"), WLM Management LLC, a California limited liability company ("WLM"), Lucy

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

Guo, an individual ("Guo"), Alec Celestin, an individual ("Celestin"),[1] and Lani Ginoza, an individual ("Ginoza") (collectively, Passes, Nofhotos, WLM, Guo, Celestin and Ginoza are the "Defendants"), and for her Complaint alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against the Defendants, who financially benefited from, or otherwise participated in, the production, possession, sale, and distribution of child pornography; that is, images and videos of Plaintiff, who was under 18 years old until September 21, 2024, engaged in sexually explicit conduct.

2.     Each of the Defendants knew or recklessly disregarded the fact that Plaintiff was a minor and knew that they produced, possessed, sold, and distributed images and videos of Plaintiff engaged in sexually explicit conduct at all times relevant.  Each of the Defendants substantially contributed to or commissioned this production, possession, sale, and distribution.

3.     Starting in or around July 2024, the Defendants conspired to recruit and groom Plaintiff, a then 17-year-old female minor, so that the Defendants could knowingly produce, market, sell, and distribute child pornography; namely, visual depictions of the lascivious exhibition of her anus, genitals, or pubic area as defined under 18 U.S.C. §§ 2252, 2252A and 2256.

4.     Between July 2024 and September 2024, Guo personally intervened to override Passes' strict internal safety controls tailored for creators of social media content aged between 15 and 17 years old to strip and deprive Plaintiff of any protections offered by Passes against the exploitation of her, a then minor, as actions substantially contributing to further the conspiracy.

5.     Between July 2024 and September 2024, Celestin and Ginoza, acting as agents for and with the full knowledge of, and authority from, Passes and Guo, directed and induced Plaintiff, a then-17-year-old minor, to create images and videos of herself engaged in sexually explicit conduct and to upload them to the Passes data storage system known as "the Vault" (the "Passes Vault").

---

[1] On or about April 15, 2025, Alec Celestin filed for bankruptcy in the United States Bankruptcy Court for the Central District of California (In Celestin, 8:25-bk-10841-SC (Bankr. C.D. Cal.)). Claims against the debtor Celestin are stayed and not asserted at this time in accordance with 11 U.S.C. § 362(a).

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants substantially contributed to or commissioned the creation and uploading of these images and videos.

6.    Between July 2024 and September 2024, Passes and Guo (collectively, the "Passes Defendants"), knew that Plaintiff, a then minor, acting at the direction of Passes' and Guo's agents, Celestin and Ginoza, uploaded images and videos of herself engaged in sexually explicit conduct to the Passes Vault, but neither Passes nor Guo took any remedial action whatsoever.

7.    Between July 2024 and September 2024, Celestin and Ginoza, acting as agents for and with the full knowledge of, and authority from, Passes and Guo, conspired to market, sell and distribute images and videos of Plaintiff engaged in sexually explicit conduct through the Passes internet messaging system to Passes customers, including those known as "big spenders" and "whales," in exchange for money.

8.    Passes and Guo knew that their agents Celestin and Ginoza marketed, sold and distributed images and videos of Plaintiff engaged in sexually explicit conduct, but neither Passes nor Guo took any remedial action whatsoever.

9.    This pattern repeated itself with other minor Creators on the Passes platform.

10.    Passes presently possesses images and videos of then-minor Plaintiff and other then-minor Creators engaged in sexually explicit conduct in the Passes Vault.

11.    Passes presently possesses records and evidence of the advertisement and distribution of child pornography of Plaintiff and other then-minor Creators in its direct messaging archives.

12.    Plaintiff seeks damages in an amount to be determined at trial, injunctive relief and declaratory judgments to remedy the Defendants' misconduct.

## PARTIES

13.    Plaintiff Alice Rosenblum is an individual who is now at the age of majority under Florida law and presently resides in Miami-Dade County, Florida.  She was a 17-year-old Creator[2] for Passes at all times relevant and is a victim of child pornography.

---

[2] *See* ¶ 24 *infra* (defining "Creator").

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

14.	Defendant Passes Inc. is a Delaware corporation. According to an affidavit of Lucy Guo filed in this action (ECF No. 12-1), Passes has its principal place of business in Los Angeles, California. Passes' most recent filings with the California and Florida Secretaries of State identify its principal place of business at 1 South East 3rd Avenue, Suite 1440, Miami, Florida 33131. Passes is a paywall platform designed to sell exclusive content, livestreams, one-on-one chats and personalized experiences with creators of content, including minors between the ages of 15 to 17 at all times relevant, to Passes customers and subscribers.

15.	Defendant Nofhotos Group LLC is a California limited liability company with a principal place of business at 11911 Martha Ann Drive, Los Alamitos, California, 90720. Nofhotos was created by Defendant Celestin and acted as an agent of Passes and Guo to recruit and direct creators on Passes to create content, including child pornography. Nofhotos, as an agent of Passes and Guo, marketed and distributed the child pornography through the Passes direct messaging system and platform. At all times relevant, Defendant Celestin owned and controlled Nofhotos.

16.	Defendant WLM Management LLC is a California limited liability company with a principal place of business at 920 N. Kings Road, No. 125, West Hollywood, California 90069. WLM was controlled by Defendant Celestin and, as an agent of Passes and Guo, recruited and directed creators on Passes to create content, including child pornography. WLM, as an agent of Passes and Guo, marketed and distributed the child pornography through the Passes direct messaging system and platform. At all times relevant, Defendant Celestin controlled and exercised decision-making authority on behalf of WLM.

17.	Defendant Lucy Guo is the founder and Chief Executive Officer of Passes. Prior to July 2024, she was a resident of Miami-Dade County, Florida. Since July 2024, she has resided in Los Angeles County, California.

18.	Defendant Alec Celestin is the founder of Nofhotos and is a resident of Los Angeles County, California. He acted as an employee and agent of Passes and Guo at all times relevant.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

19.    Defendant Lani Ginoza was an assistant to Celestin at all times relevant and is a resident of Los Angeles County, California.  She acted as an agent of Passes, Guo and Celestin at all times relevant.  Ginoza had previously been the Passes Director of Talent, responsible for talent relations and account management, and reported directly to Guo.

20.    As alleged herein, WLM, Nofhotos, Celestin and Ginoza each acted within the course and scope of their authority from Passes and Guo at all times relevant and, as such, were each an agent acting with the permission, authorization, consent, and ratification of Passes and Guo.[3]

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal child pornography and sexual exploitation laws, 18 U.S.C. §§ 2252, 2252A and 2255, and supplemental jurisdiction over the related pendent state law claims pursuant to 28 U.S.C. § 1367 because the state claims are related to the claims arising under 28 U.S.C. § 1331.

22.    This Court has personal jurisdiction over Defendants Nofhotos and WLM pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because the Defendants are incorporated in California and have their principal places of business in Los Angeles County, California.  This Court has personal jurisdiction over Defendants Celestin, Guo, and Ginoza pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because each Defendant resides in Los Angeles County, California.  This Court has personal jurisdiction over Defendant Passes pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and California's long-arm statute, Cal. Code Civ. P. § 410.10, because it maintains minimum contacts with California, such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  Passes has extensive business operations in California and, according to Guo's affidavit, Passes' principal place of business is located in Los Angeles County, California.  Passes has employees based in Los Angeles

---

[3] Plaintiff does not sue Defendants as publishers of third-party content. Plaintiff seeks relief for Defendants' own acts, including creation, development, recruitment, direction, production facilitation, receipt, possession, advertising, and distribution of illegal content; and the conduct of agents acting with actual and apparent authority and for Defendants' benefit.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

County, California, and Plaintiff's claims directly arise from Passes' activities in California and within Los Angeles County. Guo herself is a resident of Los Angeles County, California. The Defendants have purposefully availed themselves of this Court's jurisdiction. Each of the Defendants directs substantial business activity into this jurisdiction. There is a substantial nexus between Plaintiff's claims and the Defendants' activities.

23. Venue in this Court is proper pursuant to 28 U.S.C.A. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District. Furthermore, Nofhotos, Passes, and WLM maintain offices in this District, and Guo, Celestin, and Ginoza currently reside in this District. Defendants Passes and Guo, in their motion to dismiss (ECF No. 12), acknowledged that venue in the Central District of California is proper.

<b><u>FACTUAL ALLEGATIONS</u></b>

***A. Guo Starts Passes as a "New" Content Subscription Platform.***

24. "Creators" are social media figures and entrepreneurs who make content for various social media platforms, have many followers across these social media platforms, and who monetize their social media presence through paid publicity by making sponsored posts, entering marketing arrangements, and by offering paid content directly to their followers.

25. Fanfix is a content subscription platform that allows Creators to monetize their social media presence by providing Fanfix customers with exclusive, paid content from the Creators and the ability to directly interact with the Creators on Fanfix. Like Passes, in exchange for hosting Creators' content on the platform, Fanfix takes a percentage of Creators' subscription fees.

26. On or about March 20, 2022, Fanfix hired Celestin as a Fanfix brand director. In this role, Celestin worked to promote and market the Fanfix brand and attract Creators to the platform. During his time at Fanfix, Celestin stated on his LinkedIn page that 3 of his "do's and dont's [sic] for building brands" were: "Less 80 page brand guideline books that serve as red tape on what to not do[.] Less perfection[.] Less seriousness[.] More dope things that evoke human emotion[.] More greatness[.] More fun[.]"

27. On or about April 27, 2022, Guo, a then-resident of Miami-Dade County, Florida, founded Passes, which she modeled after Fanfix. Like Fanfix and other Creator-based platforms,

CASE NO. 2:25-cv-08457-JLS-PD

Passes allows Creators to charge fans for their content, which includes video chats and direct messages. According to a recent article, Passes "[e]mployees help creators record podcasts, design merchandise, and shoot videos." Paula Tudoran, *Lucy Guo, Billionaire Behind Scale AI, Launches Passes For Celebs Like Olivia Dunne And Bella Thorne To Transform Creator Economy*, Benzinga (Sept. 10, 2025), https://www.benzinga.com/news/topics/25/09/47592389/lucy-guo-billionaire-behind-scale-ai-launches-passes-for-celebs-like-olivia-dunne-and-bella-thorne-to-transform-creator-economy. Passes takes an approximately 10% cut of Creator revenue in exchange for hosting the infrastructure and helping creators develop their content.

28. In that regard, on January 9, 2024, Fanfix sued Passes and others in *Fanfixapp LLC v. Passes, Inc., et al.*, 24SMCV00099, in Los Angeles County Superior Court for, *inter alia,* unfair business practices. Specifically, Fanfix has brought claims in response to Guo using Fanfix "trade secrets and confidential information . . . making deceptive and false claims about Fanfix," and deploying "unsustainable, loss-leading minimum guarantees to creators and an artificially low commission rate, coupled with unfair and deceptive marketing practices."

29. To date, Passes has over 1,000 creators and more than 500,000 subscribers on its platform. At the same time, according to public sources, Passes has no more than 50 employees.

30. Guo prides herself on maintaining and exercising tight control over all aspects of Passes' business and operations. In a June 22, 2025, article, Guo reported waking up at 5:30 every morning and working until midnight, stating, "I probably don't have work-life balance." *See* Orianna Rosa Royle, *Scale AI's 30-year-old Billionaire Cofounder Has a Warning for Anyone Who Craves Work-Life Balance: 'Maybe You're Not in the Right Work,'* Fortune (June 22, 2025), https://fortune.com/2025/06/22/scale-ai-millennial-billionaire-lucy-guo-warning-work-life-balance-gen-z-wrong-job-career/. Guo added that she personally replies to Passes' customers, giving her team "just five minutes" to reply before she does so herself. Guo explained, "[w]hile you have less customers, it's very possible for the CEO to answer ***everything***, which makes people more loyal." *Id.* (emphasis added).

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

31. At all relevant times, under Guo's direction, Passes, unlike most other content subscription platforms, allowed creators between the ages of 15 and 17 to join as Creators subject to stringent internal safeguards and controls for the protection of minors.

32. In or around July 2023, Passes raised $9,000,000 in seed money with investments from Multicoin Capital, Florida Funders, Anti Fund (founded by Jake Paul and Geoffrey Woo), Craft Ventures, Menlo Ventures, and 11:11 Media (founded by Paris Hilton and Bruce Gersh).

33. Upon information and belief, prior to these seed investments, Guo made presentations to potential investors, including these seed investors regarding the business plan, and metrics, as well the stringent internal safeguards Passes tailored for the protection of Creators between the ages of 15 and 17.

34. In or around February of 2024, Passes raised an additional $40,000,000 in Series A funding from investments from Bond Capital, Abstract Ventures, Crossbeam Ventures and other angel investors.

35. Upon information and belief, prior to the aforementioned Series A investments Guo made presentations to these Series A investors and other potential Series A investors regarding the business plan, and metrics, as well the stringent internal safeguards Passes tailored for the protection of Creators between the ages of 15 and 17.

36. Passes' investors—including but not limited to the investors identified in Paragraphs 32 and 34—have been on notice of the substance and scope of Defendants' misconduct as alleged herein since at least February 26, 2025 when this action was first publicly filed in the United States District Court for the Southern District of Florida as *Rosenblum v. Passes, Inc. et al*, Case No. 1:25-cv-20899-JEM.

37. The investors identified in Paragraphs 32 and 34 were placed on direct and actual notice of Defendants' misconduct no later than March 2025, when Plaintiff's counsel provided correspondence to each investor, which set forth in detail the factual and legal basis for Plaintiff's claims, and included a copy of the Complaint as then-filed.

38. Guo personally oversaw the creation, implementation, and public promotion of what Passes called the "strongest internal safeguards" for minor Creators.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

**B.  Guo Adds the Exclusive Opportunity for Minors to Join Passes as Creators.**

39.    At all times relevant, Passes expressly marketed to and allowed for Creators between 15 to 17 years old to join its platform, which Passes claims "has more security measures in place to protect minors than any other social media platform where kids can have accounts."

40.    Other platforms, like OnlyFans[4] and Fanfix, do not and have never permitted individuals under 18 years old to register as either a user or a creator.

41.    Though Guo now advertises Passes as the leading non-explicit alternative to OnlyFans, that is, a subscription-based Creator-driven content platform "minus the nudity," Guo initially conceived of Passes as another platform that would very much host adult content, which would be especially lucrative.

42.    Indeed, Passes falsely claimed and continues to falsely maintain that no nudity or sexual content is allowed on its platform.

43.    Guo has a background in artificial intelligence ("AI") as a former co-founder of an AI company.

44.    Guo has leveraged her AI experience to develop one of Passes' key differentiators from other content platforms.  Specifically, Passes has a machine learning algorithm that it claims reviews all content uploaded to the Passes platform to improve safety, particularly for minors who are permitted to join Passes as Creators.

45.    The Passes machine learning algorithm is capable of identifying images and videos of adults or minors engaged in sexually explicit conduct.

46.    In order for a Creator between 15 and 17 years old to join Passes, Passes requires "Verifiable Parent Consent" from a parent in the form of: (a) a signed consent form; (b) a video conference with a parent to verify; (c) a copy of the parent's identification or license; or (d) a successful knowledge-based challenge test for parents.

---

[4] OnlyFans is another subscription-based content platform that is notorious for facilitating OnlyFans creators to create, post and sell nude and sexually explicit content of adults to OnlyFans subscribers.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

47.     Passes also implements internal security measures to protect such minor Creators, including:

   a.  The restriction against a minor Creator's receipt of direct messages on the Passes internet messaging platform from fans.

   b.  Parental verification of the Creator's age and parental consent for posting.

   c.  The use of multiple machine learning classifiers to review uploaded content before it can be posted.

   d.  The automatic deactivation of a minor's Creator account and parental notification if a minor Creator uploads content including nudity.

   e.  The scanning of all captions and texts sent by minor Creators for banned words.

48.     Passes sets forth policies in its Community and Content Guidelines ("Guidelines") for minors as well.  The Guidelines, in relevant part, state:

   a.  "Do not use Passes in any way that may in effect or in intent [sic.] exploit or harm any person under 18 years old."

   b.  Passes does "not allow explicit adult content, nudity, or pornography."

   c.  Passes is "committed to protecting minors on Passes" and does "not tolerate acts that abuse, endanger, or exploit [] any person under the age of 18 (a 'minor').  Any content, including animation or digitally created or manipulated media (including 'deepfakes'), that depicts abuse, exploitation, or nudity of minors is a violation on our platform and will be removed when detected."

   d.  Passes proscribes "grooming;" that is, when "an adult builds an emotional relationship with a minor in order to gain the minor's trust for purposes of future or ongoing sexual contact, sexual abuse, trafficking, or other exploitation."

   e.  Passes disallows content of "nudity or sexual activity" involving minors "that is revealing of [the minor's] breasts, genitals, anus, or buttocks, or behaviors that mimic, imply or display sex acts involving minors."

49.     In reliance on the deployment of these measures, along with Guo's AI technology and algorithm, Passes guarantees that any identified image or video of a minor engaged in sexually

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

explicit conduct, including nudity, will be immediately removed and reported via a "CyberTipline" report to the National Center for Missing & Exploited Children and/or other relevant legal authorities.

50.     Federal law prohibits the production, advertisement, distribution, receipt, sale, access with intent to view and possession of child sexual abuse material (CSAM).

51.     Passes represents that they "immediately investigate any user who tries to share suspected CSAM on Passes" and "take[s] appropriate action."

52.     Passes represents that they "ban anyone who tries to create or distribute CSAM on Passes."

53.     Upon information and belief, the option for minors between the ages of 15 and 17 to join Passes as Creators and Passes' stringent internal safeguards for minors were disclosed to potential investors in the seed investment round and in the Series A investment round.

54.     As alleged in detail below, Guo, at her sole discretion, can and has overridden these stringent internal safety measures for minors on Passes, thereby stripping any meaningful advertised protection or safety for minor Creators on Passes, such as she did with Plaintiff.

55.     The Passes Defendants had been aware that CSAM was uploaded and distributed on their platform but failed to take action until or about February 24, 2025.

56.     On or about February 24, 2025, immediately after Plaintiff's counsel contacted the Passes Defendants' attorneys regarding the instant action, the Passes Defendants abruptly removed the option for minors between 15 and 17 years old to join as Creators.

57.     Additionally, the aforementioned stringent internal safeguards for minor Creators have since vanished from the Passes Terms and Conditions and Guidelines.

**C. Guo Recruits Celestin as an Agent for Passes and Guo.**

58.     In order to successfully build a Creator- and user- base to join Passes at its early stages and with an unproven track record, Guo hired employees specifically for the purpose of recruiting desperate Creators in large numbers.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

59.    Guo saw minor Creators as a unique and potentially lucrative opportunity for Passes because, as she was aware, minors were unable to join similar, comparable platforms.  Passes could fill that niche.

60.    In or around late 2022 or early 2023, Guo personally recruited Alec Celestin, a self-styled "tech and entertainment disrupter," to join Passes as head of Creator acquisition and strategy while he was still a Brand Director at Fanfix.  Guo made an aggressive compensation offer to Celestin that included substantial cash and equity components. Guo was incentivized to target Celestin because of his position at Fanfix, and access to the Creators she coveted.

61.    In late 2022 to early 2023, Celestin and Guo reached an agreement where Celestin would divert creators from Fanfix to Passes, and Celestin formulated the wrongful scheme for doing so with Passes' direct involvement and encouragement.  Passes and Guo commissioned Celestin to "beg[i]n overtly competing against Fanfix by soliciting Fanfix creators and/or their managers, as well as Fanfix employees and vendors."  He "misappropriated confidential information and trade secrets, then weaponized that information to divert Fanfix creators to Passes.  Fanfix has alleged that "this activity occurred with Passes' full knowledge, involvement, and approval."

62.    Guo specifically hired and commissioned Celestin to lead Creator acquisition and strategy for Passes, authorizing him to act as her direct agent and representative in dealings with Creators.  Celestin, as the Passes Defendants' agent, was given wide discretion to negotiate minimum guarantees, manage Creator relationships, and recruit both adult and minor talent to Passes' platform.  His title, compensation, and access reflected a position of trust and authority within Passes, and he routinely presented himself to Creators as Guo's partner and co-owner.  As an employee of Passes, both Passes and Guo, as Passes' CEO, had full control over the acts that Celestin took on behalf of Passes in furtherance of his role.  Neither Passes nor Guo ever revoked Celestin's authority at any time during the relevant time period.

63.    As detailed below and consistent with her prior knowledge of his conduct, Guo made her goals for Passes and his responsibilities in furtherance of related efforts clear to Celestin and commissioned him to act to attain those goals.  Guo instructed Celestin to act as an agent on behalf of her and Passes to help the Passes Defendants (a) develop an initial customer base by luring

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

Creators away from Fanfix and then (b) grow that base by offering access to minors between the ages of 15 to 17, which other platforms did not.

64.    In line with the direction given and authority assigned to him by the Passes Defendants, while recruiting Creators to Passes, Celestin was explicit that he was operating as an agent of the Passes Defendants.  Celestin subsequently emphasized his close relationship to Guo in recruiting efforts, including telling Creators that Guo "personally asked" him to promise that Passes would offer Creators much higher profits than other platforms.

65.    Separately, Guo instructed Celestin to promote Passes to potential minor Creators by emphasizing (a) Passes' artificially low commission rates, which gave the impression to Creators such as Plaintiff that their profits from selling content on Passes would be extremely high; (b) that Celestin and Passes "higher-ups" such as Guo would personally help Creators create and upload content to get their profiles off the ground; and (c) that no other platform permitted minors aged 15 to 17 to create and upload content, thereby promoting the exclusivity of Passes' offer.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

66.    On August 14, 2023, after being hired by Guo, Celestin posted on a social media account a picture of him and Guo in front of a Passes billboard claiming "nofhotos group [handshake emoji] passes [/] World Domination [devil emoji]".  The picture demonstrated to the public that Guo had granted Celestin authority to act as her agent in Passes-related matters in his



external dealings.

67.    Celestin operated under Guo's express supervision and direction, reporting directly to her as Passes' Chief Executive Officer.  He had access to proprietary recruitment data, Creator revenue metrics, and Passes' internal safety systems.  Guo and Celestin coordinated recruitment strategies through daily communications, and Guo frequently endorsed Celestin's actions publicly and privately, including by reposting or commenting on his social media posts promoting Passes. In numerous communications with Creators and managers, Celestin explicitly identified himself as Guo's "business partner" and "the person running the creator side" of Passes.  Passes management

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

never contradicted those representations, reinforcing to Creators—including Plaintiff—that Celestin spoke on behalf of the company.

68. Celestin, as the Passes Defendants' actual and apparent agent, was hard at work for Passes in and around the time he first contacted Plaintiff on Passes' behalf.  For example, according to Fanfix, on July 20, 2023, while still employed by Fanfix, Celestin contacted an individual who manages numerous Fanfix creators.  During a call, Celestin disparaged Fanfix and attempted to convince the talent manager to move the talent he managed to Passes.  Celestin told a Fanfix employee he was pursuing Fanfix employees for Passes and that he had been texting a number of Creators about joining Passes.

69. On August 19, 2023, two managers contacted a Fanfix executive and told him that Celestin reached out to them by phone and told them that Passes will pay them to switch their clients from Fanfix to Passes.

70. On December 12, 2023, according to Fanfix, Celestin, on behalf of Passes, messaged one Creator and informed her that Guo "personally asked [Celestin] to reach out to [her] and offer [the Creator] a 200% minimum guarantee" based on what she currently made on Fanfix.  Celestin then added, "Meaning if you're making $100,000 per month[,] we'll instantly minimally guarantee you $200,000 with us."

71. Celestin heavily promoted his work with Guo and for Passes.  His social media was rife with content promoting Passes and Guo, and he posted content featuring Guo plainly intended by both to promote Passes to Creators and to demonstrate the authority Celestin had been granted to act on Passes' behalf.

72. In an interview posted to his Instagram account in October 2023, in which Passes was tagged, Celestin commented "I'm a photographer, videographer, general 3D artist, I'm a producer, and now I am a partner in Passes which is absolutely incredible brand friendly content platform."

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT



73.    On February 28, 2024, after Passes announced the $40,000,000 Series A fundraising, Celestin posted a picture of him and Guo stating: "$40,000,000 in the bank!! @joinpasses just got a lot more young hot rich & famous. Congrats @joinpasses team & @guoforit []".

74.    Guo's Instagram account is @guoforit, and Celestin tagged her account in his February 28, 2024 post.  Guo did not dispute the representations of Celestin's post.

75.    These public promotions coincided with Celestin's increasingly central role inside Passes—a role Guo preserved despite her knowledge of his misconduct—further demonstrating the apparent authority Celestin had been granted by Guo to act on Passes' behalf.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

76.     On January 5, 2025, Celestin posted "I fully [sic.] legally compliantly [sic.] sliced and diced the main competition to Passes which at the time was much larger than Passes. Built that private unicorn. Faced with lawsuits and them trying to ruin my life." In another post, Celestin boasted: "I've helped build a unicorn (private) @passes with @lucy_guo."



77.     An article published in January 2025 by the New York based news organization states that Celestin told them "that he maintains a stake in the company [Passes]." Rosalind Adams, *A Times Square Billboard Seeks Aid for LA Fire Victims. Is It for Real?*, The City (Jan. 16, 2025), (https://www.thecity.nyc/2025/01/16/la-fire-aid-fundraiser-lineo-celestin/).

78.     Each of these posts and Celestin's other public statements demonstrated the ease with which Celestin was willing to publicly project the actual and apparent authority he had been granted by Guo to act on Passes' behalf.

### D. Celestin Recruits and Grooms 17-Year-Old Plaintiff.

79.     Starting around May 2024, Celestin—then acting as an actual and apparent agent of Passes and Guo and having been told by Guo that he should specifically target minor Creators to join Passes—began to recruit and groom then-17-year-old Plaintiff (1) to join Passes as a minor Creator and (2) to create images and videos of Plaintiff engaged in sexually explicit conduct.

80.     On or about June 4, 2024, at Guo's direction and on her authority, Celestin wrote to Plaintiff that she needed to sign up on Passes because she would "most likely make 5-10x more than

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

WideApp."[5]  Plaintiff replied, "I am once I'm 18!!"  Plaintiff was not set to turn 18 years old until September 21, 2024.

81.    On or about August 10, 2024, Celestin, acting on Passes' behalf, wrote to Plaintiff "[] are you still thinking Passes once you're 18?!  I know it's coming up soon so just wanted to reach out to check in.  Also, noticed you're in LA! If you need a mansion to shoot at you're welcome to use mine."

82.    That same day, Celestin met 17-year-old Plaintiff at his residence in Los Angeles, California, to groom her to create images and videos of her engaged in sexually explicit conduct and to recruit her to join Passes as a minor Creator whose platform would include the marketing and distribution of these images and videos.

83.    His pitch to Plaintiff was that she only needed to create pictures and videos of herself at Celestin and his team's direction and upload them to Passes on a regular basis.  Celestin and his team, with access to her Passes profile, would do the rest.  They would directly market and sell her content to Passes customers for payment of which Plaintiff would receive her profit.  As detailed below, Celestin recruited Plaintiff with the purpose of facilitating the distribution of CSAM involving Plaintiff through Passes.

84.    Celestin took photographs of 17-year-old Plaintiff at his residence during her visit on August 10, 2024.  Those images were uploaded to the Passes Vault and later published on Passes after Plaintiff's 18th birthday on September 21, 2024, with salacious verbiage in connection with Plaintiff's "18th birthday campaign" explained below.

85.    Celestin also had Plaintiff electronically sign a management contract with WLM on August 10, 2024.  He did not provide her with an opportunity to review it or give her a copy.

86.    Plaintiff and Celestin entered into a second management contract between her and WLM two days later on August 12, 2024, and later into a third management contract replacing WLM

---

[5] WideApp, or Wide, is another content subscription platform popular with Creators.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

with Nofhotos on December 24, 2024.  Both of these contracts are governed by the laws of the state of California.

87.    The contract, dated December 24, 2024, imposed usurious management fees on Plaintiff.

88.    Neither the contract dated August 10, 2024, nor the contract dated August 12, 2024, were signed by Plaintiff with the consent or approval of Plaintiff's parents or guardians.

89.    Under California law, minors lack the capacity to contract. Cal. Civ. Code § 1556. Additionally, contracts with minors are generally voidable unless "[t]he contract is to pay the reasonable value of things necessary for the support of the minor or the minor's family," or if the Plaintiff is emancipated.  California Family Code § 6712(a), (c).  None of these contracts were for "things necessary for the support of [Plaintiff] or [Plaintiff's] family," and Plaintiff has never been emancipated.

90.    Guo had specific notice of Celestin's past misconduct before and during his employment with Passes.  The Fanfix lawsuit—filed in January 2024 and months before Celestin first contacted Plaintiff—publicly alleged that Celestin, while still employed by Fanfix, solicited its Creators and staff, misappropriated confidential data, and shared it with Guo to divert business to Passes.  Those allegations were known to Guo when she commissioned and empowered Celestin to recruit and manage Creators for Passes.  Guo nonetheless maintained Celestin in a position of trust, granting him ongoing access to Passes' recruiting systems and minor-safety settings, including the ability to request overrides of verification protocols.  Guo's retention and supervision of Celestin in light of these facts reflect deliberate indifference to the foreseeable risk that he would again exploit Creators—including minors—for personal and corporate gain.

**E.  *Guo Directly Overrides Passes' Stringent Safety Controls for Minor Creators.***

91.    On or about August 10, 2024, Celestin started to help Plaintiff create a Creator profile for minors on Passes.  His initial onboarding efforts included taking a photo of Plaintiff's driver's license, which showed her date of birth, and taking some profile pictures.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

92. On or about August 10, 2024, the Passes "Know Your Customer" ("KYC") onboarding process collected and stored Plaintiff's driver's license, which included her date of birth, confirming Plaintiff was a minor at the time of initial account setup.

93. Each of Passes' stringent internal safeguards for Creators between the ages of 15 and 17 were active and purportedly enforced by Passes at that time.

94. Celestin knew that he normally would have to comply with Passes' safety controls for minor Creators because (1) Plaintiff had told him repeatedly that she was, in fact, 17 years old and (2) he submitted a copy of her driver's license showing her actual birthday to Passes.

95. Celestin, however, wanted to circumvent Passes' stringent internal safety measures for minors so he could exploit Plaintiff. He knew he could only do so with Guo's direct intervention. Indeed, Celestin assured Plaintiff that he could bypass the safety measures for minors because he "co-owned" Passes and would obtain the express approval of his "business partner Lucy."

96. On or about August 10, 2024, while Plaintiff was still at Celestin's house, he called "his business partner Lucy" (Guo) to receive Guo's input on how to set up Plaintiff's account on Passes. Celestin informed Guo that Plaintiff needed the parental consent requirement waived so that she could upload adult content.

97. Celestin and Guo wanted to remove the parental verification requirement because they did not want Plaintiff's parents (or any other adult) to know of their plans to create, sell and distribute images and videos of Plaintiff engaged in sexually explicit conduct.

98. During the relevant period, enforcement of minor-safety and CSAM-remediation protocols was under Guo's direction as CEO of Passes. Guo, knowing that Plaintiff was a minor and of Celestin's plans to lead Plaintiff to create CSAM, substantially contributed to the conspiracy by directly orchestrating the removal of the Passes verification of parental consent requirement.

99. Celestin then advised Plaintiff that "Lucy" had eliminated Passes' requirement for confirmation of parental consent for Plaintiff to become a minor Creator on Passes. This reflects that on or about August 10, 2024, while Plaintiff's KYC confirmed she was 17, Guo personally overrode or directed the overriding of Passes' parental consent requirement and enabled direct

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

messaging for Plaintiff's account.  Guo removed those protections with full knowledge that doing so would result in the distribution of CSAM involving Plaintiff.

100.    Guo's substantial contribution of the overriding of these safety controls was recorded in Passes' systems, which reflect the date, time, authorized user identity, and settings toggled of activity related to Plaintiff's Passes account.

101.    On or about August 13, 2024, three days later, Celestin completed creating Plaintiff's minor Creator account at Passes with the parental verification disabled.

102.    Celestin called Plaintiff and instructed her to announce her joining Passes as a Creator on her various social media platforms.

103.    Plaintiff, however, expressed to Celestin that she was having difficulty understanding how to operate certain functions on Passes.  Celestin wrote that he "just messaged Passes CEO." Celestin then added Guo to the phone call to provide Plaintiff with specific guidance and instruction.

104.    Guo instructed Plaintiff on how and where to upload content onto the Passes Vault system, among other things.  Guo told Plaintiff that "you can upload anything."

105.    Plaintiff also communicated with Ginoza, Celestin's assistant, to complete the Passes onboarding procedure.  Ginoza, a former Passes director of talent who had previously reported directly to Guo, acted as an agent for Passes and Guo at all times relevant.

106.    On that day, Celestin and Ginoza, who were aware of Plaintiff's age, also requested Guo to override the direct messaging ban for Plaintiff's minor Creator profile so that Celestin, Ginoza and others could utilize Passes direct messaging function on her behalf in direct violation of the Passes strict internal restriction against allowing minor Creators to utilize the direct messaging function.

107.    Ginoza rationalized that she was "gonna try to get a clearance [for direct messaging] due to you being 18 in a month."

108.    Celestin and Ginoza wanted to enable the direct messaging function on Plaintiff's Passes profile so they and others could later pose as Plaintiff to exchange sexually overt messages with Passes subscribers, advertise and sell images and videos of Plaintiff engaged in sexually explicit conduct and distribute those images and videos over Passes' direct messaging system.

CASE NO. 2:25-cv-08457-JLS-PD

---

PLAINTIFF'S SECOND AMENDED COMPLAINT

109.    Guo, knowing that Plaintiff was a minor and of Celestin's plans, substantially contributed to the conspiracy by orchestrating the removal of the Passes strict internal rule against allowing Plaintiff's minor Creator profile on Passes to utilize the direct messaging system.

110.    On that same day, Plaintiff, acting at Celestin's direction, announced on her various social media platforms that she had joined Passes as a Creator.

### F.  Celestin and Ginoza Direct Plaintiff to Produce Sexually Explicit Photos.

111.    Celestin exercised de facto operational control over Creator recruitment and monetization for Passes.  He supervised multiple employees and contractors, including Ginoza, and coordinated all marketing and sales strategies for high-value creators.  His communications show that he managed Creator onboarding, pricing, and content packaging, often invoking Guo's approval or participation to legitimize his directives.  By authorizing Celestin to set compensation, override internal restrictions, and represent Passes in Creator negotiations, Guo effectively delegated material corporate authority to him.  Celestin's exercise of that authority to solicit and exploit Plaintiff was undertaken within the course and scope of his agency and employment with Passes.

112.    After her social media announcement, Celestin and Ginoza, acting as agents of Passes and Guo, and in line with responsibilities provided to them by Guo, promptly directed the then-17-year-old Plaintiff to create new images and videos of her engaged in sexually explicit conduct.  Celestin and Ginoza each gave Plaintiff precise instructions on how to pose and model to create images and videos of her engaged in sexually explicit conduct.

113.    Between August 13, 2024, and September 21, 2024, following Celestin and Ginoza's direction, Plaintiff took photos and videos of herself engaged in sexually explicit conduct and uploaded those images and videos of herself to a Passes Vault database assigned to her profile.

114.    The directions from Celestin and Ginoza to Plaintiff were express and carefully designed to create images and videos of her engaged in sexually explicit conduct to entice "whales" and big spenders to purchase such CSAM through the Passes platform.

115.    Among their various instructions, Celestin and Ginoza instructed 17-year-old Plaintiff to lasciviously exhibit her anus, vagina, and pubic area to a camera in order to produce images and videos of child pornography.

CASE NO. 2:25-cv-08457-JLS-PD

116.     For example, Celestin and Ginoza instructed Plaintiff to (1) position herself on a bed on her hands and knees to produce an image of her "arching in bed doggy;" (2) to spread her legs to show parts of her vagina to produce an image "Bra + thong legs spread;" and (3) to move her bikini bottom to expose her vagina to create a video "FLOOR (Rubbing lotion)."

117.     Each of these visual depictions created and commissioned at Celestin and Ginoza's specific directions and under the agency and authority of the Passes Defendants constitute child pornography.

118.     Celestin and Ginoza's specific directions to Plaintiff made under the agency and authority of the Passes Defendants constitute acts by the Defendants in knowing furtherance of their conspiracy to produce child pornography.

119.     Passes' proprietary machine learning classifiers reviewed each and every uploaded image and video of Plaintiff engaged in sexually explicit conduct and identified the images and videos as child pornography.  The Passes Defendants knew that Plaintiff's CSAM was stored in the Passes Vault, but neither Passes nor Guo took any remedial action whatsoever in response to this identification.

120.     Between August 13, 2024, and September 21, 2024, Passes' agents through the Passes direct messaging platform marketed, sold, and distributed images and videos of Plaintiff, a minor, engaged in sexually explicit conduct through the use of computers and the internet.

121.     The marketing, sale, and distribution of the visual depictions of Plaintiff engaged in sexually explicit conduct constitute the Defendants' knowing transportation of child pornography over interstate commerce.

122.     Passes' proprietary machine learning classifiers reviewed each and every marketing and advertisement of Plaintiff's images and videos engaged in sexually explicit conduct and recognized the banned words and advertisements as marketing and advertisements for child pornography.  The Passes Defendants knew that Plaintiff's CSAM was being advertised and sold over the Passes direct messaging platform but neither Passes nor Guo took any remedial action whatsoever in spite of these clear red flags.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

123.   Despite Passes' internal policy documents and public Guidelines referencing automated detection via machine learning, human review, and mandatory reporting, Passes did not contemporaneously generate or act on incident reports, parental notifications, or National Center for Missing and Exploited Children ("NCMEC") submissions correlating to the alerts and moderator notes associated with Plaintiff's account.

124.   Passes presently possesses records and evidence of the advertisement and distribution of the images and videos of Plaintiff, as a 17-year-old minor, engaged in sexually explicit conduct, in its direct messaging system or in its archived files.

125.   Between August 13, 2024, and September 21, 2024, Passes and Guo:

a.   never automatically deactivated Plaintiff's account;

b.   did not manually deactivate the account;

c.   never sent any parental notification to Plaintiff's parents;

d.   permitted direct messaging from Plaintiff's minor Creator account; and

e.   never notified the NCMEC or any legal authorities of the images or videos of Plaintiff engaged in sexually explicit conduct.

All this was in direct violation of Passes' stringent internal safety guidelines to protect minor Creators and despite knowledge by Passes and Guo from the multiple machine learning classifiers of Plaintiff's exploitation.

126.   Rather, despite multiple automated hits on age and nudity/sexual-content classifiers and human moderator notes reflecting sexually explicit posing and exposure, Passes—under Guo's oversight—did not suspend the account, did not lock direct messaging, did not notify parents, did not quarantine or purge the Vault, and did not report to the NCMEC or authorities until months later, after undersigned counsel's intervention.

### G. Passes Markets and Distributes Images and Videos of Plaintiff Engaged in Sexually Explicit Conduct to Passes Subscribers.

127.   Celestin, Ginoza and other unidentified individuals aggressively marketed the images and videos of Plaintiff engaged in sexually explicit conduct with sexually charged advertising labels.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

128.    For example, between August 13, 2024, and September 11, 2024, in line with their responsibilities for Passes and consistent with Guo's direction, Celestin, Ginoza and others marketed these images or videos that they had expressly directed Plaintiff to make on Passes to subscribers as follows:

a.  August 13, 2024: three pictures of Plaintiff "**g-string booty pics**" marketed for $100.

b.  August 16, 2024: four pictures of Plaintiff "**Topless, g-string, +robe**" marketed for $200.

c.  August 16, 2024: a video of Plaintiff "**Pulling down bra tease +g-string show**" marketed for $100.

d.  August 16, 2024: a video of Plaintiff "**strip tesse [sic] +g-string booty**" marketed for $250.

e.  August 16, 2024: 3 pictures of Plaintiff "**arching in bed doggy**" marketed for $300.

f.  August 16, 2024: two pictures of Plaintiff "**Bra + thong legs spread**" marketed for $75.

g.  August 16, 2024: a picture of Plaintiff "**underboob + thong**" marketed for $69.

h.  August 18, 2024: 3 videos of Plaintiff "**booty jiggle/underboob vid**" marketed for $150.

i.  August 20, 2024: a video of Plaintiff "**Undressing**" marketed for $150.

j.  September 2, 2024: three pictures of Plaintiff "**leggings recoil + strip to thong**" marketed for $150.

k.  September 5, 2024: five pictures of Plaintiff "**black lingerie twerk**" marketed for $250.

l.  September 11, 2024: a video of Plaintiff "**FLOOR (Rubbing lotion)**" marketed for $800.

m. September 16, 2024: five pictures of Plaintiff "**red thong in mirror**" marketed for $75.

129.    On August 28, 2024, Plaintiff learned that an image of her vagina and her name uploaded to the Passes Vault and sold and distributed to various Passes subscribers had been reposted on a platform called Thot BB in a post titled "Snapchat – NudeLeaksTeens – Alice Rosenblum."

130.    That day, Plaintiff expressed extreme distress to Ginoza about the reposted photo, and Ginoza replied "We'll try to get it down ASAP!! Thanks for flagging."

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

131.    On that same day, Plaintiff was summoned to the principal's office at her high school concerning claims of child pornography.  The aggressive marketing and widespread distribution of the images and videos of Plaintiff engaged in sexually explicit conduct had become so prevalent that they even reached her high school community.

132.    An emotionally devastated Plaintiff begged Celestin for help: "I'm not 18 yet so I don't really know what to do. . . I'm 17 and I hate that my principal already knows . . ."  Celestin assured her "everything is fine …"  and that he would "have [his] team pause selling content til [they] all talk once [he] land[s]."

133.    No Defendant ever paused the marketing or selling any image or video of Plaintiff engaged in sexually explicit conduct.

134.    On or about September 13, 2024, one of Passes' biggest "whales" ("Whale 1") for Plaintiff sent a direct message to Plaintiff over the Passes platform referencing a September 11, 2024, video titled "FLOOR (Rubbing lotion)" stating, "[I] can't stop thinking about your kitty and your lotioned ass so im risking being late to work so I can get a morning session."

135.    This video depicts Plaintiff exposing her buttocks and moving in a way that her bikini bottom exposes her genitalia, and the "kitty" references the visual depiction of Plaintiff's vagina.

136.    On or about September 15, 2024, Whale 1 again commented that he appreciated the "last batch of videos" and reiterated that he could see her vagina in the video.

137.    On or about September 18, 2024, Celestin and Ginoza again instructed Plaintiff to create sexually explicit images and videos of herself, namely sexually explicit images of her in the shower displaying her vagina, but to not upload them to Passes until her actual 18th birthday. Plaintiff confirmed that, "[y]es I did already."

138.    On that same day, Celestin instructed Plaintiff: "U can send here [over iMessage]!" but then, knowing that would be receipt of child pornography, wrote "Oh one second . . . Yeah hold on that [sic.]".

139.    Passes Vault records also show that on October 15, 2024, images of Plaintiff engaged in sexually explicit conduct, taken when she was still 17 years old, were uploaded and advertised on Passes as "DM-SET of 6 - $3500 NUDE PICS SHOWER."

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

140.    Passes' internal communications, payment processing, and data infrastructure demonstrate the close integration between Celestin's activities and Passes' core business operations. Celestin's solicitations, file uploads, and marketing actions were executed through Passes' official systems, using company accounts and payment gateways. Revenues from the sale and distribution of Plaintiff's images flowed through Passes' financial infrastructure and were reflected in its records. At no point did Passes disable Celestin's access or revoke his authority, even after learning of multiple reports of misconduct. Passes' failure to intervene confirms that Celestin's exploitation of Plaintiff was not a rogue act but a foreseeable consequence of his corporate role.

### H. The Passes Defendants' Agents Distribute Images and Videos of Plaintiff Engaged in Sexually Explicit Conduct Directly to Passes Customers.

141.    Agents of the Passes Defendants, impersonating then-17-year-old Plaintiff on the Passes direct messaging system, engaged with so-called whales in sexually aggressive ways to bait the subscribers into purchasing images and videos of Plaintiff engaged in sexually explicit conduct at premium prices.

142.    But for Guo unilaterally overriding Passes' internal safety controls disabling the direct messaging function on Passes' minor Creator accounts, these agents would have been unable to exchange these direct messages with so-called "big spenders" and "whales."

143.    Whale 1 continually purchased Plaintiff's images for hefty fees, totaling over $47,000, through continuous and salacious direct messages between Whale 1 and Passes agents posing as Plaintiff.

144.    Some of the sexually explicit exchanges between "Alice" and Whale 1 and "Alice" and a second subscriber, "Whale 2," on the Passes messaging platform include:

a.    September 17, 2024

"Alice":    glad you made it home! hopefully, you can relax now after such a long day daddy 😊 and enjoy my content as well 😊

Whale 1:    I am I already finished one session your teasing earlier had me on edge

b.    September 20, 2024

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

"Alice":    a tiny black bikini daddy prepared just for you 😉

Whale 1:    Ah no last vid before bday thong action? 😂 I'm just teasing babe I'm gonna buy them soon still at work lol.

"Alice":    how about you let me win again daddy? It's a good way to end the streak at 5 right? 🥺 🥺

Whale 1:    Considering how horny I am right now your definitely going to

    c.   September 29, 2024

Whale 2:    can I buy some custom content

"Alice":    yeah babe! what custom were you thinking of requesting

Whale 2:    baby oil, micro bikini (one of the ones ive seen you wear). doggystyle rocking band and forth live ppv's I bought. lotta tongue action/licking lips. ass smacks?  then maybe some riding     lower view

145.    Passes' proprietary machine learning classifiers reviewed the aforementioned direct messages and identified these messages as containing banned words, but neither Passes nor Guo took any remedial action whatsoever.

## I.    The 18th Birthday Marketing Plan.

146.    Plaintiff was set to turn 18 years old on or about September 21, 2024.  In anticipation, Celestin devised an 18th birthday marketing campaign to capitalize on the voracious appetites of the "whales" and "big spenders" for new images and videos of Plaintiff engaged in sexually explicit conduct through Passes' unrestricted and unchecked platform.

147.    Celestin and Ginoza directed Plaintiff—while still a minor—to create new images and videos of her engaged in sexually explicit conduct with a birthday theme before her 18th birthday.  Then, on her actual birthday, Celestin and others would market, sell and distribute the new child pornography.

148.    On or about September 16, 2024, Ginoza expressly instructed Plaintiff to "do an icing / cake photoshoot" and sent Plaintiff an example of nude pictures of a female labeled "icing on nips."  Later, Ginoza advised Plaintiff to follow "the birthday suit example set" and a "shower set."

CASE NO. 2:25-cv-08457-JLS-PD

149. Plaintiff ultimately followed Ginoza's instructions to take nude photos of herself in the shower displaying her vagina and to take photos of her breasts with cake frosting on her nipples and uploaded the sexually explicit images to the Passes Vault sets with the themes "birthday," with "icing on nips," and "in the shower."

150. On or about September 18, 2024, Celestin sent Plaintiff a picture of a naked women as another example for a new photo for the 18th birthday themed marketing campaign. Plaintiff again followed Celestin's instructions, took a variation of the photos and uploaded them to the Passes Vault.

151. Ginoza also shared with Plaintiff the pricing strategies. Ginoza would (a) "send them out as mass DM" through Passes for $500 but "exclude the big spenders who would spend $4k on them" or (b) "send out a text mass dm that says 'now that im 18 things are about to get wild, send me the 💦 emoji if you want to see what I mean'" and then price gauge based on "fans['] spend".

152. On or about September 21, 2024, Ginoza reminded Plaintiff to "upload the shower video when you get a chance," referring to a video that Plaintiff had made days earlier. Ginoza told Plaintiff that she was going to try to sell it for $4,000 to Plaintiff's "biggest spender."

153. As part of the birthday campaign, Passes also hosted a banner titled "Alice's Tip Menu" with a picture that Celestin had taken of the then-17-year old Plaintiff provocatively showing her buttocks. Among items advertised to Passes customers were "sexting," "dick rating," "stripping vid," "booty bundle," and "nudes."

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT



154. The "stripping vid" and "nudes" were images and videos of Plaintiff, then 17 years old, engaged in sexually explicit conduct.

**J. Guo and Passes Finally Act in Response to Risk of Legal Action.**

155. Into 2025, the Passes Defendants—wanting to preserve lucrative revenue streams and public metrics—-took no remedial action and continued to market child pornography on the website, despite the fact that their proprietary machine learning software and human reviewers alerted the Passes Defendants to such content.

156. The Passes Defendants had been aware that CSAM was uploaded and distributed on their platform but failed to take action until or about February 24, 2025, after Plaintiff's counsel contacted the Passes Defendants' attorneys about the subject matter of this action. Similarly, on or about February 24, 2025, Passes abruptly removed the option for minors between 15 and 17 years old to join as Creators. Additionally, the aforementioned stringent internal safeguards for minor Creators have since vanished from the Passes Terms and Conditions and Guidelines.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

**K.  *Specific Allegations of Guo's Misconduct Relevant to Plaintiff's Claims***

157.    As detailed above, Guo personally took the following actions, among others, that directly harmed Plaintiff:

a.  In or around late 2022 to early 2023, recruited Celestin to join Passes as head of Creator acquisition and strategy with the purpose of recruiting potential Creators, including individuals, like Plaintiff, aged 15 to 17 years old;

b.  On or about August 10, 2024, overrode Passes' strict internal safety controls tailored for Creators aged 15 to 17 years old to substantially contribute to the Defendants' conspiracy to produce and sell CSAM;

c.  On or about August 10, 2024, enabled Plaintiff's direct messaging function, in violation of Passes' internal restrictions and substantially contributing to the Defendants' conspiracy to produce and sell CSAM;

d.  On or about August 13, 2024, spoke directly with Plaintiff by phone, instructing her on how and where to upload content onto the Passes Vault system, telling her that she "can upload anything," with the knowledge that Plaintiff was 17 years old; and

e.  From August 13, 2024 to September 21, 2024, took no remedial action whatsoever in response to the uploaded CSAM involving Plaintiff, despite the existence of human moderator notes suggesting the existence of CSAM involving Plaintiff and despite the fact that Passes' proprietary machine learning classifiers reviewed each and every one of Plaintiff's photographs, marketing, and advertisements.

158.    Additionally, as outlined above, Guo and Passes granted actual and apparent authority and caused their agents Celestin and Ginoza, and WLM and Nofhotos, companies operated directly by Celestin, to take the following actions, among others, all of which directly harmed Plaintiff:

a.  From in or around May 2024 to August 10, 2024, recruited Plaintiff to join Passes while she was still 17;

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

b. From on or around August 10, 2024 to September 21, 2024, expressly directed Plaintiff to create images and videos of herself engaged in sexually explicit conduct as described in detail above and to upload them to the Passes Vault;

c. On or about August 10, 2024, took photographs of 17-year-old Plaintiff at his residence;

d. On or about August 10, 2024, and August 12, 2024, induced Plaintiff to sign management contracts while still 17 years old; and

e. From on or about August 13, 2024 to September 21, 2024, marketed, sold, and distributed images and videos of Plaintiff engaged in sexually explicit conduct that they had created and produced;

159. Further, as detailed above, Guo and Passes had knowledge of the actions of their agents Celestin, Ginoza, WLM, and Nofhotos, which caused harm to Plaintiff. Among other facts supporting this factual allegation are that:

a. In or around late 2022 or early 2023, Guo recruited and hired Celestin from Fanfix to act as her and Passes' agent and lead Creator acquisition and strategy, instructing him to help the Passes Defendants build a Creator base, including by offering access to minors aged 15 to 17 years old;

b. Starting in or about early 2023, Celestin was an employee and/or agent of Passes and reported directly to Guo;

c. In or around 2023, Guo instructed Celestin to promote Passes by emphasizing Passes' artificially low commission rates and by emphasizing that Celestin and Passes' "higher-ups" such as Guo would personally help Creators create and upload content;

d. Starting in or around early 2023 and continuing throughout Celestin's employment at Passes, Guo authorized Celestin to act as her direct agent in dealing with Creators, like Plaintiff;

e. Starting in or around early 2023 and continuing throughout Celestin's employment at Passes, Guo and Celestin coordinated recruitment strategies through daily communications;

f. From in or around early 2023 to the present, Celestin communicated directly with

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

Creators, including Plaintiff, via his official Passes accounts, and revenues from the sale and distribution of Plaintiff's images flowed through Passes' official financial systems;

g.  Starting in or around early 2023 and continuing throughout Celestin's employment at Passes, Guo authorized Celestin to set compensation, override internal restrictions, and represent Passes in Creator negotiations;

h.  On December 12, 2023, Celestin represented to a Creator that Guo "personally asked" him to promise that Passes would offer Creators much higher profits than other platforms, and stated in conversations with potential Creators that Guo "personally asked" Celestin to reach out;

i.  On August 14, 2023; February 28, 2024; and January 5, 2025, Guo endorsed Celestin's actions publicly through social media, and on the same dates, Celestin's social media heavily promoted his work for Passes, including via pictures with Guo; and

j.  On or about August 10, 2024, Celestin represented himself as Guo's "business partner" and "the person running the creator side" of Passes.

**L.  Defendants Are Not Protected by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.**

160.  The claims here arise from Defendants' own unlawful conduct and Section 230 does not provide immunity from the consequences of their wrongful conduct.  These facts establish that Defendants were responsible for the creation or development of unlawful material and acted as co-creators and distributors, not mere hosts.  Specifically:

a.  From in or around May 2024 to August 10, 2024, Defendants actively recruited, coerced, and induced 17-year-old Plaintiff to produce sexually explicit images;

b.  On or about August 10, 2024, Celestin, as an agent of Passes and Guo, took sexually explicit photographs of Plaintiff at his residence;

c.  On or about August 13, 2024, Guo deliberately overrode Passes' age verification and parental consent safeguards with the express purpose of allowing the upload of sexually explicit material involving Plaintiff;

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

d. On or about August 10, 2024, Guo enabled direct messaging on Plaintiff's account, in violation of internal restrictions;

e. On or about August 13, 2024, Guo spoke directly with Plaintiff, advising her on uploading explicit material and assuring her she "could upload anything;"

f. From on or about August 10, 2024, to September 21, 2024, Guo, Celestin, and Ginoza personally planned, directed, photographed, produced, edited, and marketed sexually explicit material involving Plaintiff;

g. From on or about August 13, 2024, to September 21, 2024, Passes stored, possessed, and sold CSAM through its proprietary Vault and messaging system;

h. From on or about August 13, 2024, to September 21, 2024, Defendants knowingly failed to remove or report CSAM flagged by their own algorithmic and human moderation processes;

i. From on or about August 10, 2024, to September 21, 2024, Celestin and Ginoza, as agents of Passes and Guo, scripted, priced, and advertised Plaintiff's images and videos under sexually explicit titles, managed mass marketing campaigns, and directly interacted with subscribers while posing as Plaintiff; and

j. From on or about September 16, 2024, to September 21, 2024, Celestin and Ginoza, as agents of Passes and Guo, produced and uploaded "birthday campaign" content featuring the 17-year-old Plaintiff in sexually explicit poses.

161. Defendants who create or develop unlawful material are not eligible for immunity under Section 230. By photographing, directing, editing, and monetizing CSAM, Defendants became primary producers, promoters, and traffickers of illegal material, not neutral intermediaries. Because they knowingly participated in the production, possession, and sale of CSAM and benefited from child sex trafficking, their conduct falls squarely within statutory exceptions that foreclose immunity. Defendants created, developed, directed, marketed, distributed, and profited from the exploitation of a 17-year-old, acting as information content creators and providers—and as traffickers—while deliberately disabling safeguards meant to protect minors, failing to report or

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

remediate known CSAM, and profiting from its circulation.  This is bad faith exploitation.  Section 230 does not immunize such conduct and offers no defense to any claim alleged in this Complaint.

## CAUSES OF ACTION

### COUNT I

### RECEIPT, DISTRIBUTION AND POSSESSION OF CHILD PORNOGRAPHY

### Violation of 18 U.S.C. §§ 2252 AND 2252A

### (Plaintiff Against Defendants Passes, Celestin, Ginoza, Nofhotos, and WLM)

162.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action

163.    The Defendants committed violations of 18 U.S.C. §§ 2252 and 2252A.

164.    Plaintiff was a minor and a victim of violations of 18 U.S.C. § 2252 and suffered personal injury as a result of such violations and is eligible to sue and recover damages and other forms of relief under 18 U.S.C. § 2255.

165.    The Defendants knowingly received, possessed, advertised and distributed child pornography depicting then-minor Plaintiff.

166.    The Defendants' receipt, possession, advertisement and distribution of child pornography occurred in or affected interstate or foreign commerce.

167.    As a proximate result of the Defendants' violation of 18 U.S.C. § 2252A, Plaintiff suffered serious harm, including physical, psychological, financial and reputational harm.

168.    The Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights.  Plaintiff is entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate and the costs of maintaining this action.  18 U.S.C. § 2255(a).

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

# COUNT II

## NONCONSENSUAL DISTRIBUTION OF INTIMATE CONTENT

### Violation of CA Civil Code § 1708.85

### (Plaintiff Against Passes, Nofhotos, WLM, and Ginoza)

169.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

170.    The Defendants committed violations of CA Civil Code § 1708.85.

171.    CA Civil Code § 1708.85 provides a private right of action against a person who intentionally distributes a photograph, film, videotape, recording, or any other reproduction of another, without the other person's consent, if the distributed material exposes an intimate body part of the other person.

172.    The Defendants arranged for then-minor Plaintiff to provide them with CSAM.

173.    The Defendants knowingly received, possessed, advertised and distributed CSAM depicting Plaintiff, to which, as a minor, she could not consent.

174.    The Defendants intentionally posted child pornography or other CSAM or allowed child pornography or other CSAM to be posted, depicting Plaintiff, and such child pornography or other CSAM was posted on additional third-party websites to which Plaintiff did not consent.

175.    Defendants knew, or reasonably should have known, that such material would be posted on third-party websites to which Plaintiff did not consent.

176.    Plaintiff was unaware that such child pornography and other CSAM would be posted on additional third-party websites.

177.    As a proximate result of the Defendants' violation of CA Civil Code § 1708.85, Plaintiff suffered serious harm, including physical, psychological, financial and reputational harm. Plaintiff suffered general damages as a result of Defendants' actions.

178.    Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights. Plaintiff is entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate and the costs of maintaining this action. Cal. Civ. Code § 3294(a).

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

### (Plaintiff Against Passes, Guo, Nofhotos, WLM, and Ginoza)

179.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

180.     Each of the Defendants acted outrageously and (i) intended to cause Plaintiff emotional distress, or (ii) acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

181.     Each of the Defendants' conduct was a substantial factor in causing Plaintiff harm.

182.     Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights.  Plaintiff is entitled to injunctive relief, compensatory and punitive damages, reasonable attorney's fees, preliminary and equitable relief as deemed appropriate and the costs of maintaining this action.  Cal. Civ. Code § 3294(a).

## COUNT IV

## NEGLIGENCE

### (Plaintiff Against Passes and Guo)

183.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

184.     The Passes Defendants owed Plaintiff a duty to use reasonable care to avoid exposing her to foreseeable harm, including the duty to implement, maintain, and enforce effective safeguards to prevent the exploitation of minors; to refrain from soliciting, producing, possessing, publishing, or monetizing sexually explicit content involving minors; to vet, verify, and monitor creators, contractors, and affiliates; to respond reasonably to reports of child sexual abuse material (CSAM); and to design, operate, and supervise the platform and related business practices in a manner consistent with ordinary care under the circumstances.

185.     The Passes Defendants breached their duty by, among other acts and omissions, recruiting and inducing Plaintiff  for the purpose of creating and distributing CSAM; knowingly overriding internal safety controls; facilitating production, upload, and distribution of CSAM;

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

possessing, publishing, advertising, and selling CSAM; failing to remove or block access to known CSAM; sharing and monetizing CSAM; and ignoring, concealing, or suppressing reports and internal red flags indicating Plaintiff's minority and ongoing exploitation.

186. As a result of the Passes Defendants' breach of their duty of care to Plaintiff, Plaintiff was harmed, including severe emotional distress, loss of privacy, reputational harm, and economic injury.

187. The Passes Defendants' negligence was a substantial factor in causing Plaintiff's harm.

## COUNT V

## NEGLIGENT HIRING, SUPERVISION, OR RETENTION OF EMPLOYEE

### (Plaintiff Against Passes and Guo)

188. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

189. At all times relevant, Defendant Celestin was under the control of the Passes Defendants as an employee of Passes.

190. The Passes Defendants hired, engaged, retained, assigned, and/or placed Defendant Celestin in a position of authority that he was unfit for, in light of the foreseeable risks of minor exploitation inherent in operating a monetized adult-content platform.

191. Defendant Celestin, acting within the scope of his duties and utilizing authority and access provided by the Passes Defendants, recruited and groomed Plaintiff while she was a minor, facilitated production and publication of sexually explicit content involving Plaintiff, overrode or circumvented age verification, possessed and distributed CSAM, and monetized and promoted Plaintiff's illegal content.

192. The Passes Defendants knew or should have known that Celestin was unfit to be an employee of Passes and that this unfitness created a particular risk to minor Creators such as Plaintiff.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

193.    As a result of the Passes Defendants' breach of their duty of care to Plaintiff, Plaintiff was harmed, including severe emotional distress, loss of privacy, reputational harm, and economic injury.

194.    The Passes Defendants' negligence was a substantial factor in causing Plaintiff's harm.

**COUNT VI**

**ENGAGEMENT IN HUMAN TRAFFICKING**

**Violation of CA Civ. Code § 52.5**

**(Plaintiff Against Passes, Guo, Nofhotos, WLM, and Ginoza)**

195.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

196.    California Civil Code § 52.5(a) provides a private right of action for "[a] victim of human trafficking, as defined in Section 236.1 of the Penal Code." California Penal Code § 236.1 defines "human trafficking" as, among other things, the causation, inducement, or persuasion, or attempt to cause, induce, or persuade, "a person who is a minor at the time of commission of the offense to engage in a commercial sex act." CA Penal Code § 236.1.

197.    Defendants, and each of them, directly engaged in human trafficking of Plaintiff while she was a minor, in violation of Penal Code § 236.1 by recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting Plaintiff for the purpose of causing Plaintiff to engage in commercial sex acts.

198.    In addition, and/or in the alternative, Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture that they knew or should have known engaged in human trafficking of Plaintiff, including but not limited to the recruitment, production, advertising, sale, distribution, promotion, monetization, and dissemination of unlawful content and services obtained through trafficking of Plaintiff.

199.    Defendants' conduct included, without limitation, the knowing direction, inducement, facilitation, and control of the trafficking scheme; the creation and maintenance of mechanisms and policies that enabled and concealed the trafficking; the overriding or circumventing

CASE NO. 2:25-cv-08457-JLS-PD

---

PLAINTIFF'S SECOND AMENDED COMPLAINT

of safety and verification protocols; and the monetization and promotion of trafficking-derived content, all of which constituted participation in a trafficking venture and the knowing receipt of benefits therefrom.

200.    As a direct and proximate result of Defendants' violations of California Civil Code § 52.5, Plaintiff suffered harm, including severe emotional distress, psychological injury, loss of dignity and autonomy, invasion of privacy, reputational harm, economic losses, and other damages in an amount to be proven at trial.

201.    Defendants acted willfully, maliciously, oppressively, fraudulently, and/or with reckless disregard for Plaintiff's rights and safety, thereby warranting the imposition of punitive and exemplary damages.

202.    Plaintiff is entitled to all remedies available under California Civil Code § 52.5, including, without limitation, compensatory damages, injunctive and other equitable relief, punitive damages, restitution, and reasonable attorneys' fees and costs.

## COUNT VII

## CIVIL CONSPIRACY

### (Plaintiff Against Passes, Guo, Nofhotos, WLM, and Ginoza)

In the alternative, given that the Passes Defendants dispute the existence of any employment or agency relationship between them and any other Defendants, and to the extent the Court determines that Defendants Celestin, Nofhotos, WLM, and Ginoza were not employees and/or agents of Defendants Passes and Guo during the relevant time period and with respect to the relevant acts herein alleged, Plaintiff alleges this claim for civil conspiracy:

203.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

204.    Passes and Guo, on the one hand, and Celestin, Ginoza, Nofhotos, and WLM, on the other, formed and operated a common plan and agreement to commit unlawful acts, or to commit

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

lawful acts by unlawful means, specifically, for the purpose of recruiting, grooming, and exploiting minor Plaintiff to produce, possess, market, sell, and distribute CSAM depicting Plaintiff.[6]

205.    This plan and agreement included Guo's authorization of Celestin's recruitment strategies and her approval of the use of Passes systems to solicit and monetize creators.

206.    These unlawful means included the recruitment, production, possession, distribution, and monetization of sexually explicit content involving then-minor Plaintiff; the intrusion upon then-minor Plaintiff; and the public disclosure of private sexual images of minor Plaintiff.

207.    In furtherance of the conspiracy, Defendants implemented specific policies to attract and exploit minors such as promising significant profits; shared methods of bypassing age controls and other safety measures; directed, promoted, and monetized illegal CSAM content; and suppressed removal, reporting, and moderation.

208.    At all times relevant, Defendant Celestin acted not only in his individual capacity, but on behalf of Defendant WLM and Defendant Nofhotos as the entities' founder, owner, and controlling principal.

209.    Each Defendant committed one or more overt acts pursuant to and in furtherance of the conspiracy and provided substantial assistance and encouragement to the others to accomplish the unlawful objectives.

## COUNT VIII

### DECLARATORY JUDGMENT

**(Plaintiff Against Defendant Celestin)**

210.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

211.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff and Celestin regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and Celestin on August 10, 2024.

---

[6] As set forth *supra* n.1, claims against the debtor Celestin are stayed. While Celestin participated in the conspiracy, Plaintiff does not assert this claim at this time, per 11 U.S.C. § 362(a).

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

212.    Under California law, a person under 18 years old in California lacks the capacity to contract.  Cal. Civ. Code § 1556.

213.    Plaintiff seeks and is entitled to a declaration that the contract dated August 10, 2024, is null and void, and unenforceable by Celestin.

## COUNT IX

## DECLARATORY JUDGMENT

### (Plaintiff Against Defendants WLM and Celestin)

214.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

215.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff, and WLM and Celestin, regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and WLM and Celestin on August 12, 2024.

216.    Under California law, a person under 18 years old in California lacks the capacity to contract.  Cal. Civ. Code § 1556.

217.    Plaintiff seeks and is entitled to a declaration that the contract between WLM and Plaintiff dated August 12, 2024, is null and void and unenforceable by WLM and Celestin.

## COUNT X

## DECLARATORY JUDGMENT

### (Plaintiff Against Defendants Nofhotos and Celestin)

218.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth and brought in this cause of action.

219.    In accordance with 28 U.S.C. § 2201, an actual controversy exists between Plaintiff and Nofhotos and Celestin regarding Plaintiff's contractual obligations entered into between Plaintiff, a minor, and Nofhotos and Celestin on December 24, 2024.

220.    The contractual obligations involved Plaintiff producing child pornography, in violation of federal and state law.  Any contract that violates federal or state law is unenforceable.

221.    The contract dated December 24, 2024, is unenforceable because the management fee commission is usurious and unconscionable.

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

222.    Plaintiff seeks and is entitled to a declaration that the contract between Nofhotos and Plaintiff dated December 24, 2024 is null and void and unenforceable by Nofhotos and Celestin.

### JURY TRIAL DEMAND

223.    Plaintiff demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

224.    WHEREFORE, Plaintiff prays for judgment against Defendants on all claims, and requests a judgment providing the following relief:

a.  Judgment in Plaintiff's favor and against Defendants on all causes of actions;

b.  Enter an order declaring that the following contracts are null and void:

   i.  The contract between Celestin and Plaintiff dated August 10, 2024;

   ii.  The contract between WLM and Celestin and Plaintiff dated August 12, 2024; and

   iii.  The contract between Nofhotos and Celestin and Plaintiff dated December 24, 2024.

c.  For injunctive or any other equitable relief to Plaintiff, requiring the Defendants to identify and remove all child pornography—related or not to Plaintiff—and implement corporate-wide policies and practices to prevent continued dissemination of child pornography or child sex trafficking;

d.  For compensatory damages in an amount to be proven at trial;

e.  For punitive damages and exemplary damages according to proof at trial;

f.  For restitution and disgorgement of all profits and unjust enrichment obtained as a result of Defendants' unlawful conduct;

g.  For costs of suit incurred herein;

h.  For attorney's fees and costs, including as warranted by applicable laws; and

i.  For such other and further relief as the Court may deem to be just and proper.

[ATTORNEY SIGNATURES ON FOLLOWING PAGE]

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT

Dated: February 24, 2026

Los Angeles, California

THE FREEDMAN FIRM PC

By: */s/ Michael G. Freedman*
Michael G. Freedman
michael@thefreedmanfirm.com
(Cal. Bar No. 281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
(310) 285-2210

By: */s/ Rodney Villazor*
CLARK SMITH VILLAZOR LLP
Rodney Villazor, Esq.
rodney.villazor@csvllp.com
(Cal. Bar. No. 310212)
Christopher J. Clark, Esq.
clark@csvllp.com
(admitted *pro hac vice*)
Jeffrey R. Rotenberg, Esq.
jeffrey.rotenberg@csvllp.com
(admitted *pro hac vice*)
666 Third Avenue, 21st Floor
New York, New York 10017
(212) 377-0850
*Attorneys for Plaintiff*

CASE NO. 2:25-cv-08457-JLS-PD

PLAINTIFF'S SECOND AMENDED COMPLAINT