# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| ALICE ROSENBLUM, | ) | CASE NO: 2:25-cv-08457-JLS-PDx |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| PASSES, INC, ET AL, | ) | Friday, May 8, 2026 |
| | ) | |
| Defendants. | ) | (10:59 a.m. to 11:51 a.m.) |

INFORMAL DISCOVERY CONFERENCE VIA ZOOM

BEFORE THE HONORABLE PATRICIA DONAHUE,
UNITED STATES MAGISTRATE JUDGE, PRESIDING

APPEARANCES:               SEE PAGE 2

Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Isabel Verduzco

Transcribed by:            Exceptional Reporting Services, Inc.
                           20079 Stone Oak Pkwy.
                           Suite 1105, PMB 237
                           San Antonio, TX 78258
                           361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | BRIAN THOMAS BURNS, ESQ. |
| | JAMES ADAM GEORGE, ESQ. |
| | MICHELLE EUGENIA LEE, ESQ. |
| | Clark Smith Villazor |
| | 666 Third Avenue |
| | 21st Floor |
| | New York, NY 10017 |
| | |
| | MICHAEL GREGORY FREEDMAN, ESQ. |
| | Freedman Firm |
| | 1801 Century Park East |
| | Suite 450 |
| | Los Angeles, CA 90067 |
| | |
| For Defendants: | NARY KIM, ESQ. |
| | XIAORUI YANG, ESQ. |
| | Kendall Brill & Kelly |
| | 10100 Santa Monica Boulevard |
| | Suite 2500 |
| | Los Angeles, CA 90067 |
| | |
| | JOSE JAVIER TEURBE-TOLON, ESQ. |
| | Xander Law Group |
| | 25 SE 2nd Ave. |
| | Suite 808 |
| | Miami, FL 33131 |
| | |
| | MICHAEL A. BOWSE, ESQ. |
| | Bowse Davis Huffine Chung & Hull |
| | One World Trade Center |
| | 8th Floor |
| | Long Beach, CA 90831 |

3

**Los Angeles, California; Friday, May 8, 2026; 10:59 a.m.**

**(Call to Order)**

THE CLERK:  Calling Case No. cv-25-8457-JLS-PDx, Alice Rosenblum versus Passes, Inc., et al.  Counsel, please state your appearances beginning with plaintiff.

MR. BURNS:  Good morning, Your Honor, for the plaintiff Brian Burns of Clark Smith Villazor LLP.  And with me I have my colleagues Adam George and Michelle Lee and our co-counsel Michael Freedman from the Freedman Firm.

MS. KIM:  Good morning, Nary Kim on behalf of defendant Passes and Lucy Guo.  I'm from the firm Kendall Brill and Kelly and I have with me my colleague Xiaorui Yang.

THE COURT:  All right.  Good morning.  We are --

MR. TEURBE-TOLON:  I apologize, Your Honor, Jose Teurbe-Tolon on behalf of defendant Lani Ginoza from Xander Law Group, also here, my co -- my local counsel, Michael Bowse.

MR. BOWSE:  Good morning, Your Honor.

THE COURT:  All right.  Good morning.  We are here for an informal discovery conference based on the e-mail sent to the Court on April 30th.  The e-mail raises several issues.  We will take them in the order that they are identified in the e-mail.  Starting with issues raised by the plaintiff and the essence of the e-mail is that the plaintiffs are seeking information regarding other creators who are minors.  And it -- I have read the position, I've read the discovery requests and

I have read the -- most of the cases that are cited and I'll start by saying that the Passes defendants state they're willing to produce documents and answer interrogatories regarding their encountering and handling of circumstances similar to what plaintiff alleged is the plaintiff's experience with the relative non-party minor creators identifying information redacted to protect their privacy interests.

And so I'd like to hear first from the plaintiffs why their position as to whether that is an acceptable compromise and if not, why not.

**MR. BURNS:** Yes, thank you, Your Honor, Brian Burns, I'll handle this one.

And those are two components to their proposed compromise. One is it's, as I understand it, they're willing to give us the materials that are responsible to really RFP 26, 26.1 and in Interrogatory which kind of call for information that their systems flagged as potential child sex abuse material and then the responses that were made. And then the second piece of it is the redaction issue.

So as to the first in terms of the scope of substance, we have a number of concerns as to why getting information that's really based on just a content moderation flagging systems is not going to be sufficient, you know, to pursue all the reasons why we think this information is relevant, as -- you know, as kind of fleshed out in these other

5

cases about it's relevant to knowledge, intent, negligence and all of that.

        And one in terms of scope is look, regarding the contend moderation systems and flagging systems that we have an understanding based on certain social media posts that defendant Lucy Guo, she's the CEO of Passes, that she made after this case was filed, where she indicated that those content moderation features were turned off for certain accounts if they were managed by an account manager.

        So if she --

        **THE COURT:**  So, in other words, your contention is that those were turned off, so therefore, the defense proposal would not capture -- potentially wouldn't capture at all, certainly wouldn't capture the relevant information.

        **MR. BURNS:**  Correct.  It might capture some if they were not within that account manager bucket, but they would be under inclusive.  And so we're after additional information to try to identify all the instances where this was happening on the Passes' platform, whether or not --

        **THE COURT:**  And really specifically, what is it that you want them to provide?

        **MR. BURNS:**  So I think if we go through, you know, those interrogatories and request for production, the interrogatories are probably a pretty good guide at this point about what's more specific, right.  One of them is number 6.

6

We want to know who actually was recruiting minors to join the platform.  It's the names of people or entities whose job it was to do that, because those people may have information relevant to the --

THE COURT:  Okay.  Then that is who is recruiting.  So that is not identifying the name of a minor.

MR. BURNS:  That's correct.  They sort of advance a similar objection --

THE COURT:  What's the objection to the -- providing the identity of a person who was recruiting, because that seems obviously not to include any privacy information regarding a minor and certainly sounds relevant.  So what's the defense's objection to that?

MS. KIM:  So this Nary Kim and I'll take this one.

I think just to contextualize this, plaintiff had filed this case as a putative class action --

THE COURT:  I understand and those are stricken.

MS. KIM:  Yeah.

THE COURT:  I know.  That doesn't mean that information about others is not relevant though.

MS. KIM:  I think that our sort of preliminary objection to a lot of these requests was that they were so quite overbroad and not really clear to capture information about this plaintiff specifically.  And I think the request that we're looking at specifically right now, which is No. 6,

7

persons involved in marketing to or recruiting minor creators, that one doesn't seem, at least from our perspective, relevant to exactly what plaintiff is alleging happened to her in this case, which is that she's identified one particular person, Alec Celestin and assistant Lani Ginoza who recruited her and uploaded her content onto this Passes platform.

It is not clear to me why other individuals who would not have any interactions with this particular plaintiff, or would not have even been involved in minor creators doing similar conduct at this particular plaintiff would have any relevance.

I think Mr. Burns' point that our willingness to respond to certain of the RFPs and certain of the rogs based on their relevance to alleged or actual CSEM, the child sexually explicit material, that wasn't meant to be limited to, you know, things that were captured by the algorithm or things that were captured by the particular method. I think we were trying to identify the rogs and RFPs that actually got to the conduct that was at issue in this case.

If they wanted to propound an RFP or a rog that eliminated that limitation as captured by this particular algorithm and wanted to just do another rog or an RFP that said, all instances in which potential or actual CSEM was identified through any method, I think that's actually something we would be willing to respond to, pursuant to the

8

compromise that we proposed.

**THE COURT:**  One question I had is obviously you all know far more about this case than I do.  It makes far more sense for you to meet and confer and come to a reasonable understanding or a reasonable narrowing of the discovery requests and a production, at least pursuant to those narrowed requests and then come back to the court.  Obviously that would be more efficient.

I understand the plaintiff would like to go through interrogatory by interrogatory and RFP by RFP, we can certainly do that, but again, it would seem to me that it would be vastly more productive for you all to address this.

I understand the district judge's ruling regarding the class.  That does not render irrelevant all information that's in the defendant's possession, custody or control regarding other individuals.

So it just means that we have to return to, you know, Rule 26 relevance and proportionality.  What I hear from the defense is a limitation not just all minors or someone who's recruiting all minors or all other minors, but minors who are potentially more similarly situated to the plaintiff.  That seems entirely reasonable and relevant and proportional and certainly at a minimum would be I think a reasonable starting place for responses.

I'm not sure why the plaintiff is entitled just

across the board to information or whose -- all minors, I guess unless the presumption is that there may somehow have been child sexual abuse and material created across for all minors, but that does not seem to be the allegation or the situation here.

So it does seem that the limitations proposed by the defense are relevant and proportional.  I don't think that plaintiff needs to go back and re-propound interrogatories that are worded precisely how the defense wants, you all can meet and confer and you can agree to a narrowed interpretation or to language that narrows the discovery requests to things which are relevant and proportional.

So it would seem that would be a productive way to proceed.  So I understand the defense is seeking, for example, the name of the person who recruited all minors to or the plaintiff is seeking all minors who came to the platform.  I don't know what the relevance is, the plaintiff seeks -- I don't know what the relevance is to that, but it would seem that there's a way to narrow that.

But I'll hear from the plaintiff.  And to the extent it certainly -- if you think it's most productive we can go through interrogatory by interrogatory and RFP by RFP, but it appears to me to be an inefficient way for experienced counsel who should be -- who should know their case and be able to meet and confer in a reasonable matter and come up with some

limitations and then present a specific dispute to the Court rather than the current one.

But as I said, I'll turn back to certainly we can go back beginning and go through interrogatory by interrogatory. I guess I'll ask you all how you think it's most efficient to proceed.

**MR. BURNS:** Thank you, Your Honor. So I will make a point about this -- the proposed compromise about similarly situated plaintiffs. Well, part of their compromise that was not provided in the meet and confer and it's still not clear to me if it was, is that there's certain aspects of this plaintiff's experience that they wouldn't provide interrogatory information about others.

So for example, we've alleged that for this plaintiff Passes through Lucy Guo overrode the requirement to have verifiable parental consent. We have an interrogatory, it's No. 8 that says, tell us how that can be overridden and identify each instance where it was overridden. That was not answered and --

**THE COURT:** What is the objection to that interrogatory?

**MS. KIM:** So again I think there were other interrogatories that ask how was it -- how was the procedures overridden with respect to this plaintiff which we answered and we thought that was sufficient. And it didn't seem, at least

11

articulated to us in the meet and confer why other procedures that didn't apply to this particular plaintiff would be relevant to her case.

THE COURT: Because as I said, I think you're trying to narrow the case only to this plaintiff, and I think that they are entitled to some -- it is relevant as to whether there may be other individuals who are similarly situated.

So I think perhaps the defense has drawn these too narrowly, so let's go back. What is -- again state the language of the disputed interrogatory.

MR. BURNS: Yeah, it's number or Interrogatory No. 8, describe the process through which verifiable parent consent procedures or Passes' direct messaging band for minor creator profiles can be overridden, disabled or otherwise restricted and identify all instances of such overriding, disabling or restricting and the rationale for each decision.

THE COURT: All right. So if the procedure that was followed for the plaintiff in this case is the same procedure that's followed for every case, then certainly Passes could say that. Or I don't know, maybe there are numerous procedures by which these controls can be overridden, but it seems that that is relevant and proportional here.

MS. KIM: I appreciate that feedback. I think there are other RFPs and rogs where I don't think it's the same kind of broad rationale can apply. For example, there are rogs that

12

say we want all instances where minor creators were suspended or deactivated for any reason and for any reason meaning reasons that have nothing to do with the posting of sexually explicit or suggestive material, which is the reason why this particular plaintiff would have been suspended by this platform.

And I think if we could apply similar limitation of, not for any reason, but for reason similar to the plaintiff, then that would be something that we could work with.

THE COURT: I think that's entirely reasonable. Mr. Burns?

MR. BURNS: The only thing I would maybe mention is we want to assess what percentage of these suspensions were for issues related to this, and whether people whose information was flagged to CSEM are on the suspension list or not, there may be sort of reasons to analyze the data that's more broad to understand the scope of the issue.

THE COURT: But it's not a class action, so I guess I don't understand why that would be relevant.

MR. BURNS: Well, I think any of these instances are going to be potentially admissible under at least 415 and information aimed at getting to them is therefore relevant. And so seeing the percentage of accounts that were flagged for CSEM versus other reasons may be relevant. But I see Your Honor is shaking your head, so I'm going to just stop there and

13

I think we can -- we'll be able to agree on, you know, getting the suspension information in a way that's more limited than every suspension they may have authored.

THE COURT:  Also --

MR. BURNS:  We have --

THE COURT:  -- you're at the beginning -- this is the beginning of discovery; is that correct?

MS. KIM:  Yes, Your Honor.

THE COURT:  All right.  So some of these arguments are potentially based on speculation.  Perhaps you should agree to some narrowing of these disputes, get the discovery produced, see what actually is produced and that may well inform what is -- what you conclude is relevant.

MR. BURNS:  That also makes sense, Your Honor.

THE COURT:  All right.  I conduct informal discovery conferences in an effort to get the parties to narrow the disputes, so that if we have to go to briefing pursuant to Local Rule 37 it is focused briefing on what is disputed and not scatter shot across numerous discovery requests.

So it seems here that the way in which the defendants addressed similarly situated minors is relevant.  All minors or minors who may have been suspended for other reasons I don't see at this point the relevance.  Perhaps based on the discovery that the plaintiff receives, you'll be able to demonstrate that relevance.  But I go back to the defendants

14

are willing to produce documents and answer interrogatories regarding their encountering and handling of circumstances, similar to the allegations raised by the plaintiff in this case.

It seems that can be interpreted narrowly or broadly, of course, but it seems that that is generally a very relevant and proportional way to address -- to narrow these discovery disputes. And then the plaintiff can look at the information you receive and conclude if there are -- if there is further information that -- as to which you think is relevant and you can raise that with the Court.

**MR. BURNS:** Your Honor, that makes sense to us, thank you.

**THE COURT:** Now, with regard to the other limitations, non-party minor creator's personal identifying information redacted. Does the plaintiff have an objection to that?

**MR. BURNS:** Yes, for a number of reasons. One is we want to see the names and whatever the identifying information is, so we can link them up in other places where they may appear in the discovery materials.

And the defendants have offered what I guess I would call a potentially clever proposal around that, which would be they would redact it, but assign some sort of identifying number to it, though I think that kind of potentially injects a

EXCEPTIONAL REPORTING SERVICES, INC

15

layer of error and still deprives us of information that, you know, may be relevant to our client but not us if she recognizes a name across, you know, multiple documents that maybe counsel doesn't appreciate, you know, that it's the same person, but they're identified in a similar way.

Objection No. 2 on the redactions is after they raised this issue, I went and I looked at Passes' privacy policy that they post on line and the privacy policy says that as a creator we may publicly identify you as a creator with Passes.

So I don't really think that these creators have much of an interest of privacy when that's in the policy. And they're there on the platform doing commerce, doing commercial transactions, selling content out to people. So there doesn't seem to be much of a privacy interest that these creators have, and you know, there may be a question about whether Passes has standing to raise it on their behalf, but the indications we've seen doesn't seem like Passes is promising to keep their materials confidential or their identities confidential.

THE COURT: So potentially your argument is that the -- these folks have waived whatever privacy rights they would have by virtue of the terms that they agree to in posting their material on Passes.

MR. BURNS: Sure, they just never had one to begin with. They signed up for a platform that agreed that they

16

could publicly disclose who they were and also comply with legal process.

THE COURT:  Okay.  Let me hear from the defense on this.  What is the response to the argument that they didn't -- either they didn't have a privacy interest to begin with or I think perhaps they did, but they waived it by your -- the terms of their agreement with your client.

MS. KIM:  Sure.  I think the prior compromise we made about limiting the population to a sub-population involving minors who were posting or selling images that are sexually explicit, you know, we're dealing with a pretty small population of minors and minors that were doing something that seems quite private and quite intimae.  And I think, you know, this is a case where the plaintiff is alleging like damage to reputation, loss of privacy, because information about her on this platform was allegedly leaked to the public.

It does seem a bit ironic that we're saying similarly situated minors who were -- exactly the same or similar conduct can have all of their information exposed without a loss of privacy, when that is kind of the heart of this case.

I think our solution that we can assign some kind of a control number to each minor creator, so that each one could be accurately tracked and you can tell which one is appearing in which instance.  That seems like a pretty reasonable solution here.  We've done that in other cases, where this type

17

of issue has arisen and we haven't had problems with inaccuracy or other things that Mr. Burns is describing at potential issues.

We've also identified a few cases for Your Honor in which this type of solution was (indisc.) to protect privacy interests and I think that -- I'm not sure exactly what the objection is, unless it's just, you know, potential for human error if we don't match one to one, which I think we would guard against pretty vigorously in the way that we assign control numbers.

And I think also in whether the extent to which individuals who are minors have the capacity to waive their privacy interests.  In any event, they were waiving it vis a vis your client and the platform and not necessarily -- certainly not publicly or generally.

**MS. KIM:**  I would agree to that and I'm sorry, I don't actually know the policy that Mr. Burns is referring to, I haven't had a chance to look at it.  But my understanding is that there were some -- there were other provisions in the contracts that each creator signs up with -- who signs up with Passes interest into and I don't think it's a free for all then.  Everything can be exposed, no matter what, I don't think that that's -- that's at least my understanding of what the Passes' policy was.

**THE COURT:**  All right.

18

**MR. BURNS:** But I would also note we're not talking about just free willing public disclosure, there is a confidentiality order in this case and the Passes' privacy policy also says we may use your personal data to comply with applicable law as lawful request and legal process, so just to respond to subpoenas or request from government authorities. So it does seem to contemplate disclosure within the context of lawful litigation.

**THE COURT:** Mr. Burns, what is the objection to them assigning a number and providing you with the information? I just -- you think they're going to a mistake in doing it? Otherwise, it seems to me like that's a perfectly reasonable compromise here. I guess, what is the legal objection to that --

**MR. BURNS:** I think that --

**THE COURT:** -- that they don't have the privacy right vis a vis your client?

**MR. BURNS:** Well, I mean, look redactions for reasons other than privilege are just disfavored, that's sort of a starting point, so that's what they're proposing. And we think we should be able to connect the dots ourselves between who the minors are and where else they may show up in discovery to understand what the Passes' defendants knew with respect to the particular minor.

And there could be instances where they're identified

19

by a handle in one place and a name in another, our client might be familiar with them, from you know, her interactions in the creator world and it might not be obvious to the counsel that are doing the redactions that it's the same person.

So that's sort of the concern that we should be able to see it and connect the dots ourselves and not rely on counsel to try to do that.

THE COURT: Well, I'm not going to let you have the information absent a full briefing. It seems to me that there is some privacy interests here that outweighs the logistical issues that you've raised. The defense should be aware of your concern, you should take care to ensure that these -- if the same person is identified by the same handle or same information. And again, if the plaintiff gets this information and reviews it and determines that it's inadequate or there's a specific person whose name is redacted that the plaintiff would like, then you can raise that issue individually. But at this point I don't see a basis for unredacted production of this information to the plaintiff. I think that the compromise, at this stage in the litigation, that the defense has proposed is reasonable.

MR. BURNS: Okay. Then I think probably what makes sense, Your Honor, is we proceed on that basis with us as plaintiff reserving the right to compel unredacted versions if we feel that we have a need to in the future. I would be

20

satisfied with that.

THE COURT:  Yes, absolutely.

And I think given the complexity here, I'm going to have you all submit a proposed order after this discovery conference.  All right.  Are there other issues, other regarding the first issue raised by plaintiff, or other minor creators?  Anything further from the plaintiff on the first issue?

MR. BURNS:  I think we know where we're going on that, Your Honor.

THE COURT:  All right.  How about from the defense?

MS. KIM:  We're good, thank you, Your Honor.

THE COURT:  All right.  Plaintiff's Request for Production No. 2, the Passes' defendants have asserted they will not produce documents in response to RFP 2.  It is the pitch materials.

MR. BURNS:  Yes, that's right, Your Honor.  What we're looking for --

THE COURT:  I understand your relevance argument and their argument is that this is overbroad.  Is there a way to narrow this because it may be that the -- there may have been representations made regarding how minors are handled, how minors -- creators, how their material is handled.  There may have been representations regarding protections of minors against creation of sexually explicit material.  In other

21

words, there may be material within the requested pitch materials that is absolutely relevant to this lawsuit.

Certainly broadly all of the information is not, but I think there is a subset of this -- of these requested materials that is relevant.

MR. BURNS: Yes, I agree with that, Your Honor, and I think if I could just slightly broaden the subset and I think I may have, you know, a proposal for how to limit it, is if the pitch material references, you know, minors or references generally the safety protocol designed to address adult content or nudity or banded words and content moderation because while they're, yes, they have specific protocols for minors, but they also would apply I think the general protocols that they have to restrict nudity and to analyze content to the broader universe of creators, because Passes has billed itself as a no nudity platform for anybody.

So how they advertise that, those restrictions would apply likewise to adults and to minors, so even though it doesn't refer to a minor, I think how they advertise those features and the risks of that sort of thing is relevant even if it doesn't refer specifically to the -- to people who are under 18.

THE COURT: What's the defense position on that?

MS. KIM: Well, that's the first time I'm hearing that proposal, so just on first reaction I think that sounds

22

okay to us.  Our proposal had been, as a compromise, to produce pitch materials that explicitly reference minors, but appreciating that there might be another nuance to it, that sounds okay to us.

We had a sort of secondary objection that there's been a lot of overt threats to bring in the investors as potential parties to this case and we were hoping to sort of guard against that, that risk and, you know, the inappropriate use of discovery to discover identifies of other potential litigants, by maybe suggesting another redaction exercise where we would assign a control number to the identity of an investor, so we're kind of avoiding that hidden risk of producing materials that --

**MR. BURNS:**  Many of the -- many of the investor's identities are public and they're alleged by name in the complaint.  We already know them, so I don't really see a basis to redact that.  And these aren't -- and we're not talking about minors here, we're talking about adult investors who are sophisticated individuals.

**THE COURT:**  Yeah, I don't see a basis for redacting investors' names.  If there's a specific privacy concern, certainly the defense can raise it, but otherwise I don't think -- I don't see that.  I think you can craft the narrowing language that at least initially will be acceptable to both sides, so you can get going on discovery.

23

All right.  Is there anything further regarding this issue, plaintiff's Request for Production No. 2?  From the plaintiff?

MR. BURNS:  No, Your Honor, thank you.

THE COURT:  All right.  How about from the defense?

MS. KIM:  No, thank you, Your Honor.

THE COURT:  All right.  Now, then the issues raised by the defendants.  The defendants want considerable amount of information about other aspects of plaintiff's social media creator career which the defendants contend is relevant to her damages claim.  And I understand the case law generally addressing that.

I don't -- I'm going to have to hear from defendants, tell me specifically in this case how it's relevant because are you saying the emotional distress that she's alleging is less severe depending upon what else she's created as an adult than -- or it may be less severe and you want to prove it's less severe by the content that she's creating as an adult?  I'm not sure I understand the relevance here.

MS. KIM:  Sure.  So I think the relevance is twofold, it's both causation and damages, and Your Honor has (indisc.) a little bit, had started to kind of articulate what our theory might be with respect to -- relevant to the damages.  But the plaintiff is a very well-known content creator who's developed a substantial on line presence by creating and disseminating

EXCEPTIONAL REPORTING SERVICES, INC

24

intimate images of herself for audiences on other platforms, including Only Fans and an application called Wide App, which is referred to in her complaint.

So there's --

**THE COURT:** As an adult?

**MS. KIM:** No, as a minor as well. So I think that Wide App in particular is something that happened as a minor. So there is an allegation in her complaint that she was scouted off of Wide App, somebody saw her content there and thought, you know, this is interesting, do you want to come over to Passes instead, where you could have a potentially lucrative career.

And then we've seen on line commentary by some of Alice's fans and followers that say, all of the content on Passes was actually migrated over from Wide App. So a lot of the allegations in this case that Passes and how originated this content or created it on her behalf and that we're the kind of only unique source of this content, and we must also be the leak of this content, to the extent that it leaked into a community and damaged her reputation. I think we're entitled to explore whether all of that actually holds up or whether the same content had actually been posed elsewhere, which would explain both the creation and also potentially create an alternative cause for the alleged leak.

And I think it's not just emotional distress damages

25

that are being alleged here, the plaintiff is alleging tens of millions of dollars of harm, and I would interpret her complaint as mostly alleging reputational harm, like she says that she posted a lot of scandalous material on Passes, somehow it got leaked into her community and it became publicly known and that caused her -- members of her high school and members of her local community to think less of her, or to somehow hold her as lower reputation.

And the fact that she's both hired to Passes and postdating Passes engaged in substantially the same type of activity creating substantially the same type of content for audience consumption would suggest that it really wasn't Passes that would have damaged her reputation, but her sprawling activity across the board on many other platforms that would have contributed to that.  And she was engaged in other reputation damaging activities which we're entitled to explore.

THE COURT:  All right.

MR. BURNS:  Your Honor, if it's okay with you my colleague Mr. George would like to address these.

THE COURT:  Certainly.

MR. BURNS:  Thank you.

MR. GEORGE:  Thank you, Your Honor.  So I think in specific response to the arguments raised I think on the substance I think there is a significant difference between nudity of a person uploading when they're a minor and either

26

non-nudity uploaded while they were a minor or any sort of content uploaded when a person was an adult. And to the extent that they're arguing that that makes all this information relevant, I think I'm a little confused by that.

And then two more points, the second point is that I think we should focus on the specific requests that were raised in this particular set of requests for production and the interrogatories. And these requests are for all of her social media content, regardless of any sort of relation to the complaint from January of 2024 to the present.

And I think our primary objection to that is, you know, we're willing to produce social media content that's relevant to this case and --

THE COURT: But how do you define -- what social media content of your client do you agree is relevant?

MR. GEORGE: So I -- certainly the content that's at issue in this action, content related to Passes. Any sort of -- we have agreed -- there are a few No. 19 asks for content or asks for any communications related to emotional distress suffered by plaintiff here, so to the extent social media content, you know, contemporaneous with the facts alleged in this complaint relate to her emotional distress I think we're willing to discuss that.

So any of that information I think would be relevant and either covered by their other request for production or

something we would be willing to meet and confer about.  You know, to the extent they're asking everything I think the cases that the Passes defendants cite themselves state that that's improper.  EEOC v Simply Storage for example on 270 FRD 435, to be sure anything that a person says or does might in some theoretical sense be reflective of her emotional state, but that is hardly justification for requiring a production of every thought she may have produced to writing or indeed the deposition of everyone she may have talked to.

The Denny's (phonetic) case cites similar language which itself cites to a Central District of California case, that is Mailhoit v Home Depot USA, 285 FRD 566 which states similarly that the obvious which is that a party is entitled only to information that's relevant, the fact that it's been posted on social media doesn't make it relevant.

**THE COURT:**  All right.  As with the other discovery requests, it appears that there is a subset of the plaintiff's social media posts that are relevant.  I agree that the request for everything is overbroad and insufficiently particular and it sounds -- even the plaintiff agrees that some of it is relevant.

I think that you need to discuss this and see if you can come up with a way to narrow this or competing proposals, as a way to narrow this and you can raise that with the Court.  But certainly given what the defense has argued, I think the

28

plaintiff should have a good understanding of their theory of relevance and I agree with them. So I think you should keep that in mind and see if you can craft some subset of all social media that is relevant and proportional.

MR. GEORGE: Understood, Your Honor. That makes sense to us.

MS. KIM: Just as well, just one question of clarification. To the extent that we're not able to agree in full and we do end up in the world where we have to have competing proposals, would that be submitted to Your Honor in the same manner as this type of e-mail transmission, or is that something that would be fully briefed?

THE COURT: We're going to discuss this at the end.

MS. KIM: Okay.

THE COURT: I will -- when we're finished as to how you would like to proceed. The -- I believe this is the final set of material is the plaintiff's -- the defendant seek information about plaintiff's relationship with her current manager, this is in -- both an interrogatory and request for production of documents.

And I want to hear from the plaintiffs on this because I understand the defense argument as to how this is relevant, particularly to, as I say, the veracity of her allegations about the relationship with Celestin if that's how you pronounce it and his affiliates. So let me hear -- I want

to hear from the plaintiff on this why -- you're saying they're not relevant because she entered into the contracts as a minor and so they're unenforceable?

**MR. BURNS:** I think that's part of it. I think the broader point though, Your Honor, is that the theory of the Passes' defendant's case on these seem to be -- in our complaint, in our second amended complaint we alleged that Celestin was an agent of the Passes defendants.

**THE COURT:** Uh-huh.

**MR. BURNS:** And they argue in opposition that he was not, he was a third party talent manager, we understand that's what their argument will be. I think we are just a little bit - we disagree that plaintiff's communications with her subsequent management will shed any light on any sort of agency relationship between Celestin and the Passes' defendants.

We think the relevant information on those points will be any sort of communications and agreements between Celestin and the Passes' defendants themselves. It's hard for us to understand --

**THE COURT:** (Inaudible) relevant.

**MR. BURNS:** Sorry, Your Honor?

**THE COURT:** Celestin's communications with your client and with Passes.

**MR. BURNS:** Yes, yes.

**THE COURT:** But they're both relevant.

30

MR. BURNS: Yes, yes, and we will -- we have agreed to produce any sort of communications, any sort of relevant communications between Celestin and plaintiff.

THE COURT: So your objection is not to the communications, it's just to the contracts, the terms of the contract?

MR. BURNS: We object to the contract and we object to the communications to the extent that they don't relate to Passes. We don't think that her dealings with her later management will shed any light on the agency relationship or the relationship she had with Alec Celestin. And we think that the --

THE COURT: And you know that because you've reviewed those communications?

MR. BURNS: We haven't fully reviewed those communications yet, but I think it's just -- I think it would be difficult for us to understand how those communications could be relevant. If, if, to be clear, if plaintiff says, you know, when I was doing with Alex, Alex Celestin, you know, this is how it was when I was posting on Passes. This is how it was. Then that would be relevant, of course, but you know, if she's just -- you know, negotiating deals talking about her content as an adult with her later management, then we don't really think that has any bearing on the agency relationship that may or may not have existed.

31

THE COURT: I'll hear from the defense on this.

MS. KIM: Your Honor, I think as we explained in our cover e-mail, this one seems -- seemed a little bit obvious to us. One, because these are the managers that were disclosed in plaintiff's initial disclosures as possessing relevant information about similar activity to what she posted on Passes and her career as a content generator as a whole. And so it was kind of obvious to us that we should ask for these communications with the people who were disclosed in her own initial disclosures.

And then I think, you know, the heart of this case is the agency relationship between Alec Celestin and/or Passes or Alice Rosenblum. You know, there's obviously a disagreement right now as to who her agency -- or who the relationship was with, whether Alec was the agent of Alice, the plaintiff or whether he was the agent of Passes, or whether there was some kind of hybrid of some kind.

But having her communications and getting more insight into her relationship with her other agents, who we think are similarly situated to Alec Celestin will certainly create a contrast or show whether there are similar differences between the way that she interacted with Mr. Celestin, which she claims somehow they didn't create an agency relationship, versus her other managers with whom she concedes she had an agency relationship.

32

THE COURT:  Let me just confirm that plaintiffs are not objecting to production of the communications and agreements with Celestin; is that correct?

MR. BURNS:  That is --

MS. KIM:  These are her other managers.

THE COURT:  Other managers.  So as to Celestin, absolutely relevant, so I don't see the plaintiffs as objecting to that, so --

MR. BURNS:  Yes, Your Honor.

THE COURT:  -- the other managers at the -- who were managing her simultaneously -- at the same time or subsequently --

MR. BURNS:  Not simultaneously, Your Honor, afterwards.  After the events of this litigation.

THE COURT:  All right.  I'll hear any further argument from the defense.  Quite frankly it sounds a bit speculative.  Certainly all the communications with Celestin are relevant, but agreement to communications with -- when she was an adult with subsequent management I don't see at this point how that is relevant.  You may develop some discovery that establishes that it's relevant, but right now, it sounds like your argument rests on -- a bit on speculation.

With regard to Celestin, all agreements, all communications that seem obvious that that is relevant and proportional and should be produced.

33

**MS. KIM:** I think we would be comfortable with sort of the agreement that plaintiffs offered on their affirmative request, which is, you know, we can hold these in abeyance and if it looks like something that's worth pursuing later in the discovery, we can revisit it at that time.

**THE COURT:** Yes, absolutely. All right. So you can submit a proposed order, based on what you have stated today. Now, we can set a subsequent discovery conference to address issues that have arisen based on productions subsequent to today's conference.

Alternatively, if you would like, based on today's conference you can submit briefing pursuant to -- you have to follow Local Rule 37 which is a joint stipulation. I offer the informal discovery conference procedure because it is often a way to just quickly resolve issues that the parties don't need to spend the lawyer time and the client money briefing.

But if there is an issue today, that you would like to brief, the parties seeking to compel the information can file a motion to compel for purposes of Local Rule 37, the informal discovery conference qualifies as the meeting of counsel, but the remainder of the rules regarding Local Rule 37 apply.

Alternatively, if you would like to raise the -- further address these issues after you've met and conferred and there's a production, we can set a discovery status conference

34

today or you can seek another informal discovery conference subsequently if you'd rather not set one today.  I'd like to do whatever would help you all most effectively manage your case and get discovery moving.

So what is the plaintiff's preference?

MR. BURNS:  So I think we probably don't need to set a subsequent conference.  I think we're going to try to get the ball rolling on production, but there is an ongoing issue related to how everyone's going to handle potential CSEM that's in their own clients materials and we're working on how to deal with that, but we haven't figured it out yet.  So it may be a little premature to have another discovery conference.

And so I'd say we will submit a proposed order on things that we can agree to and if there's outliers of things where we can't and are fully ripe, that we've discussed today then I think we would submit, you know, the briefing in accordance with the local rule on that.

THE COURT:  All right.  Is that acceptance to the defense?

MS. KIM:  Yes, that's acceptable to us.  Hopefully we can resolve most of these and if there's anything that remains, we're fine with the briefing.

THE COURT:  All right.  Then I think that addresses everything.  Is there anything further from the plaintiff?

MR. BURNS:  No, Your Honor, thank you very much.

35

THE COURT:  All right.  Anything further from the defense?

MS. KIM:  No, Your Honor, thank you.

THE COURT:  All right.  Thank you, counsel.

THE CLERK:  Court's in recess.

**(Proceedings concluded at 11:51 a.m.)**

**\* \* \* \* \***

36

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **May 15, 2026**

          **Signed**                                                    **Dated**

*TONI HUDSON, TRANSCRIBER*