UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-8457-JLS-PDx Date. July 13, 2026

Title *Alice Rosenblum v. Passes, Inc., et al.*

Present: The Honorable: Patricia Donahue, United States Magistrate Judge

| Isabel Verduzco | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorney Present for Plaintiff: | Attorneys Present for Defendants |
|---|---|
| n/a | n/a |

**Proceedings (In Chambers):** **Order Re (1) Plaintiff's Motion to Compel Response to Certain Interrogatories, and (2) Defendant Passes' Motion to Compel Documents Dkt. Nos. 177, 178**

Before the Court are (1) Plaintiff's Motion to Compel Response to Certain Interrogatories, and (2) Defendant Passes' Motion to Compel Documents. Dkt. Nos. 177, 178. The Court has considered the pertinent pleadings and the arguments of counsel at the informal discovery conference on May 8, 2026, and the hearing on the above-listed motions on July 10, 2026. The Court rules as set forth on the record and as set forth below.

## I. Background

Alice Rosenblum ("Plaintiff") alleges receipt, distribution and possession of child pornography involving Plaintiff, nonconsensual distribution of intimate content involving Plaintiff, intentional infliction of emotional distress, negligence, negligent hiring, supervision, or retention of employee, engagement in human trafficking, civil conspiracy, and three counts of declaratory judgment. *See* Second Amended Complaint ("SAC"),

Dkt. No. 147. Plaintiff alleges, among other things, severe emotional distress, loss of privacy, reputational harm, and economic injury.

## II. Legal Standard

Parties may obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.*

## III. Plaintiff's Motion to Compel Response to Certain Interrogatories

Plaintiff moves to compel Defendants Passes, Inc. ("Passes") and Lucy Guo (collectively the "Passes Defendants") to respond to Plaintiff's Interrogatories to Passes Nos. 6, 8, 13, and 14, and Plaintiff's Interrogatories to Guo Nos. 12 and 14.

Interrogatory No. 8 calls for Passes to describe the process through which "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles can be overridden, disabled or otherwise restricted, and to identify all instances thereof and the rationale for each such decision. Passes has stipulated to amend its response to provide additional information regarding other minor Creators, if any, whose accounts were flagged for actual or potential child sexual abuse material

("CSAM"). Based on Passes' arguments in its brief and at the hearing, the Court understands Passes' position to be that it will provide information responsive to Interrogatory No. 8 regarding the account of any minor Creator that contains suspected or actual CSAM. Plaintiff has not established the relevance of information called for by Interrogatory 8 for accounts that do not contain actual or suspected CSAM.

Plaintiff argues that Passes' proposed limit on its interrogatory response will not capture all relevant material because Passes turned off its machine learning classifiers designed to detect and remove any CSAM or other inappropriate material from its platform. In other words, Plaintiff contends that by limiting the scope of its interrogatory response to accounts that its algorithm previously detected as containing actual or potential CSAM, Passes may omit relevant information because in some instances, Passes had disabled that detection procedure. The Court agrees that if the interrogatory response was limited as Plaintiff contends, it would be impermissibly narrow. But Passes will not so limit the scope of its response; Passes agrees that it will not limit its response to accounts that its algorithm previously detected as containing actual or potential CSAM. Passes will conduct a manual review of all content posted by minor Creators and provide the information responsive to the interrogatory regarding the account of any minor Creator that contains suspected or actual CSAM. In response to Interrogatory No. 8, Passes will (1) describe the process through which "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles can be overridden, disabled, or otherwise restricted, as those processes related to minor Creators who posted or distributed and/or whose accounts contain or contained actual or potential CSAM; and (2) identify all instances, if any, where those procedures or bans were so

overridden, disabled, or restricted for such minor Creators, and provide the rationale for such decision.

In responding to all of the disputed interrogatories, Passes will not rely on machine learning classifiers. The review will be manual. As the Court cautioned at the hearing, Passes' review must be thorough. If Plaintiff concludes, after reviewing Passes' response to Interrogatory No. 8, that Passes' review has not been thorough, Passes may raise that issue via an informal discovery conference pursuant to this Court's procedures.

Interrogatory No. 13 seeks specified information for "any minor Creator profiles that were suspended, removed or deactivated from Passes for posting socially explicit content or including banned words in captions or messages." Dkt. No. 177 at 25. Passes has stipulated to amend its written response to provide additional information regarding other minor creators, if any, whose accounts were flagged for potential or actual CSAM. As discussed above, Passes will not limit this review to minor Creator accounts previously flagged by the algorithm as containing potential or actual CSAM. Passes will conduct a manual review of all minor Creator accounts for responses to Interrogatory No. 13, as discussed above for Interrogatory No. 8.

Plaintiff argues that Passes' limitation is unreasonably narrow because if an account was ostensibly suspended for posting banned words, it is more likely that the account also may have posted CSAM which Passes did not detect. However, if a minor Creator's account has potential or actual CSAM, the manual procedure that Passes will employ in responding to this and other interrogatories will capture that account, even if Passes' mechanical procedure did not detect it previously. And Plaintiff does not provide a basis for the argument that an account with banned words unrelated to the subject

matter of this action would contain suspected or actual CASM. If Plaintiff concludes, after reviewing Passes' response to Interrogatory No. 13, that Passes' review has not been thorough, Passes may raise that issue via an informal discovery conference pursuant to this Court's procedures.

For Interrogatory No. 14, Passes has stipulated to amend its written response to provide additional information regarding other minor Creators, if any, whose accounts were flagged for potential or actual CSAM. The Court agrees and so limits Interrogatory No. 14.

Plaintiff seeks specified information for all accounts where "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Creator profiles was overridden, disabled, or otherwise restricted, regardless whether the purpose was potential or actual CSAM or another reason. But those other reasons do not appear to be relevant to the claims or defenses in this case. For example, if the procedures were overridden at the request of a minor accountholder who had been emancipated and whose account did not have actual or potential CSAM, information regarding that account would not be relevant under Rule 26(b). Passes will conduct a manual review, as discussed above, for information responsive to Interrogatory No. 14. If Plaintiff concludes, after reviewing Passes' response to Interrogatory No. 14, that Passes' review has not been thorough, Passes may raise that issue via an informal discovery conference pursuant to this Court's procedures.

For Interrogatory No. 6, Passes has stipulated to amend its written response to provide additional information regarding other minor Creators, if any, whose accounts were flagged for potential or actual CSAM.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-8457-JLS-PDx Date. July 13, 2026

Title *Alice Rosenblum v. Passes, Inc., et al.*

Plaintiff opposes this limitation on the grounds that Passes turned off its machine learning classifiers for accounts managed by individuals who recruited minors to the platform. However, Passes will conduct a manual review for information responsive to Interrogatory No. 6. As discussed above, the manual review requirement should address Plaintiff's concern. Passes will provide the requested information about recruiters of minor Creators who posted or distributed CSAM, regardless of whether that activity was previously located by automated systems. If Plaintiff concludes, after reviewing Passes' response to Interrogatory No. 6, that Passes' review has not been thorough, Passes may raise that issue via an informal discovery conference pursuant to this Court's procedures.

For Interrogatory No. 12 to Guo, Guo has stipulated to amend her written response to provide additional information regarding other minor Creators, if any, whose accounts were flagged for potential or actual CSAM. In response to Interrogatory No. 12, Guo will provide all instances in which Guo authorized or executed any overriding, disabling, or restricting of "Verifiable Parent Consent" procedures or Passes' direct messaging ban for minor Created profiles that contained potential or actual CSAM. Guo will identify responsive information based on Passes' manual review. For the reasons discussed above, Plaintiff has not shown the relevance of whether Guo engaged in this conduct for minor Creator profiles that did not contain potential or actual CSAM.

Interrogatory No. 14 asks Guo to identify her role and/or involvement in all instances where a minor Creator profile was suspended, removed, or deactivated from Passes and the reason for such suspension, removal or deactivation. Guo has stipulated to amend her response to this interrogatory to provide additional information regarding other minor Creators, if any,

whose accounts were flagged for potential or actual CSAM. Plaintiff has not shown the relevance of the suspension, removal or deactivation of minor Creators' accounts for reasons unrelated to the subject matter of this case.

Accordingly, for the reasons discussed at the hearing and set forth above, Passes and Guo are ordered to amend their responses to the disputed interrogatories consistent with this Order.

## IV. Defendant Passes' Motion to Compel Documents Reflecting Plaintiff's Online Activity On Other Platforms

Passes moves for supplemental responses to its Requests for Production of Documents ("RFPs") 7, 8, 9, 10, and 11. Specifically, Passes moves to compel the subset of documents responsive to these RFPs that contain "sexually explicit or sexually suggestive content posted on other platforms, including without limitation all pornographic materials of Plaintiff transmitted or sold on any other platform." Dkt. No. 178 at 26.[1] Passes argues that this information is relevant to Plaintiff's claims for severe emotional distress, loss of privacy, and reputational harm. Plaintiff seeks damages between $30 million and $40 million.[2]

In response to these disputed RFPs, Plaintiff agreed to produce documents relating to the same or similar CSAM that Plaintiff alleges was

[1] The Court uses the page number placed on the document by the electronic docketing system.

[2] In her Initial Disclosure in this action in the Southern District of Florida, before it was transferred to this district, Plaintiff estimated damages "as at least $100 million." *See* Dkt. No. 179-2 at 14. In the Joint Rule 26(f) Report filed in this district, Plaintiff estimates provable damages "of at least approximately between $30 million and $40 million." *See* Dkt. No. 149 at 9.

posted on Passes and instances of alleged abuse or other improper conduct directed against Plaintiff and occurring on other social media platforms. But Plaintiff contends that any decision she made as a consenting adult to voluntarily create lawful content does not negate the harm of having been exploited when she was a minor and does not entitle Passes to discover every aspect of her career. The resolution of whether Plaintiff's creation and posting of sexually explicit content as an adult is relevant to her claims here tuns on the facts. Plaintiff alleges that she took photos and videos of herself engaged in sexually explicit conduct and uploaded the videos and images to a Passes Vault database assigned to her profile at the direction of Defendants Celestin and Ginoza between August 13, 2024, and September 21, 2024. SAC ¶ 113. During this time period, Defendants Celestin and Ginoza aggressively marketed these images and videos and they were distributed widely, such that they reached Plaintiff's high school community. *Id.* ¶¶ 114-131. On September 21, 2024, Plaintiff turned 18. She left Passes and joined OnlyFans, and she continues to regularly create and sell a high volume of sexual images of herself.

The fact that Plaintiff creates and sells sexual images of herself as an adult is relevant to Plaintiff's claims of severe emotional distress, loss of privacy, and reputational harm in light of the proximity of the alleged events – the alleged sexual exploitation occurred in the six weeks before Plaintiff turned 18, and Plaintiff's creation and sale of sexual images of herself began as soon as she turned 18. This latter conduct is relevant to the defense to her claim that as an 18 (and now 19) year-old adult who creates and distributes sexual images of herself, she has suffered and continues to suffer severe emotional distress, loss of privacy, and reputational harm as a result of Defendants' inducing her to engage in sexually explicit conduct in the six weeks prior to her turning 18. The Court notes that this determination of

relevance is pursuant to Rule 26(b) and pertains to discovery, not to admissibility at trial. *See* Fed. R. Civ. P. 26(b) (information "need not be admissible in evidence to be discoverable").

As discussed at the hearing, Passes' RFPs, as amended, seek sexually explicit or sexually suggestive content. "Sexually explicit conduct" is a defined term. *See* 18 U.S.C. § 2256(2). Sexually suggestive is not a statutorily defined term. Plaintiff argues that producing all of the sexually suggestive material would be unduly burdensome because there is a considerable volume. As Passes noted, the considerable volume is relevant to Plaintiff's severe emotional distress, loss of privacy, and reputational harm claims. Nonetheless, Plaintiff requests a limiting principle for the category of sexually suggestive material. The parties will meet and confer in an effort to define this category. If they cannot reach agreement, the parties will each propose a resolution for this issue.

Accordingly, for the reasons discussed at the hearing and set forth above, Plaintiff is ordered to respond to the disputed RPFs consistent with this Order, and the parties will meet and confer as noted above.

IT IS SO ORDERED.