Jose Teurbe-Tolon (pro hac)
*jose@xanderlaw.com*
Xander Law Group, P.A.
25 SE 2nd Avenue, Suite 808
Miami, Florida 33131
Phone: (305) 767-2001 | Fax: (855) 926-3370

Dustin A. Huffine (SBN 300388)
*dhuffine@bdhch.com*
BOWSE DAVIS HUFFINE CHUNG & HULL LLP
One World Trade Center, 8th Floor
Long Beach, CA 90831
Phone: (562) 676-4315 | Fax: (213) 814-1448
Attorneys for Defendant Lani Ginoza

*Additional Counsel listed on Next Page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALICE ROSENBLUM,

Plaintiff,

v.

PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual, ALEC CELESTIN, an individual, and LANI GINOZA, an individual,

Defendants.

Case No.: 2:25-cv-08457-JLS-PD

**DISCOVERY MATTER:**

**JOINT STIPULATION REGARDING PLAINTIFF ALICE ROSENBLUM'S MOTION TO COMPEL DOCUMENTS FROM DEFENDANT LANI GINOZA, ASSERTING FIFTH AMENDMENT PRIVILEGE**

Judge: Hon. Patricia Donahue
Ctrm: 580
Hearing Date: October 16, 2026
Hearing Time: 1:00 PM

Fact Discovery Cutoff: Feb. 5, 2027
Pretrial Conference: July 9, 2027
Trial Date: Not Set

CLARK SMITH VILLAZOR LLP
Rodney Villazor (310212)
666 Third Avenue, 21st Floor
New York, New York 10017
Tel: (212) 377-0850
Email: rodney.villazor@csvllp.com

THE FREEDMAN FIRM PC
Michael G. Freedman (281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com
*Attorneys for Plaintiff Alice Rosenblum*

# TABLE OF CONTENTS

I. INTRODUCTORY STATEMENTS ........................................ 1

A. Defendant Lani Ginoza's Introductory Statement ........................................ 1

B. Plaintiff Alice Rosenblum's Introductory Statement ........................................ 1

II. THE REQUESTS FOR PRODUCTION AT ISSUE ........................................ 2

A. Responses Based on Solely on *Hubbell* ........................................ 2

B. Responses Based on *Hubbell* and CSAM Concerns ........................................ 21

III. DEFENDANT'S LANI GINOZA'S ARGUMENT REGARDING ASSERTION OF THE FIFTH AMENDMENT ACT-OF PRODUCTION PRIVILEGE ........................................ 27

IV. PLAINTIFF'S ARGUMENT ........................................ 36

A. Defendant's Articulation of the Act of Production Doctrine Is Incorrect 36

B. Defendant Relies Only on Foregone Conclusion Arguments ........................................ 37

C. Defendant's "Proposed Resolutions" as to Each Request Are Boilerplate and Unworkable ........................................ 38

D. Even Assuming the Act of Production Would Be Self-Incriminating, Defendant's Arguments Fail ........................................ 39

E. Conclusion ........................................ 40

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Columbia Pictures Indus., Inc. v. Galindo*, 2022 WL 3009463 (C.D. Cal. June 14, 2022) .......... 33

*Fisher v. United States*, 425 U.S. 391 (1976) .......... passim

*Goldwater Bank, N.A. v. Elizarov*, 2022 WL 17081192 (C.D. Cal. Sept. 21, 2022) .......... 4

*In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905 (9th Cir. 2004) .......... passim

*Matter of Search of a Residence in Aptos, California 95003*, 2018 WL 1400401 (N.D. Cal. Mar. 20, 2018) .......... 5

*Moore v. Gilead Scis., Inc.*, 2011 WL 5572975 (N.D. Cal. Nov. 16, 2011) .......... 4, 5, 8, 11

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) .......... 35

*United States v. Beverly*, 2020 WL 2542872 (C.D. Cal. Jan. 28, 2020) .......... 8

*United States v. Hubbell*, 530 U.S. 27 (2000) .......... passim

**Statutes**

U.S. Const. amend. V .......... 22, 24, 27

# I. INTRODUCTORY STATEMENTS

## A. Defendant Lani Ginoza's Introductory Statement

Plaintiff served Defendant with Requests for Production, to which Defendant served written Fifth Amendment objections to all Requests. Plaintiff challenged those objections, and the Parties thereafter participated in an informal discovery conference with the Court concerning Defendant's assertion of the Fifth Amendment privilege.

Following the informal discovery conference and further review of the applicable law, Defendant revised her responses and narrowed her assertion of the Fifth Amendment privilege. Defendant now maintains the privilege only as to Requests for Production #1, 2, 3, 4, 6, 7, 17, 18, 19, 20, and 24. The remaining requests are objected to based on Defendant's Fifth Amendment Privilege and they fall within two categories- 1. Requests that are too overbroad and general in violation of the Supreme Court's ruling in *United States v. Hubbell*, 530 U.S. 27 (2000) and therefore the invocation of the privilege is appropriate and 2. Those that in addition to running afoul of *Hubbell* also directly request production in which the act of production by Defendant would be testimonial confirmation of the existence, custody, and authenticity of these documents or items would be incriminating or furnish a direct link to evidence that would be incriminating.

The Parties therefore submit this Stipulation setting forth the remaining disputed Requests, and the Parties' respective positions concerning Defendant's Fifth Amendment objections.

## B. Plaintiff Alice Rosenblum's Introductory Statement

At its core, Defendant's refusal to produce documents in response to the RFPs identified below is because she fears the *contents* of those documents may be incriminating. But as the Supreme Court and the Ninth Circuit have made clear time and time again, a party cannot invoke the Fifth Amendment privilege against self-incrimination based on documents' contents. In her overreliance on

the Supreme Court's limited articulation of the act of production in *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant takes great pains to fit every Request under that umbrella. Under Defendant's expansive view of *Hubbell*, there would be no distinction between a document's *contents* versus the act of producing that document. The case law simply does not support a reading of the privilege as unlimited as Defendant argues, as the Court intimated at the July 23, 2026 Informal Discovery Conference ("IDC").

Pursuant to C.D. Cal. Local Rule 37-1, the parties have completed a pre-filing conference of counsel and attended an IDC before this Court on July 23, 2026. Plaintiff respectfully submits that, in line with the Court's guidance at the IDC requesting briefing on an RFP-by-RFP basis, the joint stipulation presents Defendant's articulation of her Fifth Amendment argument as to each RFP, followed by Plaintiff's corresponding responses.

## II. THE REQUESTS FOR PRODUCTION AT ISSUE

### A. Responses Based on Solely on *Hubbell*

***Request #1:***

All Communications and correspondence between You and Alec Celestin regarding any Passes-related matter, including, but not limited to, e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any and all other communication systems.

***Response to Request #1:***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting documents. Rather, Defendant asserts the privilege because compliance with this particular Request would require Defendant herself to determine whether responsive communications exist; identify which of her communications with

Alec Celestin concern "any Passes-related matter"; determine where such communications are located among e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any other communication systems; and identify, select, and assemble those communications for production. The compelled act of identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the existence, location, possession or control, authenticity, and responsiveness of the documents produced. See *Hubbell*, 530 U.S. at 36, 41–43. Nor does the identification of Alec Celestin or the general subject of "any Passes-related matter," standing alone, render the existence and possession of the particular communications sought a foregone conclusion. Unlike *Fisher v. United States*, 425 U.S. 391 (1976), where the Government already knew of the existence and location of the particular documents sought and could independently establish their existence and authenticity, this Request does not identify particular communications already known to exist or establish Defendant's present possession or control of them. See *Hubbell*, 530 U.S. at 44–45 (distinguishing *Fisher* where the Government had not demonstrated prior knowledge of the existence or whereabouts of the specific documents sought to be produced). Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled act of identifying, selecting, and producing documents responsive to this Request.

**<u>Defendant's Proposed Resolution</u>**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell*. With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the

foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request communications related to the Plaintiff, or other specific topics of communication.

**Plaintiff's Position on Request #1**

Defendant's argument fails because it simply recites language from *United States v. Hubbell*, 530 U.S. 27 (2000) without articulating how Request #1 actually invokes self-incrimination. While she states that "identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the existence, location, possession or control, authenticity, and responsiveness of the documents produced," this is no more than a conclusory recitation of *Hubbell*. Nowhere does Defendant identify what "contents of her own mind" would be searched, nor what "potentially incriminating facts" may be communicated by disclosure. *Hubbell*'s narrow holding regarding when the act of production may itself be compelled testimony is limited to when admitting the "existence, custody, and authenticity" of the documents could be incriminating. But it is not inherently a crime to possess Communications with Alec Celestin about any "Passes-related matter." *Moore v. Gilead Scis., Inc.*, 2011 WL 5572975, at *7 (N.D. Cal. Nov. 16, 2011) ("[I]t was not a crime to make a wire transfer, use the phone, or possess corporate records." (citation omitted)); *Goldwater Bank, N.A. v. Elizarov*, 2022 WL 17081192, at *4 (C.D. Cal. Sept. 21, 2022) (rejecting self-incrimination argument because "there is nothing inherently criminally incriminating about a tax lien").

Rather, what would be possibly incriminating is the *contents* of those Communications. And the contents of documents are exactly what the Fifth Amendment does *not* protect. *See Hubbell*, 530 U.S. at 36 (respondent "could not avoid compliance with the subpoena served on him merely because the demanded

documents contained incriminating evidence"); *see also Moore*, 2011 WL 5572975, at *8 (finding the Fifth Amendment privilege was inapplicable as "it is not a crime to possess the documents requested"). In arguing that admission of the existence, custody, and authenticity of these Communications would be self-incriminating, Defendant attempts to repackage what is ultimately an argument about the Communications' possible contents. The Court should not accept that attempt.

Finally, the Court need not reach Defendant's argument that the existence of these documents is not a foregone conclusion, as the act of producing these documents would not involve testimonial self-incrimination. *See, e.g.*, *Matter of Search of a Residence in Aptos, California 95003*, 2018 WL 1400401, at *5 (N.D. Cal. Mar. 20, 2018) (reaching the foregone conclusion issue only after determining that the evidence at issue would implicate the Fifth Amendment); *see also* Villazor Decl., Ex. 1 (July 23, 2026 IDC Transcript at 11:3-5.) However, should the Court determine that the act of producing these documents constitutes self-incrimination, which it does not, the foregone conclusion exception would nonetheless apply. Plaintiff need not have knowledge of the existence and location of "each and every responsive document." *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004). Here, Plaintiff can independently establish that Defendant Ginoza communicated with Defendant Celestin regarding Passes matters, as Plaintiff herself is in possession of Communications such as text messages where both Defendants were on the text thread. *See, e.g.*, Villazor Decl., Ex. 2 (discussing creation of content depicting Plaintiff); Villazor Decl., Ex. 3 (discussing bypassing Passes' direct messaging ban for minor Creators); Villazor Decl., Ex. 4 (Defendant Celestin introducing Plaintiff to Defendant Ginoza).

***REQUEST #2***

All Communications and correspondence between You and Alec Celestin in August and September 2024, including, but not limited to, e-mail, text message, iMessage, Signal, WhatsApp, and any and all other communication systems.

***Response to Request #2*:**

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting communications. Rather, compliance with this particular Request would require Defendant herself to determine whether communications with Alec Celestin exist during August and September 2024; identify and locate any such communications across e-mail, text message, iMessage, Signal, WhatsApp, and any other communication systems; and select and assemble those communications for production. The compelled act of identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the existence, location, possession or control, and authenticity of the communications produced. Such compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. See *Hubbell*, 530 U.S. at 36–38, 41–43.

Nor does Plaintiff's identification of Alec Celestin and the two-month period of August and September 2024, standing alone, render the existence and possession of the particular communications sought a foregone conclusion. Although those limitations define the universe Defendant is being compelled to search, they do not identify particular communications already known to exist, establish on which communication systems any such communications occurred, identify their dates or contents, establish whether such communications remain in

existence, or establish Defendant's present possession or control of them. This Request is therefore distinguishable from *Fisher v. United States*, 425 U.S. 391 (1976), where the Government already knew of the existence and location of the particular and specific documents sought and could independently establish their existence and authenticity. See *Hubbell*, 530 U.S. at 44–45. Here, compelling Defendant to identify and produce whatever communications fall within the specified person and date range would require Defendant herself to supply through the act of production facts concerning what communications exist, where they are located, and whether they are within her possession or control. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled act of identifying, selecting, and producing documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell*. With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request communications related to the Plaintiff, or other specific topics of communication.

**Plaintiff's Position on Request #2**

Plaintiff incorporates by reference her position as to Request #1 in full. Again, Defendant's argument fails because she does not identify what "contents of her own mind" would be searched, nor what "potentially incriminating facts" may be communicated by the act of production itself. As with Request #1, it is not itself a crime to possess Communications with Alec Celestin. *See Hubbell*,

530 U.S. at 36 (respondent "could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence"); *see also Moore v. Gilead Scis., Inc.*, 2011 WL 5572975, at *8 (N.D. Cal. Nov. 16, 2011) (finding the Fifth Amendment privilege was inapplicable as "it is not a crime to possess the documents requested").

For the same reasons, Defendant's argument that "compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution" is also inapposite. The "act of production," not the contents of the production, must be "the first step in a chain of evidence," *Hubbell*, 530 U.S. at 42, and here, the act of production does not constitute testimonial self-incrimination. Moreover, a conclusory statement that something could "lead[] to criminal prosecution" is insufficient. *United States v. Beverly*, 2020 WL 2542872, at *6 (C.D. Cal. Jan. 28, 2020) ("[T]he Beverlys contend, in very general terms, that the investigation might uncover evidence the IRS could use to charge them with crimes.").

Finally, as with Request #1, though the Court need not reach the foregone conclusion issue, Plaintiff is able to independently establish the existence of Communications between Defendants Ginoza and Celestin as Plaintiff is in possession of Communications in August and September 2024, such as text messages, where both Defendants were on the text thread. *See, e.g.*, Villazor Decl., Ex. 2 (discussing creation of content depicting Plaintiff); Villazor Decl., Ex. 3 (discussing bypassing Passes' direct messaging ban for minor Creators); Villazor Decl., Ex. 4 (Defendant Celestin introducing Plaintiff to Defendant Ginoza).

***REQUEST #3***

All Communications and correspondence between You and any Passes employee or Agent (including, but not limited to, Lucy Guo) regarding any Passes-related matter, including, but not limited to, e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any and all other communication systems.

***Response to Request #3*:**

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting communications. Rather, compliance with this particular Request would require Defendant herself to identify the individuals who constitute Passes employees or agents; determine whether communications with those individuals exist; determine which of those communications concern "any Passes-related matter"; identify and locate such communications across e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any other communication systems; and select and assemble those communications for production.

The compelled act of identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the identity of persons with whom Defendant communicated regarding Passes, the existence and location of those communications, Defendant's possession or control of them, and the authenticity and responsiveness of the communications produced. Such compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. See *Hubbell*, 530 U.S. at 36–38, 41–43.

Nor does Plaintiff's identification of Lucy Guo as one possible Passes employee or agent render the documents sought by this Request a foregone conclusion. The Request extends to communications with *"any Passes employee or Agent"* and concerning *"any Passes-related matter,"* without identifying the particular communications Plaintiff already knows to exist. Plaintiff's identification of a category of persons and subject matter defines the universe Defendant is being compelled to search; it does not independently establish which

responsive communications exist, with whom they occurred, through which communication systems they occurred, where they are located, whether they remain in existence, or whether they are presently within Defendant's possession or control.

This Request is therefore distinguishable from *Fisher v. United States*, 425 U.S. 391 (1976), where the Government already knew of the existence and location of the particular documents sought and could independently establish their existence and authenticity. See *Hubbell*, 530 U.S. at 44–45. Here, Defendant's compliance would itself supply information Plaintiff seeks to obtain by requiring Defendant to identify the relevant persons, determine what communications with those persons exist and concern Passes, and disclose through production that Defendant possesses or controls the resulting communications. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled act of identifying, selecting, and producing documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell*. With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request communications related to the Plaintiff, or other specific topics of communication.

**Plaintiff's Position on Request #3**

Plaintiff incorporates by reference her positions as to Requests #1 and #2 in full. As with the preceding Requests, it is not itself a crime to possess

Communications with Passes employees or Agents. *See Hubbell*, 530 U.S. at 36 (respondent "could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence"); *see also Moore v. Gilead Scis., Inc.*, 2011 WL 5572975, at *8 (N.D. Cal. Nov. 16, 2011) (finding the Fifth Amendment privilege was inapplicable as "it is not a crime to possess the documents requested").

Further, Defendant's argument that she would have to "identify the individuals who constitute Passes employees or agents; determine whether communications with those individuals exist; determine which of those communications concern 'any Passes-related matter'; identify and locate such communications across e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any other communication systems; and select and assemble those communications for production" merely describes her general discovery obligations as a party to this action. None of these described steps invoke Defendant's Fifth Amendment privilege—the act of identifying Passes employees or agents and locating responsive communications is simply the standard document review and production process. That Defendant is concerned about the substance of any Communications she may locate is plainly not protected by the act of production doctrine.

Finally, though the Court need not reach the foregone conclusion doctrine, Plaintiff is aware of the existence and authenticity of Communications between Defendant and Defendant Lucy Guo, Passes' CEO, and that such Communications would be in Defendant Ginoza's possession. Plaintiff has knowledge that Defendant Ginoza had previously been "Passes Director of Talent" and that she "reported directly to Guo," (Second Amended Complaint ("SAC") at ¶ 19)—that Defendant Ginoza would therefore have Communications and correspondence with Defendant Guo regarding "any Passes-related matter" is self-evident.

***REQUEST #4***

All Communications and correspondence between You and any Passes employee or Agent (including, but not limited to, Lucy Guo) in August and September 2024, including, but not limited to, e-mail, text message, iMessage, Signal, WhatsApp, and any and all other communication systems.

***Response to Request #4***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting communications. Rather, compliance with this particular Request would require Defendant herself to identify the individuals who constitute Passes employees or agents; determine whether communications with those individuals exist during August and September 2024; identify and locate any such communications across e-mail, text message, iMessage, Signal, WhatsApp, and any other communication systems; and select and assemble those communications for production.

The compelled act of identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the identity of persons with whom Defendant communicated, the existence and location of those communications, Defendant's possession or control of them, and the authenticity of the communications produced. Such compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. See *Hubbell*, 530 U.S. at 36–38, 41–43.

Nor does Plaintiff's identification of Lucy Guo as one possible Passes employee or agent, or its limitation of the Request to August and September 2024, render the existence and possession of the particular communications sought a foregone conclusion. Those limitations define only a portion of the universe

Defendant is being compelled to search. They do not independently establish the identity of all Passes employees or agents with whom Defendant allegedly communicated during that period, which particular communications exist, through which communication systems they occurred, where those communications are located, whether they remain in existence, or whether they are presently within Defendant's possession or control.

This Request is therefore distinguishable from *Fisher v. United States*, 425 U.S. 391 (1976), where the Government already knew of the existence and location of the particular and specific documents sought and could independently establish their existence and authenticity. See *Hubbell*, 530 U.S. at 44–45. Here, compelling Defendant to identify and produce all communications with any Passes employee or agent during the specified period would require Defendant herself to supply through the act of production facts concerning with whom she communicated, what communications exist, where those communications are located, and whether she possesses or controls them.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request communications related to the Plaintiff, or other specific topics of communication.

**<u>Plaintiff's Position on Request #4</u>**

Plaintiff incorporates by reference her positions as to the preceding Requests in full.

***<u>REQUEST #6</u>***

All Communications and correspondence between You and Plaintiff, including, but not limited to, e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any and all other communication systems.

***<u>Response to Request #6</u>***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting communications. Rather, compliance with this particular Request would require Defendant herself to determine the universe of communications responsive to the Request; identify and locate communications with Plaintiff across e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any other communication systems; determine which such communications remain in existence and within her possession or control; and select and assemble those communications for production.

The compelled act of identifying and producing such communications would require Defendant to make testimonial use of the contents of her own mind and could communicate potentially incriminating facts concerning the existence and location of particular communications, Defendant's possession or control of them, and the authenticity of the communications produced. Such compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. See *Hubbell*, 530 U.S. at 36–38, 41–43.

The fact that Plaintiff may independently possess or have knowledge of certain communications in which Plaintiff herself participated does not, without more, render the entire universe of documents demanded by this Request a foregone conclusion. The Request is not limited to particular communications that Plaintiff has identified as already existing and within Defendant's possession or control. Instead, it requires Defendant to identify and produce all communications and correspondence with Plaintiff across numerous specifically identified and unspecified communication systems, without limitation as to date or subject matter. Thus, even if the existence of certain individual communications may be independently known to Plaintiff, compliance with the Request as framed would require Defendant to disclose through her act of production what additional communications exist, where they are located, and which remain within her possession or control.

This distinction is material under *Fisher v. United States*, 425 U.S. 391 (1976), and *Hubbell*. In *Fisher*, the Government already knew of the existence and location of the particular documents demanded and could independently establish their existence and authenticity. *Hubbell*, 530 U.S. at 44–45. Compelling Defendant to identify and assemble the complete universe of such communications would therefore require Defendant herself to supply testimonial information beyond the existence of any particular communications already known to Plaintiff. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled act of identifying, selecting, and producing documents responsive to this Request.

**<u>Defendant's Proposed Resolution</u>**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell*. With more narrow requests, it would be easier for the parties, and the Court to

determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that specify particular topics of communication.

**Plaintiff's Position on Request #6**

Plaintiff incorporates by reference her positions as to the preceding Requests in full. As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—it is obvious here that Plaintiff would be an independent source of Communications between herself and Defendant.

***REQUEST #18***

All Documents and Communications received by or prepared on behalf of Plaintiff for use on the Passes platform or otherwise uploaded to the Passes platform on Plaintiff's behalf.

***Response to Request #18***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination as to the compelled act of production. Defendant does not assert the privilege based merely upon the potentially incriminating contents of preexisting documents. Rather, compliance with this particular Request would require Defendant herself to determine whether responsive materials exist; identify which documents and communications were received by or prepared "on behalf of Plaintiff"; determine which materials were intended "for use on the Passes platform" or were otherwise uploaded to Passes "on Plaintiff's behalf"; identify and locate those materials; and select and assemble them for production.

The compelled act of identifying and producing such materials would require Defendant to make testimonial use of the contents of her own mind and

would communicate potentially incriminating facts concerning the existence and location of the materials, Defendant's possession or control of them, their authenticity, and Defendant's determination that particular materials were received, prepared, or uploaded on Plaintiff's behalf for use on Passes. Such compelled testimonial information could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. See *Hubbell*, 530 U.S. at 36–38, 41–43. Nor does the Request identify particular documents already known to exist or otherwise establish that the existence and Defendant's possession or control of the particular materials sought are a foregone conclusion. The Request instead identifies categories of materials based upon their purpose, intended use, and relationship to Plaintiff and requires Defendant herself to determine which materials satisfy those substantive descriptions. Unlike *Fisher v. United States*, 425 U.S. 391 (1976), where the Government already knew of the existence and location of the particular documents demanded and could independently establish their existence and authenticity, compliance here would require Defendant herself to supply through the act of production facts concerning what responsive materials exist, where they are located, whether she possesses or controls them, and which materials were received, prepared, or uploaded on Plaintiff's behalf. See *Hubbell*, 530 U.S. at 44–45. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled act of identifying, selecting, and producing documents responsive to this Request.

**<u>Defendant's Proposed Resolution</u>**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell*. With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the

foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request communications specific topics of communication. However, in so far as documents or items are being requested that contain images or videos that may violate U.S. law or the law of any State, the parties should agree that those should not be produced if they do in fact exist, as such production would violate Defendant's Fifth Amendment rights, because possession of CSAM material, videos, and/or images is in and of itself a violation of criminal acts, therefore the production would be incriminating.

**<u>Plaintiff's Position on Request #18</u>**

Plaintiff incorporates by reference her positions as to the preceding Requests in full. As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—Plaintiff is an independent source of Documents and Communications received by or prepared on her behalf for use on the Passes platform. Many such Documents and Communications are independently in Plaintiff's possession, custody, and control.

***<u>REQUEST #19:</u>***

All Communications and correspondence with users or customers relating to content depicting Plaintiff.

***<u>Response to Request #19</u>***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination. The compelled act of identifying, selecting, and producing documents responsive to this Request would require Defendant to make testimonial use of the contents of her own mind and would communicate potentially incriminating facts concerning the existence, possession or control, authenticity, and responsiveness of the documents sought. Accordingly, Defendant

asserts her Fifth Amendment privilege as to the compelled production of documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the request can be divided into several requests that only request specific topics of communication.

**Plaintiff's Position on Request #19**

Plaintiff incorporates by reference her positions as to the preceding Requests in full. As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—Plaintiff already has independent knowledge of the existence of Communications and correspondence with users or customers relating to content depicting Plaintiff. Such Communications and correspondence are already identified in the SAC, such as a direct message on the Passes platform from one user stating, "[I] can't stop thinking about your kitty and your lotioned ass so im risking being late to work so I can get a morning session," (SAC ¶ 134) or a comment from a user that "he could see [Plaintiff's] vagina in the video" (*id.* ¶ 136). The SAC is replete with examples of such Communications and correspondence. *See, e.g.*, SAC ¶¶ 143, 144.

***REQUEST #24***

All Documents and Communications between You and any party or non-party concerning this Complaint, this Action, or the allegations or claims contained therein.

***Response to Request #24***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination. Compliance would compel Defendant to identify, locate, select, and produce documents and communications whose existence, location, and possession have not been independently established, and to determine which materials concern this Complaint, this Action, or the allegations or claims contained therein. Defendant's act of identifying and producing such materials would require testimonial use of the contents of her own mind and would itself communicate potentially incriminating facts concerning the existence, possession or control, authenticity, and responsiveness of the materials sought. Such compelled production could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled production of documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine. For example, the

request can be divided into several requests that only request communications related to the Plaintiff, or other specific topics of communication.

**Plaintiff's Position on Request #24**

Plaintiff incorporates by reference her positions as to the preceding Requests in full.

**B. Responses Based on *Hubbell* and CSAM Concerns**

***REQUEST #7***

All Communications and correspondence between You and any other Person regarding minor content on Passes, including, but not limited to, the recruitment of minors, content creation by minors, restrictions on minor accounts, and knowledge of minor Creators on Passes. The term "minor" refers to a person under 18 years of age.

***Response to Request #7***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination. Compliance would compel Defendant to identify, locate, select, and produce communications whose existence, location, and possession have not been independently established, and to determine which communications concern "minor content on Passes," including the recruitment of minors, content creation by minors, restrictions on minor accounts, and knowledge of minor Creators. Defendant's act of identifying and producing such communications would itself communicate potentially incriminating testimonial facts concerning their existence, possession or control, authenticity, and responsiveness. Moreover, to the extent any responsive communications exist, the compelled production of such materials would require Defendant to use the contents of her mind to identify, select, and assemble communications concerning minors and minor content.

If any such communications contain, depict, relate to, or establish a connection to child sexual abuse material ("CSAM"), the act of production would

in and of itself be the testimonial admission, authentication, and/or possession of materials that the possession of is in and of itself incriminating or that could furnish a link in the chain of evidence leading to criminal prosecution. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled production of documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine.

However, in so far as documents or items are being requested that contain images or videos that may violate U.S. law or the law of any State, the parties should agree that those should not be produced if they do in fact exist, as such production would violate Defendant's Fifth Amendment rights, because possession of CSAM material, videos, and/or images is in and of itself a violation of criminal acts, therefore the production would be incriminating.

**Plaintiff's Position on Request #7**

Plaintiff incorporates by reference her positions as to the preceding Requests in full. As with the previous Requests that seek Communications, it is not inherently incriminating to communicate regarding minor content on Passes. Such Communications could pertain to legitimate business operations, platform policies, recruitment of minor Creators, or onboarding of new Creators. That the

substance of those Communications may pertain to CSAM is, again, ultimately a content-based argument not protected by the Fifth Amendment. In fact, Defendant effectively concedes this by stating: "[i]f any such communications contain, depict, relate to, or establish a connection" to CSAM. This is purely an argument based on the possible contents of responsive documents. Nor does the "chain of evidence" argument hold water. "The first step in a chain of evidence," *Hubbell*, 530 U.S. at 42, must be the initial testimonial act of production, not the contents. A "chain of evidence" cannot exist under *Hubbell* if the act of production is not self-incriminating. To the extent that any documents responsive to this Request constitute CSAM themselves, it is the obligation of the parties to determine a CSAM protocol governing the review of such documents. It does not wholesale shield Defendant from producing documents responsive to the Request.

As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—Plaintiff has knowledge that Defendant did in fact communicate regarding minor content on Passes. For example, Defendant's Communications with Plaintiff (as alleged in the SAC and which are within Plaintiff's possession, custody, or control) pertain to Plaintiff's minor content and would therefore be responsive to this Request. (*See, e.g.*, SAC ¶¶ 105, 107.)

***REQUEST #17***

All Documents and Communications concerning the marketing and/or advertisement of any content depicting Plaintiff.

***Response to Request #17***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination. Compliance would compel Defendant to identify, locate, select, and produce documents and communications whose existence, location, and possession have not been independently established, and to determine which materials concern the "marketing and/or advertisement" of content "depicting

Plaintiff." Defendant's act of identifying and producing such materials would itself communicate potentially incriminating testimonial facts concerning their existence, possession or control, authenticity, and responsiveness. Moreover, to the extent any responsive documents exist, the compelled production of such materials would require Defendant to use the contents of her mind to identify, select, and assemble documents responsive to the Request, thereby communicating the existence, possession, custody, and authenticity of those materials. If any such documents contain, depict, relate to, or establish a connection to child sexual abuse material ("CSAM"), the act of production would further risk communicating incriminating testimonial facts and could furnish a link in the chain of evidence leading to criminal prosecution. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled production of documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine.

However, in so far as documents or items are being requested that contain images or videos that may violate U.S. law or the law of any State, the parties should agree that those should not be produced if they do in fact exist, as such production would violate Defendant's Fifth Amendment rights, because

possession of CSAM material, videos, and/or images is in and of itself a violation of criminal acts, therefore the production would be incriminating.

**Plaintiff's Position on Request #17**

Plaintiff incorporates by reference her positions as to the preceding Requests in full.

As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—Plaintiff has independent knowledge of Documents and Communications in Defendant's possession concerning the marketing or advertising of any content depicting Plaintiff on the Passes platform, which are set forth in detail in the SAC. (*See, e.g.*, SAC ¶¶ 127, 128, 147, 151.)

***REQUEST #20***

All Documents and Communications concerning content of Plaintiff's that was uploaded to or appeared on sites other than Passes, including, but not limited to, "Thot BB."

***Response to Request #20***

Pursuant to *United States v. Hubbell*, 530 U.S. 27 (2000), Defendant objects to this Request and asserts her Fifth Amendment privilege against self-incrimination. Compliance would compel Defendant to identify, locate, select, and produce documents and communications whose existence, location, and possession have not been independently established, and to determine which materials concern content of Plaintiff that was allegedly uploaded to or appeared on sites other than Passes, including "Thot BB." Defendant's act of identifying and producing such materials would itself communicate potentially incriminating testimonial facts concerning the existence, possession or control, authenticity, and responsiveness of those materials. Moreover, to the extent any responsive documents exist, compliance would require Defendant to use the contents of her mind to identify materials as depicting Plaintiff, determine that such content was uploaded to or appeared on a site other than Passes, identify the site on which such

content allegedly appeared, and select and assemble documents or communications concerning that content. The resulting act of production could therefore communicate Defendant's knowledge of the existence and location of such content, her ability to identify and locate it, and her possession or control of documents concerning it. To the extent any such documents contain, depict, relate to, or establish a connection to child sexual abuse material ("CSAM"), the compelled act of identifying and producing those materials would further risk communicating incriminating testimonial facts and could furnish a lead to incriminating evidence or a link in the chain of evidence leading to criminal prosecution. Accordingly, Defendant asserts her Fifth Amendment privilege as to the compelled production of documents responsive to this Request.

**Defendant's Proposed Resolution**

The Plaintiff can modify and narrow her request, so that the request would not require Defendant to "use the contents of her own mind" in determining what production is and is not responsive, therefore satisfying the criteria of *Hubbell.* With more narrow requests, it would be easier for the parties, and the Court to determine if Fifth Amendment privilege does in fact apply, whether the documents are in Defendant's custody, possession, or control, and if Plaintiff relies on the foregone conclusion doctrine, a more narrow request would more adequately fit the "reasonable particularity" requirement of the doctrine.

However, in so far as documents or items are being requested that contain images or videos that may violate U.S. law or the law of any State, the parties should agree that those should not be produced if they do in fact exist, as such production would violate Defendant's Fifth Amendment rights, because possession of CSAM material, videos, and/or images is in and of itself a violation of criminal acts, therefore the production would be incriminating.

**<u>Plaintiff's Position on Request #20</u>**

Plaintiff incorporates by reference her positions as to the preceding Requests in full.

As to the applicability of the foregone conclusion doctrine—which the Court again need not reach—Plaintiff has independent knowledge of Documents and Communications concerning content of Plaintiff's that was uploaded to or appeared on sites other than Passes, including Plaintiff's own Communications with Ginoza on this subject. (*See, e.g.*, SAC ¶¶ 129-30.)

## III. DEFENDANT'S LANI GINOZA'S ARGUMENT REGARDING ASSERTION OF THE FIFTH AMENDMENT ACT-OF-PRODUCTION PRIVILEGE

Defendant asserts her Fifth Amendment privilege against self-incrimination as to certain of Plaintiff's Requests for Production identified above. Defendant does not contend that the Fifth Amendment categorically protects the contents of preexisting documents from discovery. Rather, Defendant's objections concern the testimonial act of production that compliance with certain Requests would compel; namely, requiring Defendant herself to determine whether responsive documents exist, identify and locate those documents, determine whether they are within her possession or control, decide which documents fall within Plaintiff's broadly stated categories, and select and assemble those documents for production.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Although the contents of voluntarily created documents ordinarily are not privileged, the Supreme Court has recognized that the act of producing documents may itself constitute compelled testimony because production may communicate facts wholly apart from the contents of the documents themselves. *Fisher v. United States*, 425 U.S. 391, 410–11 (1976); *United States v. Hubbell*, 530 U.S. 27, 36–37 (2000). By producing documents in response to a demand, an individual may

tacitly communicate that the requested documents exist, that she possesses or controls them, and that the documents produced are those described in the demand. *Fisher*, 425 U.S. at 410. The Fifth Amendment's protection therefore extends to the compelled testimonial communications inherent in the act of identifying, selecting, and producing responsive documents.

In *Fisher*, the Government already knew that the particular and specific documents existed, knew where they were located, and could independently establish their authenticity. Under those circumstances, the existence and location of the documents were a "foregone conclusion," and the taxpayer "add[ed] little or nothing to the sum total of the Government's information" by producing them. *Id.* at 411. *Hubbell*, however, presented a materially different circumstance. There, the Government issued a subpoena demanding eleven broad categories of documents without demonstrating prior knowledge of the existence or whereabouts of the particular documents ultimately produced. *Hubbell*, 530 U.S. at 41–45. Compliance therefore required Hubbell to make "extensive use of the contents of his own mind" to identify the documents responsive to the Government's broad demands. *Id.* at 43. Given the breadth of the subpoena, the Supreme Court explained that collecting and producing responsive documents was "tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions." *Id.* at 41. The Government could not avoid that testimonial aspect merely by arguing that a businessman would ordinarily possess records falling within the categories described in its subpoena. *Id.* at 44–45.

The Ninth Circuit applied these principles in *In re Grand Jury Subpoena, Dated April 18, 2003*, 383 F.3d 905 (9th Cir. 2004), under circumstances particularly analogous to the Requests at issue here. There, the Government demanded *"all documents" relating to the production or sale of DRAM, "including, but not limited to, handwritten notes, calendars, diaries, daybooks,*

*appointment calendars, or notepads, or any similar documents.” Id.* at 908. Although the Government possessed extensive information regarding Doe’s underlying conduct, including information obtained from cooperating witnesses and Doe’s own incriminating statements, the Ninth Circuit held that such knowledge was insufficient. The relevant inquiry was the Government’s knowledge of the existence and possession of the actual documents sought, not merely its knowledge of the underlying conduct to which those documents might relate. *Id.* at 910–11. The Government was required to establish the existence of the documents sought and Doe’s possession of them with “reasonable particularity” before their existence and possession could be considered a foregone conclusion. *Id.* at 910.

Significantly, the Ninth Circuit found the breadth of the subpoena itself probative of the Government’s lack of the requisite particularized knowledge. The Ninth Circuit held that the Government “failed to draft the subpoena narrowly to identify the documents that it could establish with reasonable particularity,” and concluded that “the subpoena’s breadth far exceeded the reasonably particular knowledge that the government actually possessed when it served the subpoena on Doe.” *Id.* at 911.

The Ninth Circuit further relied upon *Hubbell* in explaining why such generalized demands implicate the Fifth Amendment. Quoting *Hubbell*, the court observed that the breadth of the demand demonstrated that the Government “needed respondent’s assistance both to identify potential sources of information and to produce those sources.” *Id.* at 911 (quoting *Hubbell*, 530 U.S. at 41). The Ninth Circuit then explained: “A subpoena such as this, which seeks all documents within a category but fails to describe those documents with any specificity indicates that the government needs the act of production to build its case against Doe.” *Id.*

Plaintiff's Requests here present the same problem. Like the subpoena in *In re Grand Jury Subpoena*, Plaintiff repeatedly demands "all" documents or communications falling within broad categories and then provides expansive and nonexclusive lists of places Defendant must search. For example, Plaintiff seeks, for example in Request #1, "[a]ll Communications and correspondence between You and Alec Celestin regarding any Passes-related matter," including communications through "e-mail, text message, iMessage, Signal, WhatsApp, Slack, and any and all other communication systems." Plaintiff separately seeks in Request #4, "[a]ll Communications and correspondence between You and any Passes employee or Agent" concerning "any Passes-related matter" across the same open-ended universe of communication systems. Just as the Government's demand for "all documents" including notes, calendars, diaries, daybooks, appointment calendars, notepads, "or any similar documents" did not establish that those documents actually existed in *In re Grand Jury Subpoena*, Plaintiff's enumeration of e-mail, text message, iMessage, Signal, WhatsApp, Slack, "and any and all other communication systems" does not establish that responsive communications actually exist on any of those platforms. To the contrary, the breadth of the Requests requires Defendant to determine whether such communications exist, where they are located, whether they remain in existence, whether they are presently within her possession or control, and which communications satisfy Plaintiff's substantive descriptions. In other words, Plaintiff's Requests require Defendant to supply through her act of production the very information Plaintiff has not independently established.

Even Moreso, Plainttif by identifying a particular individual or general subject matter does not cure that deficiency. In *In re Grand Jury Subpoena*, the Government possessed substantial evidence concerning Doe's underlying conduct and even possessed information concerning certain particular communications, yet that knowledge did not establish with reasonable particularity the existence and

possession of every document encompassed by its broader demand. *Id.* at 910–11. Likewise, Plaintiff's identification of Alec Celestin, Lucy Guo, "Passes employees," or "any Passes-related matter" may define the category Defendant is commanded to search, but it does not establish with reasonable particularity which responsive communications exist, through which communication systems they occurred, where they are located, whether they remain in existence, or whether Defendant presently possesses or controls them.

The Fifth Amendment concern is even more apparent with respect to Plaintiff's Requests concerning content alleged to constitute or relate to child sexual abuse material ("CSAM") (Requests #7, #17, and #20). Those Requests would require Defendant not merely to locate documents fitting a broad description, but to review materials and determine for herself whether particular content falls within or relates to a potentially criminal classification. This Court (nor the Plaintiff for that matter) has not specified or determined what particular content at issue in this action constitutes CSAM or a violation of the criminal statutes cited in the Second Amended Complaint. Yet, compliance with these Requests would require Defendant herself to make that determination in deciding what materials are responsive and must therefore be identified and produced. By identifying and selecting particular materials as responsive to a Request concerning alleged CSAM, Defendant would be required to use the contents of her own mind to determine that particular materials fall within, depict, concern, or relate to the category described by Plaintiff. The Fifth Amendment protects not only compelled testimony that is itself directly inculpatory, but also testimonial communications that may provide a lead to incriminating evidence or a "link in the chain" leading to prosecution. *Hubbell*, 530 U.S. at 37–38, 41–42.

Defendant does not contend that the contents of a document are privileged merely because those contents may be incriminating. Rather, the privilege concerns the testimonial determination Plaintiff seeks to compel Defendant herself

to make. That action would require Defendant to supply, authenticate, and admit to the existence of, through the contents of her own mind and the act of production itself, potentially incriminating information that Plaintiff has not independently established and that the Court itself has not determined.

Because of the issues raised, the Requests at issue do not reach the foregone-conclusion exception. Plaintiff must first establish with reasonable particularity the existence and Defendant's possession of the documents sought. *In re Grand Jury Subpoena*, 383 F.3d at 910–11. Here, the generalized and open-ended nature of Plaintiff's Requests demonstrates precisely the opposite. Plaintiff seeks Defendant's assistance to determine what responsive evidence exists and where it may be found and, with respect to certain Requests, to determine whether particular materials fall within or relate to a potentially criminal classification or to items that may potential violate criminal law. Requiring Defendant to supply those facts through the compelled identification, characterization, selection, and production of responsive documents is the testimonial exercise protected by the Fifth Amendment under *Hubbell*.

Defendant's objections are directed to the compelled testimonial acts inherent in responding to those Requests and do not constitute a blanket assertion of privilege. For these reasons, Defendant asserts the Fifth Amendment act-of-production privilege as to the specific Requests and Responses set forth below.

## IV. PLAINTIFF'S ARGUMENT

### A. Defendant's Articulation of the Act of Production Doctrine Is Incorrect

Defendant's tortured explanation of the act of production doctrine speaks for itself. Defendant asserts that the requests "do not reach the foregone-conclusion exception," as "plaintiff must first establish with reasonable particularity the existence and defendant's possession of the documents sought." But this completely misstates the applicable law. Asserting the Fifth

Amendment privilege is Defendant's burden—Plaintiff does not have to establish anything "first," full stop. *Columbia Pictures Indus., Inc. v. Galindo*, 2022 WL 3009463, at *10 (C.D. Cal. June 14, 2022), *report and recommendation adopted*, 2022 WL 3369629 (C.D. Cal. Aug. 15, 2022) ("And as the party resisting discovery, it was incumbent upon Defendant to establish that his assertions of the Fifth Amendment were proper."). In short, Defendant states that the Court does not have to reach the foregone conclusion issue because Plaintiff must first establish that the existence of the documents is a foregone conclusion. This, it goes without saying, makes no sense.

The threshold question for each Request (and a dispositive question at that) is whether the act of producing the documents sought—separate and apart from the *contents* of the documents—itself would be self-incriminating. *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (respondent "could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence"). If the mere act of producing documents is not incriminating, the Fifth Amendment privilege is simply inapplicable, and there is no occasion to reach the foregone conclusion analysis at all. *Id*. at 43 (reaching the foregone conclusion issue on appeal because the government "arguably conceded that respondent's act of production in this case had a testimonial aspect that entitled him" to assert his privilege against self-incrimination). By devoting the majority of her argument to Plaintiff's purported failure to identify the existence of documents with "requisite particulari[ty]," as explained further below, Defendant gets the order of operations exactly backward.

**B. Defendant Relies Only on Foregone Conclusion Arguments**

Defendant argues that because Plaintiff has not established that the existence of the documents sought is a foregone conclusion, the Fifth Amendment privilege applies. But arguing that the purported breadth of

Plaintiff's requests gives Defendant Fifth Amendment protection is both circular and incorrect under the law. If this were the case, the burden would effectively be on Plaintiff to demonstrate that the Fifth Amendment does *not* apply.

Defendant relies on *Fisher* and *In re Grand Jury Subpoena* to, again, make what amounts to foregone conclusion arguments: "In *Fisher*, the Government already knew that the particular and specific documents existed, knew where they were located, and could independently establish their authenticity."; "The Ninth Circuit held that the Government 'failed to draft the subpoena narrowly to identify the documents that it could establish with reasonable particularity,' and concluded that 'the subpoena's breadth far exceeded the reasonably particular knowledge that the government actually possessed when it served the subpoena on Doe.'" Neither *Fisher*, *In re Grand Jury Subpoena*, nor *Hubbell* permit foregone conclusion analysis to supersede the threshold issue of whether the act of production doctrine *applies in the first place*. Plaintiff incorporates by reference her arguments as to the inapplicability of the doctrine as set forth above in response to each disputed RFP.

**C. Defendant's "Proposed Resolutions" as to Each Request Are Boilerplate and Unworkable**

Every one of Defendant's 11 "proposed resolutions" is substantively identical. Each instructs Plaintiff to "modify and narrow her request, so that the request would not require Defendant to 'use the contents of her own mind' in determining what production is and is not responsive." None identifies what specific topics would cure the purported deficiency or explains how any narrowing would satisfy the *Hubbell* standard Defendant invokes.

Critically, Defendant never articulates how "the contents of her own mind" are actually implicated by these *specific* requests as opposed to any request for document production. Identifying the existence of documents, locating them, and determining their responsiveness is simply the process of document

discovery. Under Defendant's expansive reading of *Hubbell*, no document request (however narrow) could ever be answered, because every act of production requires *some* exercise of judgment in identifying responsive materials.

**D. Even Assuming the Act of Production Would Be Self-Incriminating, Defendant's Arguments Fail**

As the Court is well aware, the Court only need address the foregone conclusion exception if it is determined that the act of producing the sought documents would be self-incriminating. *See* Villazor Decl., Ex. 1 (July 23, 2026 IDC Transcript at 11:3-5 ("[I]t seems to me that among other things that the foregone conclusion exception absolutely applies here, *if we even get to that.*" (emphasis added)). Plaintiff incorporates by reference her arguments as to the inapplicability of the doctrine as set forth above in response to each disputed RFP, as well as her arguments as to why the foregone conclusion exception would apply, in the alternative.

To the extent Defendant's arguments amount to an overbreadth argument, that objection was not raised in Defendant's initial responses and objections to the Requests and is therefore waived. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); Villazor Decl., Ex. 5 (Mar. 26, 2026 Responses and Objections). Even on the merits, such an argument fails. As opposed to the open-ended categories of financial and business records spanning many years as in *Hubbell* and *In re Grand Jury Subpoena*, the requests at issue are specific to this action: they predominantly seek documents and communications with identified parties (Celestin, Guo, and Plaintiff herself), during identified time periods (e.g., August and September 2024), or concerning specific factual allegations already pleaded in the Second Amended Complaint.

In sum, Defendant attempts to more or less burden-shift the assertion of the Fifth Amendment privilege. The analysis prescribed by the case law is clear, and Defendant's attempts to shoehorn or otherwise widely expand the scope of the act of production doctrine here should not be rewarded.

**E. Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that her motion to compel documents be granted in its entirety.

DATED: September 3, 2026

Respectfully submitted,

XANDER LAW GROUP, P.A.

By: */s/ Jose Teurbe-Tolon*
Jose Teurbe-Tolon

BOWSE DAVIS HUFFINE CHUNG & HULL LLP

By: */s/ Michael Bowse*
Michael Bowse

DATED: September 3, 2026

THE FREEDMAN FIRM PC

By: */s/ Michael G. Freedman*
Michael G. Freedman

CLARK SMITH VILLAZOR LLP

*/s/ Rodney Villazor*
Rodney Villazor

*Pursuant to L.R.5-4.3,4, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: *<u>/s/ Rodney Villazor</u>*