Jose Teurbe-Tolon (pro hac)
*jose@xanderlaw.com*
Xander Law Group, P.A.
25 SE 2nd Avenue, Suite 808
Miami, Florida 33131
Phone: (305) 767-2001 | Fax: (855) 926-3370

Dustin A. Huffine (SBN 300388)
*dhuffine@bdhch.com*
BOWSE DAVIS HUFFINE CHUNG & HULL LLP
One World Trade Center, 8th Floor
Long Beach, CA 90831
Phone: (562) 676-4315 | Fax: (213) 814-1448
*Attorneys for Defendant Lani Ginoza*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALICE ROSENBLUM,

Plaintiff,

v.

PASSES, INC., a Delaware corporation, NOFHOTOS GROUP LLC, a California limited liability company, WLM MANAGEMENT LLC, a California limited liability company, LUCY GUO, an individual, ALEC CELESTIN, an individual, and LANI GINOZA, an individual,

Defendants.

Case No.: 2:25-cv-08457-JLS-PD

**DISCOVERY MATTER:**

**DEFENDANT GINOZA'S SUPPLEMENTAL MEMORANDUM REGARDING PLAINTIFF ALICE ROSENBLUM'S MOTION TO COMPEL DOCUMENTS FROM DEFENDANT LANI GINOZA, ASSERTING FIFTH AMENDMENT PRIVILEGE**

Judge: Hon. Patricia Donahue
Ctrm: 580
Hearing Date: October 16, 2026
Hearing Time: 1:00 PM

Fact Discovery Cutoff: Feb. 5, 2027
Pretrial Conference: July 9, 2027
Trial Date: Not Set

## I. INTRODUCTION

Plaintiff's motion should be denied because it rests on a fundamental misunderstanding of the governing law.

The law is settled. When a party is asked to produce documents in response to broadly worded requests, the act of production itself communicates testimonial information—about the documents' existence, the party's possession of them, and their authenticity. Even if such communication is not directly incriminating, where it could provide a link in the chain of evidence needed to prosecute, the Fifth Amendment is triggered. *United States v. Hubbell*, 530 U.S. 27, 36–38 (2000); *In re Grand Jury Subpoena*, 383 F.3d 905, 909 (9th Cir. 2004).

Critically, the propounding party's independent knowledge is part of that same inquiry. To overcome the privilege, the propounding party must demonstrate that it already knows what documents exist, that the responding party possesses them, and that they are authentic. Absent that showing, the presumption holds: the act of production is testimonial and warrants Fifth Amendment protection. *In re Grand Jury Subpoena*, 127 F.4th 139, 144–45 (9th Cir. 2025).

Under the correct framework, Defendant has properly invoked her Fifth Amendment privilege. Plaintiff's requests seek documents tracking directly onto allegations of criminal conduct: the creation, marketing, and distribution of CSAM. Defendant's fear of prosecution is real and appreciable, because Plaintiff's allegations against her do not involve violations of statutes that are "neutral on their face and directed at the public at large," but CSAM statutes that are inherently criminal. *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980). Producing them would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.*

## II. ARGUMENT

### A. Plaintiff Misstated the Governing Legal Framework

Plaintiff advances two propositions: first, that the act-of-production doctrine does not apply to Defendant's responses to Plaintiff's RFPs; and second,

that Plaintiff's lack of independent knowledge about the documents' existence, possession, and authenticity is irrelevant to the analysis. *See* ECF No. 205 at 13, 33, 35. Both propositions are wrong. The governing framework rests on three settled principles, which Plaintiff either ignores or misrepresents.

First, a party asserting the privilege bears the burden of making "a good faith effort to provide the trial judge with sufficient information from which [s]he can make an intelligent evaluation of the claim." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).

Second, for document production, the act-of-production doctrine supplies a critical background presumption. Producing documents "may certainly communicate information about the existence, custody, and authenticity of the documents," and could provide "a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hubbell*, 530 U.S. at 37, 38.

Third, the propounding party's "independent knowledge" of the documents' existence, custody, and authenticity is not a separate step that follows the responding party's showing. It is part of the same "fact-intensive inquiry" into whether a particular act of production "has a testimonial aspect sufficient to attract Fifth Amendment protection." *In re Grand Jury Subpoena*, 383 F.3d at 909.

In *In re Grand Jury Subpoena*, 383 F.3d at 913, the subpoena broadly required a former employee allegedly involved in price-fixing to produce all documents related to the production of chips. *See id.* at 908. The court proceeded from the background presumption that "[a] witness' production of documents in response to a subpoena may have incriminating testimonial aspects," because "[b]y producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic." 383 F.3d at 909.The court then conducted the "fact-intensive inquiry" into whether the production requested would communicate enough to warrant Fifth Amendment protection. *See id.* It held it would. *Id.* at 913. On existence and possession, the court held that although "the government possessed extensive knowledge about

[the former employee]'s price-fixing activities," it could not establish the existence of all responsive documents and the employee's possession of them with "reasonable particularity." *Id.* at 910. Nor could the government "authenticate the documents so broadly described in the subpoena without the identifying information that [the former employee] would provide by using his knowledge and judgment to sift through, select, assemble, and produce the documents." *Id.* at 913.

Against this backdrop, Plaintiff's errors come into sharp focus. Her assertion that *Hubbell* "is limited to when admitting 'the existence, custody, and authenticity' of the documents could be incriminating" contradicts the decision's explicit holding. ECF No. 205 at 8. The information communicated by an act of production need not be incriminating in itself. By "producing documents in response to broadly worded requests" a responding party "disclose[s] the existence and location of particular documents fitting certain broad descriptions." *Id.* at 41. Such disclosure could provide a prosecutor with "a lead to incriminating evidence, or a link in the chain of evidence needed to prosecute." *Id.* at 42. That alone triggers the Fifth Amendment.

Plaintiff is equally wrong to contend that her independent knowledge is somehow separate from the act-of-production inquiry. A propounding party's independent knowledge is relevant because it negates the need for the responding party's testimony, thereby mooting the self-incrimination concern. *In re Grand Jury Subpoena*, 127 F.4th at 144–45. A propounding party who wishes to "use independent knowledge to establish the foregone-conclusion exception" does not get to wait and see. *Id.* at 145. If it cannot establish independent knowledge, the background presumption applies and the act of production is protected.

Finally, Plaintiff is mistaken that Defendant's invocation of the Fifth Amendment amounts to an overbreadth objection. *See* ECF No. 205 at 39. Breadth sits at the core of the act-of-production doctrine: the broader the requests, the more "contents of [a party's] own mind" must be involved in identifying responsive documents, and the higher the burden the propounding party must clear

to demonstrate independent knowledge with "reasonable particularity." *Hubbell*, 530 U.S. at 42–43; *In re Grand Jury Subpoena*, 383 F.3d at 910.

**B. Defendant Has Properly Invoked the Fifth Amendment**

Under the correct legal framework, Defendant has properly invoked her Fifth Amendment privilege.

The broad scope of Plaintiff's RFPs and their connection to her allegations that Defendant violated criminal CSAM statutes provide the information necessary to evaluate Defendant's invocation of the privilege. *See Davis*, 650 F.2d at 1160.For example, RFP Nos. 6 and 17 to 20 seek Defendant's communications with Plaintiff or her subscribers on Passes, as well as documents concerning content depicting Plaintiff, and the marketing of such content. These requests match Plaintiff's core allegations that Defendant "directed the then-17-year-old Plaintiff to create new images and videos of her engaged in sexually explicit conduct," ECF No. 147 ¶ 112; "aggressively marketed the images and videos of Plaintiff engaged in sexually explicit conduct with sexually charged advertising labels," *id.* ¶ 127; "impersonat[ed] then-17-year-old Plaintiff on the Passes direct messaging system, [and] engaged with so-called whales in sexually aggressive ways to bait the subscribers into purchasing images and videos of Plaintiff engaged in sexually explicit conduct at premium prices," *id.* ¶ 141; and that "an image of her vagina and her name uploaded to the Passes Vault and sold and distributed to various Passes subscribers had been reposted on a platform called Thot BB," *id.* ¶ 129. The other objected to requests seek similar production.

Defendant's fear of self-incrimination is by no means speculative. The right to invoke the Fifth Amendment "does not depend upon the likelihood, but upon the possibility of prosecution." *In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974). All that is required is "[a] reasonable belief that information" sought "might be used to establish" a criminal act. *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995); *accord Englebrick v. Worthington Indus., Inc.*, 670 F. Supp. 2d 1048, 1050 (C.D. Cal. 2009) ("A valid assertion of the privilege does not

require an imminent criminal prosecution or investigation.”). Plaintiff's RFPs, all keyed to establishing Defendant's alleged criminal conduct, provide more than enough for invoking the privilege against self-incrimination.

The breadth of these requests provides additional basis. Most do not identify specific counterparties, instead broadly seeking communications with unnamed parties. *See* RFP Nos. 7, 17–20, 24. These requests ask Defendant “both to identify potential sources of information” a prosecutor could use against her “and to produce those sources.” *Hubbell*, 530 U.S. at 41.

Nor has Plaintiff established her independent knowledge. Her bare assertion that she is aware Defendant communicated with Celestin, Lucy Guo, Plaintiff, and unidentified parties, *see* ECF No. 205 at 9, 15, 20, 22, 23, 27, 29, 31, does not “establish the existence of the documents sought and [Defendant's] possession of them with ‘reasonable particularity.’” *In re Grand Jury Subpoena*, 383 F.3d at 910. “The breadth” of the RFPs “far exceeded the [Plaintiff's] knowledge about the actual documents that [Defendant] created or possessed.” *Id.* at 910–11. And Plaintiff has not explained how she can authenticate the documents without Defendant's input. *Id.* at 913.

## III. <u>CONCLUSION</u>

For the foregoing reasons Plaintiff's motion should be denied, or in the alternative, the Court should order that Plaintiff's requests be modified per Defendant's suggestion in the original filing.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2ND day of October 2026 the *Defendant Ginoza's Supplemental Memorandum regarding Plaintiff's Motion to Compel* was served via CM/ECF on all parties on record including Plaintiff's counsel as follows:

CLARK SMITH VILLAZOR LLP
Rodney Villazor (310212)
666 Third Avenue, 21st Floor
New York, New York 10017
Tel: (212) 377-0850
Email: rodney.villazor@csvllp.com

THE FREEDMAN FIRM PC
Michael G. Freedman (281279)
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: michael@thefreedmanfirm.com

By:_ /s/Jose Teurbe-Tolon
JOSE TEURBE-TOLON, ESQ.
Fla. Bar No. 87791